FILED
CLERK, U.S. DISTRICT COURT
SEP - 7 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Priority  X
Send      X
Enter     ___
Closed    ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VIDA F. NEGRETE, as Conservator for EVERETT E. OW, an individual and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No. CV 05-6838 CAS (MANx)<br><br>**ORDER DIRECTING FURTHER BRIEFING AS TO SPECIFIC ISSUES RE PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION** |
| CAROLYN B. HEALEY, an individual, and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No. CV 05-8908 (MANx) |

DOCKETED ON CM
SEP 8 2006
BY            021

1  On July 24, 2006, the Court held a hearing on plaintiffs' motions for class certification in these related actions. Having considered the materials submitted by the parties and the arguments of counsel, the Court directs the parties to submit further briefing on the questions stated below.

In order to certify the proposed national class for a claim brought under the Racketeer Influence and Corrupt Organization Act, ("RICO"), 18 U.S.C. § 1961 et seq., and a California subclass bringing state law claims, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court must determine that plaintiffs have satisfied their burden of showing that common questions of law or fact predominate over any questions affecting only individual members and that the proposed class action is superior to other available means for the fair and efficient adjudication of this controversy. The latter requirement requires consideration of the difficulties likely to be encountered in the management of this litigation as a class action, including, especially, whether and how the case may be tried. In making these determinations, the Court does not decide the merits of any claims or defenses, or whether the plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible class-wide methods of proof available to prove their claims.

Plaintiffs' RICO and California law claims are, at their core, based on the claimed existence of a deceptive marketing scheme orchestrated by Allianz Life Insurance Company ("Allianz"), and participated in by approximately 170 non-exclusive Field Marketing Organizations ("FMO's") and over 240,000 independent insurance agents aimed at defrauding seniors into purchasing deferred equity-indexed and fixed annuities issued by Allianz that are worth substantially less than the prices paid for them. Plaintiffs allege that Allianz has formed "an ongoing sales and marketing organization" that has deceived seniors into purchasing the deferred annuities issued by Allianz by "systematically misrepresenting the essential features of these complex and disadvantageous investment products." The annuities are alleged to be overvalued and unsuitable investments because their financial characteristics

compare unfavorably with alternative investments that provide better and equally safe returns at a lower cost to investors. Plaintiffs further allege that certain specific material adverse facts about the hidden costs of the annuities and a plan to reduce interest rates, caps and participation rates has been withheld from investors. Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification filed July 17, 2006, at 5-6. Plaintiffs also rely on the alleged fact that deferred annuities sold to aged persons will provide little, if any, economic benefit, and that many such persons are widely recognized to be particularly vulnerable to fraudulent schemes designed to take advantage of age and understandable fears about losing their financial independence.

The existence of the alleged fraudulent scheme and the general methods of its operation, including the existence of the alleged conspiracy between Allianz and its FMO's, present questions common to the class. The proof of these subjects will focus on the conduct of the defendants and alleged co-conspirators and will not turn on questions pertaining to individual class members. Defendant argues, however, that plaintiffs have offered no feasible means of proving the element of reliance or the fact of injury on a class-wide basis, nor have plaintiffs offered a plausible class-wide means of proving damages based on a class-wide formula. Defendant contends that most sales of annuities are made based on face-to-face meetings with insurance agents, and that the content of discussions with investors varies widely. Defendant contends that this is not a case where there is any evidence that could be offered to show that agents give a standardized, uniform, scripted sales pitch and, in any event, the financial circumstances, sophistication, needs, desires and tolerance for investment risk vary widely among seniors. Defendant further argues that the sales brochures and the Statements Of Understanding ("SOU's"), often play an insignificant role in a senior's decision to buy an annuity. Thus, defendants say this is a case where the existence of a misrepresentation or the unsuitability or undesirability of an annuity can only be decided on a class member-by-class member basis.

Plaintiffs argue that reliance need not be shown because it is not an element of their RICO claim.[1] They argue, in the alternative, that if proof of reliance is required, it may be presumed because this is a case that is based primarily on omissions, as opposed to misstatements of material fact.

The Ninth Circuit has declined to "announce a black letter rule that reliance is the only way a plaintiff can establish causation in a civil RICO claim predicated on mail or wire fraud." Living Designs, Inc. E.I. Dupont de Nemours & Co., 431 F.3d 353, 363 (9th 2005). The Ninth Circuit also noted that it would be "premature" to decide this question because the Supreme Court has granted certiori to address whether reasonable reliance is required to prove proximate causation of injury under 18 U.S.C. §1964(c) based on predicate acts of mail or wire fraud. Id. at 163 and n.8.

