# ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

NOV 2 1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

SCANNED

X  Priority
X  Send
___ Clsd
X  Enter
___ JS-5/JS-6
___ JS-2/JS-3

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| VIDA F. NEGRETE, as Conservator for EVERETT E. OW, an individual and on behalf of all other similarly situated persons, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, <br><br> Defendant. | Case No.: CV 05-6838 CAS (MANx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION** (filed May 30, 2006) |
| CAROLYN B. HEALEY, an individual, and on behalf of all other similarly situated persons, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, <br><br> Defendant. | Case No.: CV 05-8908 (MANx) |

ENTERED
CLERK, U.S. DISTRICT COURT

NOV 22 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

134

S:\CAS\Orders\CIVIL\2005\05-6838.Class.Cert4.wpd

# I.    BACKGROUND

## A.    Proceedings

In these related class action cases, plaintiffs Vida F. Negrete ("Negrete"), as conservator for Everett Ow ("Ow"), and Carolyn B. Healey ("Healey") (collectively, "plaintiffs"), on behalf of themselves and a proposed nationwide class of an estimated 200,000 persons, allege that defendant Allianz Life Insurance Company of North America, Inc. ("Allianz") conspired with a network of affiliated Field Marketing Organizations ("FMOs") to induce class members to purchase deferred annuities issued by Allianz by means of misleading statements and omissions regarding the value of those annuities.

Negrete filed suit against Allianz on September 19, 2005, alleging the following claims for relief: (1) violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, et seq. ("RICO");(2) elder abuse under Cal. Welf. & Inst. Code §§ 15610 et seq. ("§ 15610"); (3) unlawful, unfair and fraudulent business practices under California's Unfair Competition Law ("the UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) false and misleading advertising under Cal. Bus. & Prof. Code §§ 17500, et seq. (the "False Advertising Law" or "FAL"); (5) breach of fiduciary duty; (6) aiding and abetting breach of fiduciary duty; and (7) unjust enrichment and imposition of constructive trust.  On December 22, 2005, Healey filed suit against Allianz, alleging similar claims for relief.

On May 30, 2006, plaintiffs Negrete and Healey each filed under the RICO statute separate, coordinated motions for class certification.[1]  On July 10, 2006, Allianz filed a single opposition to both plaintiffs' motions, and on July 17, 2006, each plaintiff

---

[1] Both plaintiffs seeks certification of an identical nationwide class for purposes of litigating their RICO claims.  Plaintiff Negrete seeks certification of a subclass of California residents for purposes of litigating the claims arising under California law.

filed a coordinated reply.[2]  The Court heard oral argument on July 24, 2006, and took the matter under submission.  Thereafter, on September 7, 2006, the Court issued its Order Directing Further Briefing as to Specific Issues Re Plaintiffs' Motions for Class Certification.  On September 18, 2006, in response to the Court's order, plaintiffs filed Plaintiffs' Response to Order Directing Further Briefing as to Specific Issues Re Plaintiffs' Motions for Class Certification, and submitted the Second Supplemental Declaration of Craig J. McCann, dated September 18, 2006.  On October 6, 2006, defendant filed Defendant's Response to Plaintiffs' Memorandum In Response to the Court's September 7, 2006 Order, and the Declaration of Kong Her, dated October 5, 2006.  Having carefully considered the parties' briefs, and all other documents filed in support thereof, the Court hereby finds and concludes as follows.

### B.    The Proposed Classes

By these motions, Negrete and Healey seek the certification of a nationwide class, defined as follows:

> All persons who within the applicable statute of limitations of the
> date of the commencement of this action and while 65 years of age or
> older, purchased one or more Allianz Life Insurance Company of
> North America deferred Annuities either directly, or through
> surrender (in whole or part) of an existing permanent life insurance
> policy or annuity, or by borrowing against an existing permanent life
> insurance policy.

---

[2] Except with respect to the state law claims, plaintiffs' motion papers are substantially identical.  The Court therefore for convenience generally refers to Negrete's motion papers in this order.

Healey's Motion for Class Certification ("HMCC") at 5.[3]  Plaintiff Negrete further seeks to certify a subclass of California residents to prosecute claims arising under California law.  The California subclass is defined as follows:

> All California residents who within the applicable statute of limitations of the date of commencement of this action and while 65 years of age or older, purchased one or more Allianz Insurance Company of North America deferred annuities either directly, or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy.

Negrete's Motion for Class Certification ("NMCC") at 5-6.[4]

## C.  The RICO Claim

Plaintiffs allege that "Allianz and its [FMOs] orchestrated a nationwide conspiracy to gain the trust of vulnerable elderly purchasers and deceive them into purchasing deferred annuities by systematically misrepresenting the essential features of these complex and disadvantageous investment products." NMCC at 6.

---

[3] For purposes of determining these motions, the Court addresses the class definition proposed in Negrete's and Healey's class certification motion papers, rather than the definitions set forth in their respective complaints.  The class definition set forth in Negrete's complaint includes as the final clause: "which annuity had a maturity date beyond the annuitant's actuarial life expectancy." Negrete Complaint ¶ 31.  This clause is omitted from the class proposed in the motion.  Healey's complaint defines the nationwide class as: "[S]eniors (persons age 65 and older) who purchased a fixed or indexed deferred annuity solicited, referred, marketed, sold and/or issued by Allianz, and/or who have suffered or could suffer a penalty and/or surrender charge, including those incurred on death, for withdrawing funds before its maturity date." Healey Complaint ¶ 82.

