UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| RITA SANCHEZ | N/A | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendant: | |
| N/A | | N/A | |

**Proceedings:**   (In Chambers:) DEFENDANT'S MOTION TO EXCLUDE THE DECLARATION OF CRAIG McCANN (filed 02/13/09)

## I.   INTRODUCTION

In these related class action cases, plaintiffs Vida F. Negrete ("Negrete"), as conservator for Everett Ow ("Ow"), and Carolyn B. Healey ("Healey") (collectively, "plaintiffs"), on behalf of themselves and a nationwide class of an estimated 200,000 senior citizens, allege that Allianz Life Insurance Company of North America, Inc. ("Allianz" or "defendant") conspired with a network of affiliated Field Marketing Organizations ("FMOs") to induce class members to purchase deferred annuities issued by Allianz by means of misleading statements and omissions regarding the value of those annuities.

Negrete filed suit against Allianz on September 19, 2005, alleging the following claims for relief: (1) violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, et seq. ("RICO"); (2) elder abuse under Cal. Welf. & Inst. Code §§ 15610 et seq. ("§ 15610"); (3) unlawful, unfair and fraudulent business practices under California's Unfair Competition Law ("the UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) false and misleading advertising under Cal. Bus. & Prof. Code §§ 17500, et seq. (the "False Advertising Law" or "FAL"); (5) breach of fiduciary duty; (6) aiding and abetting breach of fiduciary duty; and (7) unjust enrichment and imposition of constructive trust. On December 22, 2005, Healey filed suit against Allianz, alleging

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

similar claims for relief. The Court ordered coordination of the two actions as related cases.

On April 14, 2008, defendant filed a motion for partial summary judgment on plaintiffs' RICO claim, arguing that plaintiffs cannot prove a causal link between the alleged fraud and the alleged harm.[1] See Dkt. 291. On July 25, 2008, plaintiffs filed an opposition to defendant's motion and submitted the declaration of Craig McCann, Ph.D. in support of their opposition. See Dkts. 374 & 376.

On February 13, 2009, defendant filed the instant motion to exclude the declaration of Dr. McCann.

Since April 2009, the Court has granted multiple continuances of case deadlines in this case, while the Court considered issues relating to the admissibility of the opinions of Dr. McCann in two similar cases: Vida F. Negrete v. Fidelity & Guar. Life Ins. Co., CV 05-6837 CAS (MANx) ("F&G") and In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig., MDL 07-1825 CAS (MANx) ("Midland"). Plaintiffs in the instant case are represented by the same counsel as plaintiffs in Midland and F&G. As in the instant case, plaintiffs utilized Dr. Craig McCann as their designated expert in offering opinions about the worth or value of annuities in Midland and F&G.

After considering summary judgment motions and motions to exclude Dr. McCann's declaration brought by defendants in Midland and F&G, the Court appointed, pursuant to Federal Rule of Evidence 706, Dr. Zvi Bodie as a neutral expert witness. See F&G Dkt. No. 171, Amended Order Appointing Rule 706 Expert Witness; see also Midland Dkt. No. 199. The Court, however, never considered the expert report issued by Dr. Bodie, never held the contemplated Daubert hearing, never reviewed or ruled on the summary judgment motions, and made no judicial determination as to the reliability of

---

[1] Defendant filed a renewed motion for partial summary judgment as to plaintiffs' RICO claim on June 10, 2011. See Dkt. 695.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Dr. McCann's opinions because both Midland and F&G settled before the Court undertook any of those tasks. See Midland Dkt. No. 463 (final order and judgment approving settlement agreement); F&G Dkt. No. 317 (same).