Plaintiffs allege that all of the deferred annuity products were worth substantially less than the value of comparable products with similar protections of the principal amount invested. Although plaintiffs argue that reliance is not an element of a RICO claim, they acknowledge, as they must, that proximate causation must be shown. Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004); see also Anza v. Ideal Steel Supply Corp., 126 S.Ct. 1991, 1998-99 (2006). Plaintiffs argue that proximate causation may be proven by the materiality of the undisclosed information about the financial inferiority of the annuities and by conduct of class members consistent with their lack of knowledge about that inferiority. Plaintiffs thus contend that proximate causation can be established by proof that investors were overcharged

---

[1] The Court concludes that reliance is required to be shown with respect to plaintiffs' claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq. In re Tobacco II Cases, 2006 WL 2535256 (Cal. App. 4th) __ Cal. Rptr. 3d __. See Pfizer v. Superior Court, 45 Cal. Rptr. 3d 840, 141 Cal. App. 4th 290 (2006). It also appears that proof of reliance is required to establish causation of injury with respect to plaintiffs' other claims brought under California law. Accordingly, the Court's questions relate to those claims as well. The Court, however, reserves judgment on the California law questions.

for the annuities, i.e., charged more than the annuities' fair value had all relevant information regarding their characteristics been adequately disclosed to the investors.

The Court concludes that this is a case where proof of reliance is "'a milepost on the road to causation.'" Poulos, 379 F.3d at 654 (citations omitted). This is so because proof that defendant's alleged deceptive scheme proximately caused members of the class to suffer a concrete financial loss appears to depend on a showing that the class members made investment decisions based on material misinformation about the annuity products marketed to them. As stated in Poulos, "reliance provides a key causal link between the [defendant's] alleged misrepresentations and the class representatives' injury." Id.

Plaintiffs argue in their reply brief that this is a case based primarily on omissions, and that therefore they may rely for purposes of their RICO claim on the presumption of reliance recognized in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972). It is unclear whether the presumption of reliance may be invoked in a RICO case. However, the Ninth Circuit has made clear that if Affiliated Ute applies to a RICO case at all, it is only in a case based primarily on omissions, and not in a case of misrepresentations or a mixed case of misrepresentations and omissions, citing Poulos v. Caesars World, Inc., 379 F.3d supra at 666; Binder v. Gillespie, 184 F.3d 1059, 1063 (9th Cir. 1999).

At oral argument, counsel for plaintiffs argued that plaintiffs' case arises from affirmative standardized written statements in the SOU's and sales brochures that are misleading because they contain half truths. Given this argument and the allegations made by plaintiffs in their pleading, it is plain that reliance may not be presumed under Affiliated Ute.

Allianz contends that this case is similar to In re Life USA Holding, Inc., 242 F.3d 136 (3rd Cir. 2001), involving, as to the initial purchaser claims, individual oral representations, neither uniform nor scripted, made by tens of thousands of independent insurance agents to hundreds of thousands of purchasers. Allianz also

contends that class members vary widely in their financial circumstances and investment objectives, including their tolerance for risk. Based on that proposition, Allianz argues that the alleged misrepresentations and omissions would vary in significance to individual class members. In short, Allianz argues that many class members would choose the same annuity products they bought if they were informed of all the information class plaintiffs claim that they and their fellow class members did not know.

Defendant also argues that the annuity products at issue in this case vary widely in their financial terms and features, making it impossible to prove by methods of proof common to the class that they suffer from the same or similar overpricing or undesirability as compared with alternative investments. Allianz points out that class plaintiffs' expert, Dr. Craig J. McCann ("Dr. McCann"), analyzed in detail only one annuity product, namely, the MasterDex 10 annuity, among the more than thirty different ones that it sells.

In response, plaintiffs emphasize their allegations and evidence showing that Allianz, the FBO's and independent agents engaged in a common course of deceptive conduct involving a centralized sales scheme orchestrated by Allianz to misrepresent the benefits of Allianz annuities. However, as noted in Poulos, "[t]he misrepresentations standing alone have little legal significance." Poulos, 379 F.3d at 615. As noted by the Second Circuit in Moore v. Painewebber, Inc., 306 F.3d 1247 (2d Cir. 2002), a RICO case brought for an alleged scheme to misrepresent a universal life insurance product as a retirement investment program, "a common course of conduct is insufficient to establish liability of the defendant to any particular plaintiff." Id. at 1255. As that court stated: "In order to establish [the defendant's] liability, each plaintiff must prove that he or she previously received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss." Id. The Second Circuit further stated that "fraud claims based on uniform misrepresentations made to all members of the class" are "appropriate subjects for class

certification because the standardized misrepresentations may be established by generalized proof." Id. at 1253. The Second Circuit also stated that no "specific forms of proof, for example, uniform written scripts for any oral communications and uniform training of sales agents" are required to establish the existence of standardized misrepresentations. Id. at 1255.