[4] Excluded from the proposed class and subclass are all persons who purchased cash bonus annuities or deferred annuities consisting of one or more cash bonus annuities from Allianz or Life USA Insurance Company.  Negrete's Reply In Support of Plaintiffs' Motion for Class Certification, dated July 17, 2006, at 3 & fn. 3.

1    Plaintiffs contend that Allianz "tightly control[s]" its FMO affiliates and their

2 over 240,000 independent agents in an "ongoing sales and marketing association,"

3 designed to maximize the profits derived from the sale of its deferred annuities.

4 NMCC at 6-7.  Allianz exercises such control, plaintiffs assert, in part by requiring its

5 FMOs and agents to use standardized Allianz-supplied marketing and sales materials.

6 Id. at 7-8.  Specifically, plaintiffs state that Allianz and its FMOs "used standardized

7 misleading documents . . . includ[ing] 'consumer brochures' and 'Statements of

8 Understanding ('SOU') that Allianz prepared and required its sales force to distribute

9 to all prospective purchasers." Negrete Reply at 3.[5]  Plaintiffs allege that they, like

10 other class members, received and read such documents.  Id.  The SOU, signed by Ow,

11 which plaintiffs claim is typical of those signed by other class members, states in

12 pertinent part:

13    I have read and I understand the information [in the SOU].  It has

14    been explained to me by the agent, and I believe the FlexDex Multi-

15    Choice[SM] Annuity is suitable for my financial goals.  I have also read

16    the FlexDex Multi-Choice Annuity consumer brochure M3432.  I

17    understand that any values shown, other than the guaranteed

18    minimum values, are not guarantees, promises or warranties.

19 Supplemental Declaration of Patricia N. Sylverson ("Sylverson Supp. Decl.") Ex. E at

20 180.[6]  Plaintiffs additionally allege that Allianz agents are required to use a single,

21 uniform SOU for each type of deferred annuity sold, and to sign the following

---

23    [5] Plaintiffs further contend that Allianz has ownership interests in many of its
24 FMOs. NMCC at 7. According to plaintiffs, FMOs are, in turn, represented on Allianz's
   Board of Directors, and Allianz and its FMOs "communicate and meet regularly to
25 conduct ongoing affairs of the [RICO] Enterprise." Id. at 8.

26    [6] The SOU summarizes the material terms of the annuity, such as "Accumulation
27 Value," "Cash Surrender Value," and "Benefit Credits," etc. The SOU also includes a
   glossary of terms and, in table form, hypothetical examples of the annuity's possible
28 performance over time. See Sylverson Supp. Decl. Exs. E; NMCC Ex. 46.

attestation: "I have not made statements that differ from the disclosure form, and no promises or assurances have been made about the future values of the policy." Negrete Reply at 4.  Plaintiffs attach copies of their SOUs, each bearing the agent's signed attestation.   See, e.g., Sylverson Supp. Decl. Exs. E, J.

Plaintiffs further assert that Allianz and its FMOs intentionally target seniors for the sale of the annuities in question because seniors are especially vulnerable to deceptive marketing practices. Id. at 9.  In support of these assertions, plaintiffs have provided various examples of recruiting, training and marketing materials which purport to "intentionally target seniors for sale of deferred annuities." Id. at 10-15 (citing to and quoting from Exs. 16, 23, 24, 27, 36-39).

Finally, relying on the declaration of Craig J. McCann ("Dr. McCann"), a former senior financial economist in the Office of Economic Analysis of the Securities and Exchange Commission,[7] plaintiffs seek to demonstrate how Allianz "systematically misrepresents the fundamental characteristics of the annuities and actively conceals, even from its own agents, critical information that would reveal the [annuities'] disadvantages." Id. at 19-24.  Those alleged disadvantages include undisclosed sales commissions, forfeiture and penalty provisions, hidden reductions to participation rates and illusory "bonuses." Id.

### D.    California Statutory and Fiduciary Duty Claims

Plaintiff Negrete contends that the conduct alleged by Allianz and its FMOs also gives rise to claims for violation of California statutory law, breach of fiduciary duty, aiding and abetting breach of fiduciary duty and unjust enrichment.  Plaintiffs allege that Allianz, its FMOs and agents assumed fiduciary duties to members of the class by undertaking to act as a financial planners for class members. Id. at 24.

///

---

[7] McCann obtained a Ph.D. in Economics from UCLA and is a Chartered Financial Analyst.  McCann Decl. ¶¶ 3-4.  He has held various academic and business consulting positions. Id.

## II.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Tel. Co. of the Southwest v. Falcon, 457 U.S., 147, 161 (1982).

To certify a class action, plaintiffs must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000) (internal quotations omitted). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the district court finds that the action meets the prerequisites of Rule 23(a), the court must then consider whether the class is maintainable under Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3) which governs in a case where money damages is the predominant form of relief sought, which is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members," and where "a class action is *superior* to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) *(citing* Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the

common to individualized claims. Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190-1993.  "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535-39 (2d. 3d. 1986)).

## III.  DISCUSSION

### A.    The Nationwide Class

#### 1.    Rule 23(a) Requirements

##### a.    Numerosity

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all of the class members would be impracticable.  Fed. R. Civ. P. 23(a). However, "[i]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964) (quoting Advertising Specialty Nat. Ass'n v. FTC, 238 F.2d 108, 119 (1st Cir. 1956)).

Plaintiffs estimate that there are more than 200,000 members of the nationwide class.   Allianz does not dispute that the plaintiffs' proposed nationwide class is sufficiently numerous to satisfy Rule 23(a)(1).  Joinder is impracticable.  The numerosity requirement of Rule 23(a)(1) is therefore met.

### b.   Commonality

Commonality requires "questions of law or fact common to the class." Rule 23(a)(2).  The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement.  Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 (9th Cir. 1982).  The Court finds that the class members' claims derive from a common core of salient facts, and share many common legal issues.  These factual and legal issues include the questions of whether Allianz entered into the alleged conspiracy and whether its actions violated the RICO statute.  (See Healey Reply at 6.)  The commonality requirement of Rule 23(a)(2) is met.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

### c.   Typicality

Typicality requires a determination of whether the named plaintiff's claims are typical of those of the proposed class they seek to represent.  Rule 23(a)(3).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985) ("A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.").

The parties disagree as to whether the named plaintiffs' claims are typical of those of the members of the proposed class.  Plaintiffs contend that their claims "arise from the same core of operative facts," and are based on Allianz' unlawful scheme to sell senior citizens deferred annuities by means of "deceptive practices and common omissions" that "collectively portrayed a false portrait of the annuities purchased by all class members."  Id.; Negrete Reply at 1.  Allianz argues that plaintiffs have failed to demonstrate that the class members are similarly situated with respect to their status, relationship to the selling agent and sophistication. Opp'n at 20-26.

Notwithstanding the asserted differences among class members, plaintiffs' claims are based on an alleged common course of conduct by Allianz "to illegally target seniors for the purpose of selling them inferior deferred annuity products" as part of a single "overarching fraudulent scheme." Negrete Reply at 13. Therefore, plaintiffs' claims arise from the "same event or course of conduct" as those of the various class members, as required under Rule 23(a)(3), and are typical of the claims of the proposed class. Schwartz, 108 F.R.D. at 282; Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).[8]

### d.  Adequacy of Representation

The adequacy of representation requirement of Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

Plaintiffs contend that their counsel are "capable of vigorously, efficiently and expeditiously prosecuting this action" and that there are no antagonisms between the named plaintiffs and other members of the proposed classes. NMCC at 35. Allianz does not appear to dispute that plaintiffs' counsel are able to prosecute these actions vigorously or contend that there are any conflicts of interest that would defeat certification. Accordingly, the Court finds that the adequacy requirement of Rule 23(a)(4) is satisfied.

///

---

[8]The Court further notes that variations in the degree of injury allegedly suffered by each class member do not defeat typicality. "It is *not* necessary that all class members suffer the same injury as the class representatives." Judge William W. Schwarzer, Judge A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial, § 10:292 (The Rutter Group, 2006) (emphasis in original). Rather, a "plaintiff's claim may be 'typical' although other members of the class suffered less (or more) injury." Id. § 10:293 (citing Rosario, 963 F.2d at 1017 ("The fact that there is some factual variation among the class grievances will not defeat a class action.")).

## 2.   Rule 23(b)(3) Requirements

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotations omitted).  As noted above, Rule 23(b)(3) calls for two separate inquiries:  (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The latter requirement requires consideration of the difficulties likely to be encountered in the management of this litigation as a class action, including, especially, whether and how the case may be tried.  In making these determinations, the Court does not decide the merits of any claims or defenses, or whether the plaintiffs are likely to prevail on their claims.  Rather, the Court must determine whether plaintiffs have shown that there are plausible class-wide methods of proof available to prove their claims.

### a.   Predominance and Commonality

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." See Valentino, 97 F.3d at 1234.  Thus, the Court must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure § 1778 (3d ed. 2005).  For the proponent to satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement -- the predominance inquiry under Rule 23(b) is more rigorous.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997).  The predominance question "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. at 623.  The Court, therefore, must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members.  Abed et al. v. A. H. Robins Company, et

1    al. (In re Northern District of California, Dalkon Shield IUD Products Liability

2    Litigation), 693 F.2d at 856.

3        Here, as discussed below, the crucial question is whether plaintiffs have shown

4    the existence of a plausible class-wide method for proving that the defendant's

5    misstatements or omissions about the economic value and benefits of the annuities in

6    question caused injury to the members of the class and a plausible class-wide method

7    for proving damages.

8                            **b.    Causation**

9        Allianz argues that plaintiffs' RICO claims cannot be certified for class treatment

10   because individual issues of proximate causation and damages will predominate.

11   Opp'n at 28-40.  Specifically, Allianz contends that because plaintiffs' claims will

12   depend on proving that class members relied on the misstatements and omissions

13   concerning the annuities, because those annuities were sold to class members by means

14   of in-person oral representations, and because the financial condition, investment goals,

15   and tolerance for investment risk vary widely, adjudication of plaintiffs' claims will

16   necessarily require an examination of what each particular "class member was told [by

17   each agent] and whether those representations 'caused' [each plaintiff's] injury."[9] Id. at

18   30.  These "highly individualized" transactions, Allianz argues, will require

19   adjudication of the circumstances surrounding each class member's reliance on the

20   alleged misstatements and omissions and will predominate over the common questions

21   to be litigated, thereby precluding class certification.  Id. at 32-35.

22       Plaintiffs assert that proof of reliance is not required under RICO.  Negrete

23   Reply at 15.  Plaintiffs alternatively argue that, even if proof of reliance is required,

24

25       [9] In addition, Allianz asserts that plaintiffs' have offered no evidence regarding the

26   different level of education and financial sophistication of persons in the proposed class,

27   nor whether all class members were working full time or retired, as assumed by the
     Complaint.  Id. at 12-13.

28

1   reliance may be presumed here because their RICO claims "are based primarily on

2   uniform omissions of material fact." Id. at 16 (citing Affiliated Ute Citizens of Utah et

3   al. v. United States et al., 406 U.S. 128 (1972)).  Finally, plaintiffs argue that "reliance

4   on Allianz' fraudulent scheme can [also] be established through classwide

5   circumstantial proof." Id. at 17.

6        Accordingly, in determining whether the predominancy requirement has been

7   satisfied, the parties have raised a threshold question: whether and to what extent a

8   private plaintiff must prove reliance to establish a claim under RICO.  It is to that

9   question the Court now turns.

10       The Ninth Circuit has declined to "announce a black letter rule that reliance is

11  the only way a plaintiff can establish causation in a civil RICO claim predicated on

12  mail or wire fraud." Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d

13  353, 363 (9th Cir. 2005) (citing Poulos v. Caesars World, Inc., 379 F.3d 654, 666 (9th

14  Cir. 2004).  The Ninth Circuit also noted that it would be "premature" to decide this

15  question because the Supreme Court has granted certiori to address whether reasonable

16  reliance is required to prove proximate causation of injury under 18 U.S.C. §1964(c)

17  based on predicate acts of mail or wire fraud.  Id. at 363 & n.8.

18       Plaintiffs allege that all of the Allianz deferred annuity products at issue in this

19  litigation were worth substantially less than the price paid for them or the value of

20  comparable products with similar protections of the principal amount invested.

21  Although plaintiffs argue that reliance is not an element of a RICO claim, they

22  acknowledge, as they must, that proximate causation must be shown.  Poulos v.

23  Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004); see also Anza v. Ideal Steel

24  Supply Corp., 126 S.Ct. 1991, 1998-99 (2006).  Plaintiffs argue that proximate

25  causation may be proven by the materiality of the undisclosed information about the

26  financial inferiority of the annuities and by conduct of class members consistent with

27  their lack of knowledge about that inferiority.  Plaintiffs thus contend that proximate

28  causation can be established by proof that investors were overcharged for the annuities,

1    i.e., charged more than the annuities' fair value, and that no rational investor would

2    have purchased such annuities had all relevant information regarding their

3    characteristics been adequately disclosed by Allianz.

4           The Court concludes that this is a case where proof of reliance is "'a milepost on

5    the road to causation.'" Poulos, 379 F.3d at 664 (citations omitted).  This is so because

6    proof that defendant's alleged deceptive scheme proximately caused members of the

7    class to suffer a concrete financial loss will depend on showing that class members

8    made investment decisions based on material misinformation or omissions about the

9    annuity products marketed to them.  As stated in Poulos, "reliance provides a key

10   causal link between the [defendant's] alleged misrepresentations and the [c]lass

11   [r]epresentatives' injury." Id. at 665.

12          As noted above, plaintiffs argue in their reply brief that if reliance is required to

13   be shown, this is a case based primarily on omissions, and that therefore they may rely

14   for purposes of their RICO claim on a presumption of reliance recognized in Affiliated

15   Ute.  It is unclear whether the presumption of reliance may be invoked in a RICO case.

16   However, the Ninth Circuit has made clear that if Affiliated Ute applies to a RICO case

17   at all, it is only in a case based primarily on omissions, and not in a case of

18   misrepresentations or a mixed case of misrepresentations and omissions. Id. at 667

19   (citing Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999)).

20          At oral argument, counsel for plaintiffs argued that plaintiffs' case arises from

21   affirmative standardized written statements in the SOU's and sales brochures that are

22   misleading because they contain half truths.  Given this argument and the allegations

23   made by plaintiffs in their pleadings, whether or not a presumption of reliance may be

24   invoked in a RICO case, the Court determines that reliance may not be presumed under

25   Affiliated Ute in this case.

26          Allianz contends that this case is similar to In re LifeUSA Holding, Inc., 242

27   F.3d 136 (3d Cir. 2001), a case based on the alleged fraudulent marketing of annuities,

28   involving, as to the initial purchaser claims, claims of false and misleading oral

14

representations, neither uniform nor scripted, made by tens of thousands of independent insurance agents to hundreds of thousands of purchasers of annuities.  In addition, as note above, Allianz contends that class members vary widely in their financial circumstances and investment objectives, including their tolerance for risk.  Based on these propositions, Allianz argues that the alleged misrepresentations and omissions would vary widely in their significance to individual class members, given the differences among class members.  Allianz argues that many class members would have chosen the same annuity products they bought if they had been informed of all the information that plaintiffs claim should have been provided to them.

In response, plaintiffs emphasize their allegations and supporting evidence showing that Allianz, the FBO's and independent agents engaged in a common course of deceptive conduct involving a centralized sales scheme orchestrated by Allianz to misrepresent the benefits of Allianz annuities.  However, as noted in <u>Poulos</u>, "[t]he misrepresentations standing alone have little legal significance." <u>Poulos</u>, 379 F.3d at 665.  In affirming the trial court's decision denying class certification, the Second Circuit noted in <u>Moore v. Painewebber, Inc.</u>, 306 F.3d 1247 (2d Cir. 2002), a RICO case brought for an alleged scheme to misrepresent a universal life insurance product as a retirement investment program, "a common course of conduct is insufficient to establish liability of the defendant to any particular plaintiff." <u>Id.</u> at 1255.  As that court stated: "In order to establish [the defendant's] liability, each plaintiff must prove that he or she previously received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss." <u>Id.</u>  The Second Circuit further noted that "fraud claims based on uniform misrepresentations made to all members of the class" are "appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." <u>Id.</u> at 1253.  The Second Circuit also stated that no "specific forms of proof, for example, uniform written scripts for any oral communications and uniform training of

1  sales agents" are required to establish the existence of standardized misrepresentations.

2  Id. at 1255.

3       If class plaintiffs can show that generalized methods of proof are available to

4  show that uniform representations were made to all class members which were

5  misleading because they failed to disclose that all of the annuities at issue were worth

6  less than the purchase prices paid for them or are fundamentally inferior to comparable

7  products, then plaintiffs may be able to show that they have available a means of

8  demonstrating reliance on a class-wide basis.

9       Generalized proof that the common, uniform written sales marketing materials

10  are misleading because they fail to disclose that the Allianz deferred annuities are

11  worth substantially less than the prices paid for them, or would give rise to a common

12  sense inference that no rational class member would purchase the annuities in questions

13  upon adequate disclosure of the facts, regardless of their individual circumstances, may

14  be employed as a means of establishing class-wide proof of damages. The availability

15  of such generalized proof would be analogous to the claims made in Garner v. Healy,

16  184 F.R.D. 598 (N.D. Ill. 1999), and Peterson v. H. & R. Block Tax Services, Inc., 174

17  F.R.D. 78 (N.D. Ill. 1997), which the Ninth Circuit recognized in Poulos to be cases

18  where reliance can be shown where it provides the "common sense" or "logical

19  explanation" for the behavior of plaintiffs and the members of the class. Poulos, 379

20  F.3d at 667-668.[10]

21

22       [10] In Peterson v. H& R Block, the court found that class-wide reliance could be
shown where a class of taxpayers were allegedly induced by standardized documents to
23  purchase tax refund services for which they were ineligible. 174 F.R.D. 78, 85 (N.D. Ill.
24  1985). The Court reasoned that: "It is inconceivable that the class members would
rationally choose to pay a fee for a service they knew was unavailable . . . The only logical
25  explanation for such behavior is that the class members relied on [defendants']
26  representation that they could take advantage of [the service] by paying the requisite fee."
Id. Likewise in Garner v. Healy, the district court certified a class of consumers who had
27  been defrauded by "a standardized course of conduct involving uniform
28                                                                      (continued...)

Here, plaintiffs have submitted evidence that Allianz's FMOs and independent agents used standardized written marketing materials supplied by Allianz in selling the Allianz deferred annuities at issue in these cases.  In particular, plaintiffs have offered evidence that Allianz prepared standardized consumer brochures and SOUs for each annuity product.  Allianz apparently required both the purchaser of the annuity and the agent sign the SOU at time of sale.  By signing the SOU, the purchaser stated that he or she had read and understood the information set forth therein, which had also been explained by the sales agent.  Correspondingly, the agent's signature evidenced that he or she had "not made statements that differ from the disclosure form."  This evidence of standardized written presentations, coupled with plaintiffs' allegations that class members purchased annuity products far less valuable than other comparable products or the prices paid for them, adequately establishes proximate causation under Poulos at the certification stage.

Because plaintiffs' evidence may enable them to establish reliance and thus causation in this case, the Court finds that common issues regarding Allianz's alleged

---

[10](...continued)
misrepresentations" into purchasing a "car wax" product that allegedly contained no wax. 184 F.R.D. 598, 602 (N.D. Ill. 1999).  With respect to reliance and causation, the court concluded that "if Plaintiffs paid money for a 'wax,' but instead received a worthless 'non-wax' product, then issues of proximate cause would be relatively simple to resolve on a classwide basis."  Id.  In LifeUSA, by contrast, the Third Circuit observed that the annuities at issue were "not sold according to any standard, uniform, or scripted sales presentations."  242 F.3d at 146.  Rather, they were sold by independent agents who learned about the annuities through voluntary defendant-sponsored seminars and from written materials, many of which were neither uniform nor generated by the defendant. Id.  Given these facts, the court in LifeUSA found that plaintiffs' common law fraud claims would involve litigating the substance of oral statements made by thousands of independent agents to over 280,000 purchasers.  Id. at 147.  Moreover, unlike the present case, the Third Circuit noted that plaintiffs appeared to have abandoned their claim that a class should be certified based on pre-sale misrepresentations made to investors, in favor of a claim that post-sale quarterly accounting statements "uniformly misrepresented the true interest rate credited to a purchaser's account."  Id. at 140-41.

overarching fraudulent scheme predominate over questions affecting only individual members of the nationwide class. See Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am.),, 148 F.3d 283, 314 (3d Cir. 1998) (affirming the lower court's conclusion that "[w]here many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related, courts have found that the purchasers have a common interest in determining whether the defendant's course of conduct is actionable"). Accordingly, plaintiffs have satisfied the commonality requirement of Rule 23(a)(2) as well as the predominance requirement of Rule 23(b)(3).

With regard to class-wide proof of damages, plaintiffs contend that the annuities were all worth less than the purchase prices paid for them or the value of comparable investments of equivalent safety, and that no rational class member would have bought the annuities had they known the truth about the annuities' true value. If plaintiffs had sought to prove their case by showing the individual financial circumstances and tolerance for risk of absent class members, or what was said to them orally or by their advisors, class certification would not be appropriate. However, here plaintiffs have accepted a high bar for proving their case, namely, that no rational senior would have bought any of the Allianz deferred annuities if they had known the truth about their true value.

Dr. McCann offers a methodology to show that all of the Allianz annuities were worth less than comparable equally safe investments. Allianz argues, in effect, that Dr. McCann is comparing apples to oranges, because his principal benchmark comparative investment portfolio is not equally safe, does not take into account certain of the benefits of the annuities, and depends partly on the assumption that many seniors would need to incur early withdrawal penalties. Dr. McCann's model also claims to show that Allianz annuities are worth less than comparably-timed zero coupon Treasury bills. Allianz argues that the Treasury bills are subject to market risks

1  depending upon whether interest rates rise, and that they could decline in value by a
2  significant amount if interest rates increased.
3  ///
4       At this early stage of the litigation, the facts thus far presented to the Court do
5  not conclusively support plaintiffs' contentions.  If the further development of the
6  litigation brings forth evidence that seriously undermines plaintiffs' contentions, then
7  decertification may be appropriate.  While the Court has some skepticism that Dr.
8  McCann's model is supportable, what is important at this stage of the proceedings is
9  that plaintiffs have offered a facially plausible method for showing causation and
10  impact across-the-board, so that a class should be certified.

11             **c.**    **Superiority**

12       In addition to a predominance of common questions, a class proponent must also
13  demonstrate that the class action is superior to other methods of adjudicating the
14  controversy.  See <u>Valentino</u>, 97 F.3d at 1235 (explaining that the party seeking
15  certification needs to make a "showing [as to] why the class mechanism is superior to
16  alternative methods of adjudication").  A class action may be superior where "class-
17  wide litigation of common issues will reduce litigation costs and promote greater
18  efficiency." <u>Valentino</u>, 97 F.3d at 1234.  Rule 23(b)(3)  provides the following non-
19  exhaustive list of four factors to consider in this assessment:

20       (A) the interest of members of the class in individually controlling the
21       prosecution or defense of separate actions;
22       (B) the extent and nature of any litigation concerning the controversy
23       already commenced by or against members of the class;
24       (C) the desirability or undesirability of concentrating the litigation of
25       the claims in the particular forum;
26       (D) the difficulties likely to be encountered in the management of a
27       class action.
28  Fed. R. Civ. P. 23(b)(3).

The greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action. See e.g., Dalkon Shield, 693 F.2d at 856. Thus, a class action is improper where an individual class member would be compelled to try "numerous and substantial issues to establish his or her right to recover individually, after liability to the class is established." Schwarzer et al., supra, at § 10:361. On the other hand, the fact that individual members seek separate damages is not fatal to class treatment. Id.

In the present case, the parties disagree about the manageability of this litigation as a class action, specifically, whether plaintiffs will be capable of demonstrating class-wide injury and damages through the use of common proof.[11] See Opp'n at 41 ("Plaintiffs have no way of trying the injury and damages elements of their proposed classes according to classwide proof."). Plaintiffs contend that their experts can demonstrate the fact of injury and damages through generalized proof by two methods of financial modeling, based on computer data and other information readily obtainable from Allianz's business records. Negrete Reply at 20.

Dr. McCann proposes to calculate damages, measured by "the amount paid by the class member for each Allianz annuity less any partial withdrawals plus interest at a reasonable market rate."[12] McCann Supp. Decl. ¶ 4. Dr. McCann opines that such calculations can be made on a class-wide basis using standard financial software. Id. ¶ 6. The second method Dr. McCann proposes, styled "Lost Value Damages," measures "the difference between the value of each class member's annuity and the value of a

---

[11] In light of the Court's finding above that common issues predominate, it is unpersuaded that, as Allianz contends, "the trier-of-fact [must] hear evidence on each individual sales encounter with an independent agent," necessitating thousands of "individual minitrials." Opp'n at 40.

[12] Plaintiffs suggest that class members currently owning Allianz annuities could surrender them, or alternatively, retain them and receive a cash amount reflecting their damages as of the trial date. Negrete Reply at 20.

comparable liquid investment product" unencumbered by the hidden costs inhering in the Allianz products. Id. ¶ 7. Dr. McCann states that he has developed software to reliably perform the lost value damage calculations utilizing data available for Allianz policyholder records. Id. ¶ 11. Plaintiffs further contend that such "benchmark damage analyses "are commonplace in class action cases like this." Negrete Reply at 21 (citing In re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 354 (N.D. Cal. 2005)).

"The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where [] common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003) (citing In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977); Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 798 (10th Cir.1970); 5 James Wm. Moore, Moore's Federal Practice § 23.46[2][a], at 23-208 & n. 11 (3d ed. 1997 & Supp. 2006) (collecting additional cases); Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir.1975) ( "The amount of damages is invariably an individual question and does not defeat class action treatment.")). In Klay v. Humana, Inc., the Eleventh Circuit observed that, "Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." 382 F.3d 1241, 1259 -1260 (11th Cir. 2004); see also Smilow, 323 F.3d at 40 (same); 5 Moore, supra, § 23.46[3], at 23-210 & n.18 (collecting cases holding that class certification is appropriate where damages are calculable by mathematical formula). Moreover, "in assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all . . . Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-

wide basis." Id. (citations, quotations and brackets omitted); see also In re Rubber Chems. Antitrust Litig., 232 F.R.D., at 354 (same).

Allianz attacks various assertions in Dr. McCann's declaration regarding the negative economic value of the annuities in question. Opp'n at 16-18. Allianz contends McCann's analysis is flawed, inter alia, because Dr. McCann (1) evaluated only one of Allianz's approximately thirty deferred annuity products; (2) ignored the objectives and risk preferences of individual investors; and (3) utilized too small a sample size in assessing the tax implications of deferral. Id. Allianz also argues that Dr. McCann (and plaintiffs generally) offer no evidence of first-hand accounts concerning what information was communicated to potential consumers at the time of sale, assuming instead the very material omissions that plaintiffs must demonstrate. Id. at 18-20.

Dr. McCann has now analyzed the vast majority of annuities at issue in this case. Second Supp. McCann Decl., ¶ 5. He concludes that "[i]n sum, each of the Allianz equity-indexed and fixed deferred annuities I analyzed is extraordinarily costly, especially in comparison to the readily available alternative investments comprising the Benchmark Portfolios. The Allianz annuities are so inferior compared to the Benchmark Portfolios that no rational class member would purchase one of these annuities if all of the material facts were disclosed to the class member." Second Supp. McCann Decl., ¶ 5.

The Court concludes that, at the certification stage, plaintiffs need only show that their proposed methods are plausible. Plaintiffs have met this burden. Moreover, at least two of the remaining three factors identified by Rule 23(b)(3) appear to favor the class mechanism. First, depending on the size of their annuity investment, numerous, if not most, class members are likely to lack the financial incentive to litigate the suit individually – the cost of litigation will outweigh their potential recovery. Second, because plaintiffs have alleged an overarching fraudulent scheme and include a California sub-class, it is desirable to consolidate the claims in this forum. Finally, the

Court notes that they are at least three other class actions presently pending against the Allianz, namely, <u>Iorio v. Asset. Mktg. Sys.</u>, Case No. CV 05-06331 EG (BLM) (S.D. Cal.); <u>Mooney v. Allianz Life Ins. Co. of N. Am.</u>, Case No. CV 06-00545 ADM/FLN (D. Minn.); <u>Castell v. Allianz Life Ins. Co. of N. Am.</u>, Case No. MC 03-20405 (Minn.). These actions, however, appear to seek certification of statewide classes only, and to involve claims that differ from those at issue here.[13] Accordingly, this factor does not alter the Court's conclusion that a class action is the superior method of adjudicating the present case. See <u>Valentino</u>, 97 F.3d at 1235.

In sum, the Court finds that plaintiffs have satisfied both the predominance and superiority prongs of Rule 23(b)(3). The nationwide class may therefore be certified.

## B. The California Class

### 1. Rule 23(a) Requirements

Plaintiffs estimate that there are more than 33,000 members of the California sub-class. NMCC at 30. Accordingly, the Court finds that plaintiffs have met their burden of demonstrating numerosity under Rule 23(a)(1). See <u>Ansari v. New York Univ.</u>, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). Furthermore, Negrete's UCL, FAL and § 15610 claims, like plaintiffs' nationwide RICO claims, all arise out of Allianz's allegedly overarching fraudulent scheme. Therefore, for the reasons set forth in Section III(A)(1)(c), the Court similarly finds that Negrete's UCL, FAL and § 15610 claims are typical of the members of the California sub-class. Likewise, for the reasons set forth in Section III(A)(1)(d) above, Negrete has satisfied the adequacy of representation requirement of 23(a)(4) with respect to the California sub-class. Finally, as with the nationwide class analysis, the Court will address commonality and predominance together under Rule 23(b)(3).

---

[13] Plaintiffs requests that Court "exclude from the proposed class definition the 'cash bonus' annuities at issue in <u>Castell</u> and any person who purchased Allianz or LifeUSA Insurance Company deferred annuities consisting solely of one or more of those cash bonus annuities." Negrete Reply at 3 & n.3.

## 2.   **Rule 23(b)(3) Requirements**

Allianz contends that certification of Negrete's putative California sub-class is inappropriate under Rule 23(b)(3) for the same reasons plaintiffs' putative nationwide RICO class cannot be certified. Opp'n at 43. Specifically, Allianz argues that Proposition 64 amended the UCL and FAL to require injury-in-fact and causation as a prerequisite to suit. Id. at 44. Allianz thus contends that, like plaintiffs' RICO claims, Negrete's UCL and FAL claims fail because individual issues of reliance predominate over questions common to the class.[14] Id. at 45-46. Allianz similarly argues that Negrete must, but has not, demonstrate proximate cause as to the § 15610 claim. Id. at 46 n.30.

In Pfizer Inc. v. Superior Court, the California Court of Appeal held that Proposition 64 added a reliance element to misrepresentation claims brought under the UCL or FAL. 45 Cal. Rptr. 3d 840, 851-52 (Cal. App. 2006) ("Inherent in Proposition 64's requirement that a plaintiff suffered 'injury in fact ... *as a result of*' the fraudulent business practice or false advertising is that a plaintiff actually *relied* on the misrepresentation and as a result, was injured thereby.") (emphasis in original) (internal citations omitted).[15]

Negrete's UCL, FAL and § 15610 claims and plaintiffs' nationwide RICO claims are predicated on identical allegations. In light of the Court's conclusion above

---

[14] Plaintiffs dispute that Proposition 64 added a reliance element to claims brought under the UCL and FAL. Negrete Reply at 22-24.

[15] In so holding, the California Court of Appeals followed Laster v. T-Mobile USA, Inc., 407 F. Supp. 2d 1181 (S.D. Cal. 2005), rather than Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1138 (C.D. Cal. 2005), relied upon by plaintiffs. The California Supreme Court has granted review of Pfizer Inc. v. Superior Court, 141 Cal. App. 4th 290 (2006), *rev. granted*, 2006 Cal. LEXIS 13327 (Nov. 1, 2006), and In re Tobacco II Cases, 142 Cal. App. 4th 891 (2006), *rev. granted* 2006 Cal. LEXIS 13332 (Nov. 1, 2006). In light of the Court's disposition of Negrete's class certification motion, it is unnecessary for the Court to resolve the issue of whether Prop. 64 now requires proof of actual reliance on the part of a UCL or FAL plaintiff.

that plaintiffs' have adequately demonstrated a class-wide method of proving reliance and causation by means of class-wide circumstantial evidence, the Court similarly finds that common issues regarding Allianz's alleged overarching fraudulent scheme predominate over questions affecting only individual members of the California subclass. Accordingly, the Court finds that Negrete has satisfied the requirements of Rule 23(a)(2) and Rule 23(b)(3), and that certification of the California subclass is appropriate as to these claims.[16]

### D.     Breach of Fiduciary Duties Claims

#### 1.     Rule 23(a) Requirements

In light of the Court's conclusions in Sections III(A)(1) and III(B)(1), and for the same reasons, the Court finds that plaintiffs have met their burden of establishing numerosity, typicality and adequacy of representation under Rule 23(a).

#### 2     Rule 23(b)(3) Requirements

As with the nationwide and California classes, Allianz contends that individuals issues predominate with respect to plaintiffs' fiduciary duty claims under Rule 23(b)(3). Opp'n at 46. Specifically, Allianz argues that because a claim for breach of (and aiding and abetting breach of) fiduciary duty requires proof of "breach" and "proximate cause," "the jury would need to examine the communications a particular independent agent made to a particular client and shy that particular client chose to purchase an annuity." Id. at 46-47. Plaintiffs respond that, as with their other claims, "proof of breach" and causation are "based upon Allianz's uniform omissions of several material facts and its failure to establish policies or procedures to fulfill its fiduciary obligations." Negrete Reply at 25. Plaintiffs argue in the alternative, that causation may and has been established class-wide "by virtue of the fact that Plaintiff

---

[16] To the extent plaintiffs can establish an independent claim for restitution based upon the violations of statutory law, the foregoing analysis applies to these claims.

1   and class members each purchased Allianz's illiquid and poorly performing annuities."

2   Id.

3        The Court declines to certify plaintiffs' breach of fiduciary duty and aiding and

4   abetting breach of fiduciary duty claims, because the Court finds that individual issues

5   predominate over those common to the class.  Specifically, unlike the claims which are

6   predicated on common, standardized sales materials, plaintiffs have failed to

7   demonstrate a class-wide means by which Allianz, its FMO and agents can prove that

8   they "foster[ed] a relationship of trust and confidence" with the putative class members

9   or "purported to act as [their] financial planners."   NMCC at 9-10; HMCC at 24.

10  Accordingly, plaintiffs' breach of fiduciary duty claims necessarily require an

11  examination of the in-person oral representations made to each class member.  As such,

12  it cannot be said that issues common to the class predominate over issues unique to

13  individual class members.  Plaintiffs have thus failed to satisfy the requirements of

14  commonality and predominance under Rules 23(a)(2) and 23(b)(3).  Plaintiffs' motion

15  for class certification as to their claims for breach of fiduciary duty, and aiding and

16  abetting the breach of fiduciary duty, is therefore DENIED.

17  **V.    CONCLUSION**

18       For the foregoing reasons, the Court grants class certification as to plaintiffs'

19  RICO UCL, FAL and §§ 15610 claims and denies class certification as to plaintiffs'

20  breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims.  The

21  RICO class is as follows:

22            All persons who within the applicable statute of limitations of

23            the date of the commencement of this action and while 65

24            years of age or older, purchased one or more Allianz Life

25            Insurance Company of North America deferred Annuities

26            either directly, or through surrender (in whole or part) of an

27            existing permanent life insurance policy or annuity, or by

28

borrowing against an existing permanent life insurance policy.

The California class is as follows:

All California residents who within the applicable statute of limitations of the date of commencement of this action and while 65 years of age or older, purchased one or more Allianz Insurance Company of North America deferred annuities either directly, or through the surrender (in whole or part) of an existing permanent life insurance policy or annuity, or by borrowing against an existing permanent life insurance policy.

Both classes exclude plaintiffs in <u>Castell v. Allianz Life Ins. Co. of N. Am.</u>, Case No. MC 03-20405 (Minn.), and persons who purchased Allianz or LifeUSA Insurance Company deferred annuities consisting solely of one or more cash bonus annuities.

IT IS SO ORDERED.

Dated:  November 21, 2006

*Christine a. Snyde*

CHRISTINA A. SNYDER
United States District Judge