After the settlements in Midland and F&G, defendant moved to appoint Dr. Bodie as an independent expert in this action. Defendant also moved to intervene and unseal records related to Dr. Bodie's testimony in Midland and F&G. On February 22, 2011, the Court denied defendant's motions. See Dkt. 630; Midland Dkt. 453; F&G Dkt. 406. The Court found that it was premature to appoint Dr. Bodie as an independent expert in this case because the Court had not yet considered defendant's pending summary judgment motion and motion to exclude Dr. McCann. Dkt. 630 at 4. The Court denied defendant's request to unseal documents relating to Dr. Bodie in Midland and F&G for similar reasons. See Midland Dkt. 453 at 7–9 ; F&G Dkt. 406 at 7–9. The Court indicated that it may revisit whether to unseal the Bodie-related documents if it were inclined to appoint Dr. Bodie as an independent expert in these cases. Id. at 9 n.5.[2]

On March 22, 2011, plaintiffs filed an opposition to defendant's motion to exclude the declaration of Dr. McCann. Along with their opposition, plaintiffs filed a supplemental declaration of Dr. McCann, as well as the declarations of Neil D. Pearson, Ph.D. and Hayne E. Leland, Ph.D. On June 27, 2011, defendant filed a reply in support of its motion to exclude the declaration of Dr. McCann. On October 5 and October 6, 2011, the Court conducted an evidentiary hearing.[3] After carefully considering the parties' arguments, the Court finds and concludes as follows.

---

[2] The Court has made no determination as to whether Dr. Bode or some independent expert should be appointed at trial.

[3] On October 6, 2011, the Court heard oral argument on defendant's renewed motion for partial summary judgment. The Court issues its order denying defendant's renewed motion ("Renewed Summary Judgment Order") contemporaneously with this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

**II.   LEGAL STANDARD**

Under Rule 702 of the Federal Rules of Evidence,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Prior to admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993). When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by making a preliminary determination of whether the expert's proposed testimony is reliable. Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002), amended by 319 F.3d 1073 (9th Cir. 2003). While the court has broad discretion in deciding whether this standard has been met, the court cannot shirk its gatekeeping duties. See General Elec. Co. v. Joiner, 522 U.S. 136, 142, 146 (1997); DSU Medical Corp. v. JMS Co., Ltd., 296 F. Supp. 2d 1140, 1146-48 (N.D. Cal. 2003). The trial court's role under Rule 702 applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized knowledge.'" Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999).

**III.   DISCUSSION**

    **A.   The Experts' Positions**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Plaintiffs' theory of proximate causation and damage depends on proof that the annuities in question were worth substantially less than the premiums paid for them on the date of purchase. In support of their arguments on proximate causation and damage, plaintiffs primarily rely upon the declarations of Dr. McCann.[4] In his initial declaration filed in opposition to defendant's motion for summary judgment, Dr. McCann offers three alternative class-wide measures of damages: an "out-of-pocket" measure, a so-called "benefit-of-the-bargain" method, and a "restitutionary" measure. See McCann Decl. ¶¶ 48–51, 52–59, 60. The parties' briefing, and the Court's analysis, largely focuses on Dr. McCann's "out-of-pocket" measure.[5]

---

[4] Plaintiffs submitted a declaration by Dr. McCann in support of their oppositions to defendant's motion for summary judgment. Plaintiffs also submitted a supplemental declaration by Dr. McCann in opposition to defendant's motion to exclude Dr. McCann. The Court herein refers to these respective declarations as "McCann Decl." and "McCann Supp. Decl."

Dr. McCann appears qualified to render opinions on the value of the annuities at issue. Dr. McCann, a former senior financial economist in the Office of Economic Analysis of the Securities and Exchange Commission, obtained a Ph.D. in Economics from UCLA and is a Chartered Financial Analyst. He has held various academic and business consulting positions. McCann Decl. ¶¶ 3–11.

At the evidentiary hearing, counsel for plaintiffs disclosed that on September 30, 2011, a federal court in the Southern District of Texas had vacated an arbitration award based in part on the fact that the arbitration panel relied on the allegedly knowingly false testimony of Dr. McCann. Morgan Keegan & Co., Inc. v. Garrett, --- F. Supp. 2d --- 2011 WL 4716060, *1 (S.D. Tex. Sept. 30, 2011). Whether or not Dr. McCann knowingly falsified testimony ultimately affects his credibility, and is therefore more appropriately considered by the trier of fact.

[5] The parties concentrate on Dr. McCann's "out-of-pocket" measure due to the Court's February 25, 2008 tentative ruling on summary judgment in Midland. In the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

    Dr. McCann's "out-of-pocket" theory calculates damages by determining the difference between the premiums paid by each plaintiff and the discounted present value of the annuities' future cash flows. In making this calculation, Dr. McCann computes: (1) the projected accumulation value of each of plaintiffs' annuities on the annuity's applicable maturity date; (ii) the present value of the annuity on the purchase date by applying a discount rate reflecting the risk that Allianz will not actually pay the projected accumulation value; and (iii) the difference between the present value of the Allianz annuity and the amount actually paid for the annuity. According to Dr. McCann, this measure shows that each plaintiff suffered a substantial and immediate loss due to the very high, undisclosed costs of Allianz's annuity products. See McCann Decl. ¶¶ 43, 49–50.

    Defendant attacks the soundness of Dr. McCann's opinions, offering the

---

tentative ruling, the Court stated:

> [I]t does not appear how Dr. McCann's benefit-of-the-bargain damages theory can ever be relevant in light of plaintiffs' allegations herein. Plaintiffs do not allege that Midland failed to provide the promised annuity; instead, plaintiffs allege that Midland failed to disclose facts regarding the costs of the annuity which, if disclosed, would have led any rational investor to choose another financial instrument. Plaintiffs nonetheless received all that was promised to them. Under these circumstances, Dr. McCann's alternative investment scenario seems to be untethered to any legally recognized theory of benefit-of-the-bargain damages.

Midland, Tentative Civil Minutes at 13–14 (Feb. 25, 2008). The Court never issued its tentative order in Midland, and instead opted to appoint Dr. Bodie as a Rule 706 independent expert. See Midland Dkt. 186, 199.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

declaration of Craig Merrill, Ph.D., in support of its arguments ("Merrill Decl.").[6] Dr. Merrill argues that Dr. McCann's "out-of-pocket" theory is flawed for at least three reasons. First, Dr. Merrill asserts that Dr. McCann has only valued one feature of Allianz's deferred annuity – the maturity payoff – and has ignored other payout features of the annuity – such as the death benefit and penalty-free withdrawals. Merrill Decl. ¶¶ 10, 32–56. Thus, Dr. Merrill argues that Dr. McCann's methodology undervalues the entire Allianz annuity. Id. ¶¶ 10, Exh. 1.

Second, Dr. Merrill claims that Dr. McCann's risk-neutral model is not appropriate to value the maturity payoff of a fixed indexed annuity. Merrill Decl. ¶ 10, 57–71. Dr. Merrill asserts that Dr. McCann's model has not been subjected to empirical testing, published in a peer-reviewed academic journal, or accepted by the scientific community. Id. ¶ 57. Dr. Merrill maintains that the absence of "complete markets" for deferred annuities precludes the application of the risk-neutral model employed by Dr. McCann. Id. ¶ 70.

Third, Dr. Merrill asserts that Dr. McCann's application of risk-neutral and other valuation methods to the valuation of the maturity payoff is based on assumptions not supported by actual data and inconsistent choices of certain inputs. Merrill Decl. ¶¶ 10, 72. Dr. Merrill points to three examples:

(a) Dr. McCann's assumption that continuously compounded index returns will be identically and independently distributed and follow a normal distribution. Id. ¶¶ 72–84. Dr. Merrill argues that this assumption is contradicted by the history of the S&P 500

---

[6] Dr. Merrill, like Dr. McCann, appears to be qualified to render opinions on the value of the annuities at issue. Dr. Merrill is a Professor of Finance and Risk Management at Brigham Young University's Marriott School of Management and a Fellow of the Wharton Financial Institutions Center at the University of Pennsylvania. Merrill Decl. ¶ 2. Dr. Merrill teaches courses in corporate risk management and fixed-income securities, and is the author of numerous academic papers. Id. ¶¶ 3–6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Index, which does not follow a normal distribution. Id. ¶ 77. Dr. Merrill opines that Dr. McCann's normal distribution assumption leads to a significant understating of crediting rates, thus ensuring that Dr. McCann's valuation of each annuity's maturity payoff is significantly understated. Id. ¶ 84.

(b) Dr. McCann's use of a risky discount rate. Id. ¶¶ 85–90. Dr. Merrill maintains that Dr. McCann's simultaneous use of a risk-free rate as the mean around which he models the predicted returns of the index, and a risky rate to discount the predicated payoffs in the account, violates customary valuation principles and significantly reduces the value of the annuity's maturity payoff. Id.

(c) Dr. McCann's calculation of "annuitization factors." Id. ¶¶ 91–94. Dr. Merrill contends that Dr. McCann artificially reduces the predicted ultimate payoffs of the two-tier annuities by assuming that Allianz will apply only the minimum guaranteed interest rate. Id. ¶ 91. Dr. Merrill asserts that this assumption ignores the possibility that Allianz will apply a rate above the minimum guaranteed rate. Id. In addition, Dr. Merrill argues that Dr. McCann's application of a AA corporate bond discount rate is inappropriate because it fails to account for the fact that annuity payouts are backed by state guarantee funds, and thus substantially risk free. Id. ¶ 94.

In response plaintiffs submit the supplemental declaration of Dr. McCann. Dr. McCann's supplemental declaration addresses many of the criticisms leveled by Dr. Merrill. First, Dr. McCann updates his model to disaggregate the damages by separately quantifying the alleged diminished values of the annuities resulting from each of plaintiffs' challenged misrepresentations. McCann Supp. Decl. ¶¶ 24–26, 91–103. Dr. McCann computes separate losses caused by: (1) allegedly excessive undisclosed agent commissions, (2) an undisclosed surrender charge, known internally as the "haircut," and (3) an undisclosed practice of clawing back a promised premium bonus. Id. ¶¶ 91–103.

Second, Dr. McCann incorporates the annuity payoff features into his model that Dr. Merrill claimed he ignored in his prior model. Id. ¶¶ 51–72. Dr. McCann opines that incorporating these other ancillary features of the annuity does not materially change the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

annuity's value. Id. ¶¶ 73–77.

Finally, Dr. McCann dedicates a significant portion of his supplemental declaration to defending his methodology and use of the "risk-neutral" valuation approach. Id. ¶¶ 28–50. Dr. McCann argues that the risk-neutral approach is well-accepted and widely used to value financial instruments, including equity-indexed annuities. Id. ¶¶ 28–36. Dr. McCann further contends that a risk-adjusted discount rate is properly incorporated in his valuation model to account for the "counterparty risk" – namely, that Allianz may default on its obligations. Id. ¶¶ 37–44. Finally, Dr. McCann asserts that his model properly assumes normal distribution returns, but that even incorporating a variety of possible future interest rate paths, as Dr. Merrill suggests, does not materially impact the valuation of the annuity. Id. ¶¶ 45–50.

Plaintiffs also counter Dr. Merrill's conclusions with the declarations of Neil D. Pearson, Ph.D. ("Pearson Decl.") and Hayne E. Leland, Ph.D. ("Leland Decl."). Dr. Leland opines that the risk-neutral framework is properly used by Dr. McCann to value annuities. Leland Decl. ¶ 2. Dr. Leland further contends that Dr. Merrilll's contention that the risk-neutral methodology cannot be applied to value annuities is incorrect and finds no support in the published scientific literature or in the marketplace. Id. Similarly, Dr. Pearson argues that the risk-neutral valuation approach used by Dr. McCann is the standard and predominant methodology for valuing complex financial instruments and contracts, and that Dr. McCann has implemented it in a reasonable way Pearson Decl. ¶¶ 11–12. Dr. Pearson maintains that the choices and assumptions Dr. McCann makes in his model are reasonable, but acknowledges that "[t]here is room for experts to disagree about the appropriate assumptions. . . ." Id. ¶ 84.

In his supplemental declaration, Dr. Merrill agrees with the "unremarkable proposition" that risk-neutral valuation is a methodology commonly used by investors in connection with the pricing of certain financial instruments. Merrill Supp. Decl. ¶ 2. Nevertheless, Dr. Merrill argues that the risk-neutral valuation is not a reliable tool for Dr. McCann's purposes because it only provides an estimate of the costs to the seller of providing the payouts to the purchaser. Id. ¶ 6. Dr. Merrill contends that the logic of Dr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

McCann's theory is that every purchaser of an intermediated financial product suffers an immediate loss when he buys the product because the intermediary has costs that must be recovered, as well as some degree of credit risk. Id. ¶ 6, 12–14. If this were the way purchasers "valued" transactions, Dr. Merrill argues, there would be limited economic activity, and no room for financial intermediaries. Id. ¶ 6. Thus, according to Dr. Merrill, Dr. McCann's analysis does not estimate the annuity's true value to the purchaser by taking into account the purchaser's individual preferences. Id. ¶¶ 7–8.

### B.     The Parties' Arguments

Defendant's criticisms of Dr. McCann's testimony can be broken down into two categories: (1) challenges to the relevance of his analysis, and (2) challenges to his methodology. The Court addresses each in turn.

#### 1.     Relevance of Dr. McCann's Analysis

First, defendant argues that Dr. McCann's analysis is not relevant because it is divorced from plaintiffs' real-world transactions and experiences. Mot. at 11; Reply at 1, 3–5, 16–19. Defendant asserts that Ow and Healey did not lose anything on "day one," and actually received as much, and usually more, in benefits than they were promised at the time of purchase. Reply at 2, 3–5. Defendant maintains that it is undisputed that plaintiffs made money on their purchase of annuities, and accordingly they have not suffered any out-of-pocket damage. Id.

Defendant further asserts that Dr. McCann's formulation of "reduced" nonguaranteed benefits does not articulate a concrete financial injury. Reply at 10–16. Defendant contends that Dr. McCann's attempt to "disaggregate" the purported value loss into separate components is not helpful because his analysis still rests on predictions and simulations of post-sale events that are unconnected to plaintiffs and their use of the annuities. Id. at 11. Defendant argues that the only "injury" contemplated in Dr. McCann's reports is a failure to receive even higher nonguaranteed crediting rates than Allianz actually declared and credited. Id. at 13, 15–16. According to Allianz, courts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

have rejected the theory that policy owners are injured by a company's costs because the insurer could have paid more nonguaranteed benefits without those costs. Id. (citing Mear v. Sun Life Assur. Co. of Can., No. 06-12143-RZW, 2008 WL 245217, at *5 (D. Mass. Jan. 24, 2008); Kennedy v. Jackson Nat'l Life Ins. Co., No. C-07-0371, 2010 WL 4123994, at *9 (N.D. Cal. Oct. 6, 2010)).

Accordingly, defendant maintains that even if Dr. McCann employed a generally accepted methodology, his application of that methodology is untethered to the facts of this litigation and therefore irrelevant. Id. at 16–19 (citing Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1315 (Fed. Cir. 2011); Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1040–41 (8th Cir. 1999); United States v. Froelich, 9 Fed. App'x 654, 656 (9th Cir. 2001)).

As an initial matter, plaintiffs respond that Healey and Ow's purported monetary gains do not preclude RICO damages. Opp'n at 24–25. Plaintiffs contend that defendant's argument is predicated on the mistaken notion that because Healey's and Ow's annuities accumulated some gain, Allianz's misrepresentations and omissions are irrelevant. Id. at 24. Plaintiffs argue that, whether termed out-of-pocket damages or something else, the Ninth Circuit has recognized that crediting a lower interest rate to purchasers of annuities than defendant should have is recoverable under RICO. Id. at 24–25 (citing Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168–72 (9th Cir. 2002); In re Nat'l W. Life Ins. Deferred Annuities Litig., 268 F.R.D. 652, 666 (S.D. Cal. 2010); Frankford Trust Co. v. Advest, Inc., 943 F. Supp. 531, 533–34 (E.D. Pa. 1996)). Plaintiffs maintain that the fact their annuities made some gain does not mean that they did not receive as much as they would have absent defendant's conduct. Id. at 25.

Plaintiffs further contend that Dr. McCann's out-of-pocket damage calculation, measuring the difference between the premiums paid by plaintiffs and the fair value of the annuities at the time of purchase, establishes causation under RICO. Id. at 20–21. Plaintiffs argue that to the extent that out-of-pocket damages are intended to restore a plaintiff to the position he or she was in prior to the transaction, Dr. McCann's calculation does precisely that. Id. at 21 (citing In re First Alliance Mortg. Co., 471 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

977, 1001–02 (9th Cir. 2006) (defining "out-of-pocket" damages as "what was paid due to the fraud, as compared to what would have been paid absent the fraud" and noting that this is "the difference in actual value between what the plaintiff gave and what he received"); Matthews v. Kidder, Peabody & Co., 260 F.3d 239, 246–47 (3d Cir. 2001) (holding that plaintiffs sustained injury when they purchased a security for which the seller overstated the expected return and downplayed the inherent risks)).  According to plaintiffs, Dr. McCann's methodology measures the difference between the amount plaintiffs paid (the premium) and the fair value of what they received.  Id. at 22.  Plaintiffs point out that in his supplemental declaration, Dr. McCann calculates the particular amount of the shortfall resulting from each of plaintiffs' challenged misrepresentations.  Id.  Finally, plaintiffs contend that, contrary to defendant's argument, Dr. McCann's analysis does not predict future financial loss.  Id.  Instead, plaintiffs argue, Dr. McCann calculates the damage to plaintiffs resulting from defendant's misrepresentations on the date of purchase.  Id.

     Defendant replies that Dr. McCann's model does not conform to the out-of-pocket damages measure stated in First Alliance.  Reply at 8.  In that case, defendant argues, the court stated that "'out-of-pocket' damages . . . are based on what was paid due to the fraud, as compared to what would have been paid absent the fraud." Id. (quoting First Alliance, 471 F.3d at 1001).  The court noted that "[i]n this case, the out-of-pocket measure of the [mortgage] Borrowers' damages mean the difference, if any, between the fees and interest rates that First Alliance charged and those another lender would have charged." Id. (quoting First Alliance, 471 F.3d at 1001).  Defendant contends that Dr. McCann's model does not offer any comparative analysis between the value associated with Allianz's deferred annuities as compared to those of other insurers that are not "defrauding" their policyholders.  Id.

     In addition, defendant maintains that plaintiffs' citations to Mendoza, National Western, and Frankford Trust are not helpful.  Id. at 9–10.  Defendant argues that the allegations in Mendoza of a complex scheme among commercial fruit growers to depress wages of legally documented agricultural workers by hiring undocumented immigrants bear no relation whatsoever to the claims in this case.  Id. at 9 n.7.  Furthermore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

defendant contends that the decisions in National Western and Frankford Trust have no bearing on Dr. McCann's model because they are "benefit of the bargain" and "lost profits" or "expectancy" damages cases. Id. at 9, 10 n.8.

The Court disagrees with defendant's contention that Dr. McCann's declaration should be excluded as irrelevant. In reaching this determination, the Court finds that defendant's position is premised on a mischaracterization of plaintiffs' injury and an improper measure of plaintiffs' damages.[7] Moreover, the Court concludes that even if Dr. McCann's model does not explicitly compare the value associated with Allianz's deferred annuities with those of other insurers, Dr. McCann's references to "excessive" commissions and surrender charges implicitly require comparison to other insurers' deferred annuity products. More fundamentally, rather than mandating exclusion by the Court, the absence of an explicit comparison to other insurers' annuity products goes to the proper weight a jury should accord Dr. McCann's opinion.

Because the Court finds Dr. McCann's analysis relevant for determining the nature and extent of plaintiffs' alleged injury, Dr. McCann's declaration should be admitted so long as Dr. McCann's methodology is reliable. It is to that issue that the Court now turns.

### 2. Dr. McCann's Methodology

Defendant argues that Dr. McCann's methodology is flawed for many of the same reasons highlighted in the declarations of Dr. Merrill. See Mot. at 12–15, 19–24. Rather

---

[7] Rather than rehash the analysis here, the Court refers the parties to pages 14–17 of the Renewed Summary Judgment Order, in which the Court fully explains the correct characterization of plaintiffs' injury and the proper measure of plaintiffs' damages. The Court finds that when plaintiffs' injury and damages are properly construed, Dr. McCann's analysis is relevant for resolving whether and to what extent plaintiffs have suffered an injury within the meaning of RICO.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

than review Dr. Merrill's arguments detailed above, the Court highlights two of defendant's principal methodological criticisms. First, defendant contends that Dr. McCann's model does not reasonably articulate the worth of an annuity to an individual purchaser because it does not consider the purchaser's unique characteristics, such as risk aversion. Reply at 2. Thus, according to defendant, the risk-neutral valuation method that Dr. McCann uses cannot reliably value a deferred annuity from a purchaser's prospective. Id. at 24. Defendant further contends that in their depositions, Drs. Pearson and Leland confirmed that the risk-neutral valuation model places a present value on predicted cash flows, which is the equivalent of an estimate of the cost to the seller of providing those cash flows. Id. at 20 (citing Leland Depo. at 381, 383; Pearson Depo. at 343).[8]

Second, defendant argues that Dr. McCann's discount of a corporate AA bond rate to account for the risk that Allianz might default on its obligations is arbitrary and not supported by the literature. Reply at 6. Defendant argues that Dr. McCann's discount

---

[8] Defendant also argues that Drs. Leland and Pearson are not qualified because they do not have a sufficient foundation for opining on whether Dr. McCann's model can serve as the reliable methodology in this case. Reply at 22–24. Defendant contends that Dr. Leland is not qualified because he acknowledges limitations in the scope of his analysis and lacks a general expertise with annuities and insurance in general. Id. at 22–23 (citing Willis Decl., Exh. 22). Defendant argues that Dr. Pearson only is qualified to offer an opinion on general risk-neutral valuation principles. Id. at 23. According to defendant, Dr. Pearson has no experience in developing an insurance company's equity-indexed annuity products, he has never "valued" an equity-indexed deferred annuity, and he has never prepared or published a paper relating specifically to equity-indexed annuities. Id. at 23–24 (citing Pearson Depo. at 333–37). The Court finds that Dr. Pearson's expertise on risk-neutral valuation principles qualifies him to render an opinion as to whether Dr. McCann reliably applied those principles in this case. Because the Court does not rely on Dr. Leland's opinion, the Court declines to reach the question of whether Dr. Leland is qualified to opine on Dr. McCann's methodology.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

rate is overstated because of Allianz's reserves and because most of the annuities at issue fall within, or largely within the limits of state guarantee funds. Id. at 24–25.

The Court finds Dr. McCann's methodology is sufficiently reliable to permit that Dr. McCann's declaration to be admitted.

First, defendant's argument that a risk-neutral valuation model cannot reliably value a deferred annuity from a purchaser's prospective is unavailing. Dr. Pearson has confirmed that Dr. McCann's risk-neutral valuation approach "lies squarely in the mainstream" as a standard, accepted methodology properly used to value Allianz's deferred annuities. Pearson Decl. ¶ 12. Furthermore, the risk-neutral approach is endorsed by the academic literature and is widely used in the financial services industry. McCann Supp. Decl. ¶ 31; Pearson Decl. ¶¶ 11–12. Moreover, that Dr. McCann's model does not account for the particular circumstances of individual investors does not compel its exclusion. Rather, Dr. McCann argues that the annuities at issue in this case were so depressed in value as a result of Allianz's misrepresentations that no reasonable consumer would have purchased them no matter his individual circumstances. Whether or not this is the case, is within the province of the jury.

Next, defendant's attack on Dr. McCann's use of a risky discount rate also fails.[9] According to Dr. Pearson, Dr. McCann's use of a AA insurer bond rating is "quite conservative" and "[i]f anything, this discount rate is too low to reflect fully the risks of the annuities." Pearson Decl. ¶¶ 45–55, 80. Moreover, Dr. Pearson argues that applying a risk-adjusted discount rate to account for credit risk is supported by the authoritative accounting literature on valuation, Statement of Financial Accounting Standards 157 ("SFAS 157"), which requires precisely this approach. Id. ¶ 43. To the extent defendant may wish to argue for another rate, the appropriate discount rate is a matter for the trier of

---

[9] At the evidentiary hearing, Dr. Merrill acknowledged that there was some risk of Allianz defaulting on its obligations to policy holders.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

fact.[10]

### IV.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES defendant's motion to exclude the declaration of Dr. McCann.

IT IS SO ORDERED

                                                                                                 :

Initials of Preparer

---

[10] At the evidentiary hearing, Dr. Merrill testified that Dr. McCann's model was necessarily flawed because it returned "day one" values below what policy holders could have received by surrendering their annuities on the first day after the 30-day "free look" period.  This argument is unpersuasive because it assumes a policy holder has perfect knowledge regarding the terms of his policy and that he understands that his best course of action after the expiration of "free look" period may be to surrender his policy as soon as possible.