If class plaintiffs can show that generalized methods of proof are available to show that all of the products at issue are fundamentally inferior to comparable products, and that Allianz has obscured that fact by false or misleading statements in its marketing materials, then plaintiffs may be able to show that they have available a means of demonstrating reliance and injury on a classwide basis.

Generalized proof that the written sales marketing materials uniformly fail to disclose that the Allianz deferred annuities are worth substantially less than comparable products or the prices paid for them would give rise to a common sense inference that no rational class member would purchase the annuities in questions upon adequate disclosure of the facts, regardless of their unique circumstances. The availability of such generalized proof would be analogous to the claims made in Garner v. Healy, 184 F.R.D. 598 (N.D. Ill. 1999), and Peterson v. H. & R. Block Tax Services, Inc., 174 F.R.D. 78 (N.D. Ill. 1997), which the Ninth Circuit recognized in Poulos to be cases where reliance can be shown where it provides the "common sense" or "logical explanation" for the behavior of the class plaintiffs and the class. Poulos, 379 F.3d at 667-668.

Plaintiffs rely on Dr. McCann to show that all the varieties of annuities sold by Allianz are inferior in price and quality to alternative, equally available, higher earning and equally secure investments, and that the failure to disclose that fact renders irrelevant any variations in what was said to prospective investors or the circumstances of any individual investors. Plaintiffs also rely on Thomas J. Maronick's declaration. However, Mr. Maronick's testimony depends on Dr. McCann's analysis of the value of the annuities in question. If accepted, Dr. McCann's testimony may show that there is

a class-wide method available to prove causation and reliance as well as injury in fact by all class members. However, the Court is concerned that Dr. McCann's testimony may not meet the test of facial plausibility for the following reasons: First, Dr. McCann's study attached to his declaration seems to support the proposition that all equity-indexed annuities are inferior to alternative investments (comprised of U.S. Treasury securities and a low cost equity mutual fund indexed to the S&P 500), and are therefore unsuitable for all investors, regardless of age. Dr. McCann's study appears to indicate that a typical equity-indexed annuity is worth only 84 cents of the one dollar invested. McCann Decl., Ex. 1 at 12. Second, Dr. McCann does not appear to have analyzed all of the approximately 30 equity-indexed deferred annuities sold by Allianz. Third, Dr. McCann does not appear to offer a means of demonstrating causation with respect to an investor who did not want to assume any market risk whatsoever. In other words, it does not appear that he provides a way to distinguish among class members who would choose his proposed alternative investment vehicle, namely a portfolio of U.S. Treasury securities and an equity-indexed mutual fund from those who would not. Last, it does not appear that Dr. McCann attempted to compare the financial benefits of any of the Allianz annuities with an entirely risk free investment, e.g., U.S. Treasury securities.

Moreover, with regard to the existence of a class-wide methodology for computing damages, it is not clear to the Court how plaintiffs propose to provide restitutionary relief to class members who are unable, by reason of the receipt of benefits under their annuities, to restore those benefits to Allianz, or how the value of those benefits could be calculated. While plaintiffs' counsel at oral argument proposed that class members could elect between restitutionary and damage remedies, it would appear that the availability of restitutionary relief may present a matter of individualized proof.

Therefore, the Court directs plaintiffs to respond to the following questions.

1. Does Dr. McCann's testimony, if accepted by the trier of fact, result in the conclusion that all of Allianz's deferred equity-indexed and fixed income annuities are inferior in value to Dr. McCann's comparative portfolio of United States Treasury securities and an equity-indexed mutual fund?

2. Does Dr. McCann's testimony, if accepted by the trier of fact, result in a conclusion that all deferred annuities sold in the United States are inferior in value to Dr. McCann's comparative portfolio of U.S. Treasury securities and an equity-indexed mutual fund?

3. Does Dr. McCann's testimony, if accepted by the trier of fact, mean that all deferred annuities sold in the United States are unsuitable for all persons regardless of their age, financial circumstance or tolerance for investment risk?

4. Does Dr. McCann's testimony, if accepted by the trier of fact, mean that all of the equity-indexed and fixed deferred annuities sold by Allianz can be shown to be unsuitable and less valuable than alterative, readily available investments for all seniors?

5. What is the class-wide methodology for determining the availability of restitutionary relief?

Plaintiffs shall have to and including September 18, 2006 to address these questions in a memorandum that shall not exceed 20 pages in length. Defendants thereafter shall have to and including October 6, 2006 to respond to plaintiffs' memorandum and that memorandum shall not exceed 20 pages in length. The status conference herein, now set for September 11, 2006, is continued to October 16, 2006 at 11:00 a.m.

IT IS SO ORDERED.

Dated: September 7, 2006

*Christina A. Snyder*
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE