## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| RITA SANCHEZ | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** **(In Chambers:) DEFENDANT'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT** (filed 06/10/11)

## I.    INTRODUCTION

In these related class action cases, plaintiffs Vida F. Negrete ("Negrete"), as conservator for Everett Ow ("Ow"), and Carolyn B. Healey ("Healey") (collectively, "plaintiffs"), on behalf of themselves and a nationwide class of an estimated 200,000 senior citizens, allege that defendant Allianz Life Insurance Company of North America, Inc. ("Allianz") conspired with a network of affiliated Field Marketing Organizations ("FMOs") to induce class members to purchase deferred annuities issued by Allianz by means of misleading statements and omissions regarding the value of those annuities.

Negrete filed suit against Allianz on September 19, 2005, alleging the following claims for relief: (1) violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, et seq. ("RICO"); (2) elder abuse under Cal. Welf. & Inst. Code §§ 15610 et seq. ("§ 15610"); (3) unlawful, unfair and fraudulent business practices under California's Unfair Competition Law ("the UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) false and misleading advertising under Cal. Bus. & Prof. Code §§ 17500, et seq. (the "False Advertising Law" or "FAL"); (5) breach of fiduciary duty; (6) aiding and abetting breach of fiduciary duty; and (7) unjust enrichment and imposition of constructive trust. On December 22, 2005, Healey filed suit against Allianz, alleging

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|-----------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

similar claims for relief. The Court ordered coordination of the two actions as related cases (collectively, "Negrete"). On November 21, 2006, the Court granted plaintiffs' motion for class certification as to their nationwide RICO claim, as well as a California-only subclass asserting statutory violations, including the UCL. Negrete Dkt. No. 134 ("Class Order").

On March 12, 2010, Allianz moved for summary judgment on the RICO claims of certain Negrete class members which it contended were barred by the doctrine of claim preclusion as a result of the final judgment entered in Allianz's favor on January 29, 2010 in Mooney v. Allianz Life Ins. Co. of N. Am., Case No. CV 06-00545 ADM/FLN (D. Minn) ("Mooney"). In an order issued August 18, 2010 (the "Claim Preclusion Order"), the Court denied Allianz's motion for summary judgment and granted plaintiffs' cross-motion for partial summary judgment on Allianz's affirmative defense of claim preclusion. Claim Preclusion Order at 24. The Court concluded that the RICO claims of certain Negrete class members were not barred by the doctrine of *res judicata* for four reasons. First, the Court found that Allianz had waived its claim preclusion defense by failing to assert it until final judgment was entered in Mooney. Id. at 14. Second, the Court found that Allianz was judicially estopped from asserting claim preclusion by its representations that the Mooney and Negrete cases were distinct. Id. at 13 n.10. Third, the Court found that the RICO claims in Negrete were not the same claims asserted in Mooney. Id. at 17–18. Finally, the Court found that the Mooney class notice language was inadequate to bind the absent Negrete class members. Id. at 24.

On June 10, 2011, Allianz filed a renewed motion for summary judgment on the RICO claims. Plaintiffs opposed the renewed motion on July 15, 2011. Allianz replied on September 16, 2011. The Court heard extensive oral argument on October 6, 2011. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

A key part of Allianz's marketing strategy was emphasis on "no sales charges," an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|------------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

"immediate bonus," and that its annuities would pay "full value" if certain deferral requirements were met.  In reality, Allianz paid commissions to its sales agents as high as 11% and a policy holder could only receive full annuitization value if the annuity remained in deferral for at least five years with payout taken over at least ten years.  A policyholder who annuitized in a shorter period of time would receive the cash value, which included a 10% charge on premiums received, a reduced rate of interest, and no bonus.  Plaintiffs construe the difference between the annuitization value and the cash value to be part of the surrender penalties imposed on plaintiffs who annuitized prematurely or cashed in their policies.

Certain annuity purchasers were subject to Allianz's "expense recovery adjustment" ("ERA").  The parties offer very different characterizations of the ERA, so the Court presents each side's definitions here.  Allianz describes the ERA as part of a formula to determine whether or not policyholders will receive more than the contractually guaranteed annuity payment.  Reply at 14.  Plaintiffs describe the ERA as an undisclosed "reduction to the purchaser's annuitization value, resulting in lower annuitization payments."  Opp'n at 4.  For an annuity holder to avoid the ERA, the annuity would effectively have to remain in deferral for ten years.  In addition to the ERA, plaintiffs also offer evidence that Allianz lowered the annuity yields in order to recoup the cost of the bonus and sales commissions.  The ERA and the yield reductions effectively precluded annuity purchasers from realizing the 10% bonus.  The surrender penalties, reduced yields, and ERA applied even if annuitization took place because of the policyholder's death.

When selling the annuities, Allianz's agents were required to provide prospective purchasers with a sales brochure and Statement of Understanding ("SOU").  The sales brochures set off in large, bold-face type the "10% immediate bonus" or language promising an "upfront" bonus.  Any explanation of the actual workings of the bonus appeared, if at all, in a separate part of the brochure and/or in smaller font.  The sales materials did not specifically discuss how Allianz recouped the bonus through reduced yields and/or the ERA.  When annuity purchasers signed the SOU, they acknowledged that they had received and read the applicable sales brochure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|------------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Everett Ow purchased an Allianz Power 7 annuity and two FlexDex MultiChoice annuities from Allianz agent Mark Lindsey in August of 2002, when Mr. Ow was 82 years old.  Lindsey visited Mr. Ow again in 2004 and sold him an Allianz MasterDex annuity.  Lindsey testified that he provided the consumer brochures and SOUs to Mr. Ow, and that Mr. Ow closely read, highlighted, and asked questions about the brochures.  Although Mr. Ow signed the SOUs, he testified that he did not understand the terms of his deferred annuities.  Mr. Ow also testified that had he known of the adverse features of the annuities he purchased, he would not have purchased them.  Mr. Ow surrendered one of his annuities in 2004, and recently surrendered the remaining annuities.  According to plaintiffs, Mr. Ow incurred penalties and forfeited more than $46,000 as a result of his surrender.  Although Mr. Ow earned positive returns on 3 of his 4 policies, with respect to his MasterDex annuity, Mr. Ow forfeited the entire bonus and the account credits that accumulated over six years resulting in a net loss.

Carolyn Healy purchased an Allianz Bonus Maxxx annuity in February 2002, for $30,000.  Although she signed the SOU, Mrs. Healy testified that she did not understand the terms of her annuity, and that she would not have purchased it had she known of its adverse features.  Mrs. Healy surrendered her BonusMaxxx in September of 2004, paying surrender charges of $6,673 and receiving nearly $1,000 less than her initial premium.

## III.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N.<br>AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N.<br>AMERICA | | |

specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III.   DISCUSSION

Plaintiffs allege RICO violations pursuant to 18 U.S.C. §§ 1962(c) and (d), the essential elements of which are (1) conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. Stanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010). The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4). "Racketeering activity" is defined as certain criminally indictable acts, including mail and wire fraud. Id. § 1961(1). A violation of the mail fraud statute requires proof that the defendant (1) formed a scheme to defraud, (2) used the mails to further the scheme, and (3) "did so with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|-----------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

the specific intent to deceive or defraud." <u>Miller v. Yokohama Tire Corp.</u>, 358 F.3d 616, 620 (9th Cir. 2004). Also required is proof of an injury to "business or property by reason of a violation of section 1962. 18 U.S.C. § 1964(c). The statute's "by reason of" language requires proof of "but for" causation, proximate causation, and a concrete financial loss to a protectable business or property interest. <u>See</u> <u>Hemi Group, LLC v. City of New York</u>, 130 S. Ct. 983, 989 (2010).

Allianz argues that it is entitled to summary judgment because (1) plaintiffs cannot prove (1) a RICO enterprise, (2) an injury "by reason of" the conduct constituting the alleged RICO violation, or (3) a RICO conspiracy. Mot. at 13. Each of Allianz's contentions is addressed in turn.

### A.      Association-in-fact Enterprise

Under <u>Boyle v. United States</u>, "an association-in-fact enterprise must have a structure," consisting of at least three structural features: "relationships among those associated with the enterprise," "a purpose," and "longevity sufficient to permit these associates to pursue the enterprise's purpose." 129 S. Ct. 2237, 2244 (2009). "The concept of 'association' requires both interpersonal relationships and a common interest." <u>Id.</u> However, an association-in-fact RICO enterprise need not have any particular organizational structure:

> Such a group need not have a hierarchical structure or a "chain of command": decisions may be made on an ad hoc basis and by any number of methods–by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.

<u>Id.</u> at 2245–46; <u>accord</u> <u>Ins. Brokerage</u>, 618 F.3d at 368 ("[A]fter <u>Boyle</u>, an association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|----------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

racketeering activity.").

Allianz argues plaintiffs cannot prove an association-in-fact enterprise between and among Allianz and the FMOs that sell its annuity products since plaintiffs can prove neither interpersonal relationships nor a common interest. Mot. at 14. In order to assess Allianz's argument, it is first necessary to examine the nature of the relationship between Allianz and the FMOs.

According to plaintiffs, a "Senior Annuity Enterprise," ("Enterprise") consisting of Allianz, 13 FMOs in which Allianz holds ownership interests, 6 FMOs that have served as members of the Marketing Advisory Committee,[1] and other FMOs, has intentionally targeted senior citizens to sell Allianz annuity products.[2] Plaintiffs' Additional Material Facts ("PAMF") ¶¶ 1–15, 22–37, 67–80, 89. Plaintiffs contend that Allianz's ownership of its major FMOs provides a formal and continuing organizational structure for the Enterprise. Id. ¶ 38. Moreover, according to plaintiffs, the FMOs communicate regularly with each other and with Allianz. Id. ¶¶ 47–51. Specifically, plaintiffs contend that the MAC Board serves as the "voice of the field" and is an intermediary between Allianz and

---

[1] According to plaintiffs, the Marketing Advisory Committee and the Shareholder Advisory Board (collectively the "MAC Board") is a formal committee "established to represent the interest of ALL Field Marketing Organizations and to be a filter when critical decisions are made that directly impact the field." PSGI ¶¶ 16, 61.

[2] At oral argument, plaintiffs' counsel limited the scope of the Enterprise to Allianz, the 13 FMOs in which Allianz holds an ownership interest, and the 6 FMOs that have served as members of the MAC Board. Counsel for Allianz argued that it was inappropriate for plaintiffs to narrow the breadth of the alleged Enterprise at this point in the litigation. For the reasons discussed below, the Court finds a triable issue of fact exists as to the alleged Enterprise in either iteration, and therefore declines to address Allianz's argument. In any event, the Court has the discretion to deem the limitation of the Enterprise to be an amendment to the pleadings. However, the Court declines to make this determination at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

the FMOs, speaking for the FMOs on issues such as product development, recommendations on "rules of engagement" for the FMOs and methods to increase production. Id. ¶ 59-60. Plaintiffs assert that the MAC Board communicates regularly with the FMOs and assembles for quarterly face-to-face meetings. Id. ¶ 63. MAC Board members attend the annual Board meeting of the Allianz unit responsible for annuity development and sales. Id. ¶ 64. Additionally, plaintiffs point to the testimony of the former President and CEO of Allianz's marketing division, Patrick Foley, to support their contention that the MAC Board members interact regularly with Allianz senior management and have a direct voice in company management. Id. ¶ 65–66. Plaintiffs assert that the Enterprise includes a "gallery of senior predators" including Tyrone Clark of Brokers Choice of America, the subject of scathing exposes published by the *Wall Street Journal* in 2002 and *NBC Dateline* in 2008. Id. ¶ 67–75. Allianz allowed Brokers Choice to remain as a MAC Board member throughout most of the class period despite its concession that Clark's reported practices were "demeaning [to seniors] and . . . appalling." Id. at 79.

Plaintiffs further assert that the Enterprise members share the common goal of expanding exploitive sales of Allianz annuities to seniors in order to maximize their mutual profits. Id. ¶¶ 90–92. Specifically, plaintiffs contend that the FMOs earn a commission equal to 1%–2% of the premium attributable to each and every Allianz annuity sold plus annual bonuses based on the amount of premiums collected. Id. ¶¶ 91–92. Plaintiffs maintain that Allianz and the FMO members jointly pioneered sales seminars targeting vulnerable seniors in order to achieve their mutual goal. Id. ¶¶ 96–102.

Plaintiffs further assert that Allianz directs Enterprise members through a variety of contractual provisions and company rules. Id. ¶¶ 139–149. Specifically, plaintiffs assert that Allianz sets minimum sales production requirements for FMOs and agents, requires company-owned FMOs to adhere to specified operating standards for marketing, recruiting, finance and accounting, and has adopted rules restricting FMOs from recruiting agents away from other FMOs. Id. ¶¶ 146–149. Additionally, plaintiffs maintain that Allianz participates in the affairs of the Enterprise by providing its members

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

with products designed for sale to seniors, financial support and materials encouraging and promoting sales to seniors.  Id. ¶¶ 95–125.

Allianz describes its relationship with the FMOs and sales agents differently. Allianz contends that all FMOs, including those that Allianz owns, compete directly in the marketplace with each other.  Defendant's Statement of Uncontroverted Facts ("DSUF") ¶ 190.  Specifically, Allianz asserts that the FMOs act independently of each other, do not make mutual decisions or share mutual goals, and compete in soliciting new and established agents from their competitor FMOs.  Id. ¶¶ 188, 192.  According to Allianz, efforts to sell Allianz products by any one FMO do not benefit any other FMO because a sale by one FMO's agent is a sale another FMO's agent cannot make.  Id. ¶ 191.  Allianz also contends that it does not direct the business activities of the agents who work at the FMOs and who sell its products.  Id. ¶ 163.  Allianz asserts that it has never required agents to attend training programs, and that agents receive sales or product training offered by their FMOs and by Allianz competitors.  Id. ¶¶ 178, 179.  Allianz further contends that it does not require agents to use specified sales techniques or strategies, but admits that any materials independently created to market an Allianz product must be approved by Allianz in advance.  Id. ¶ 180–81.

### 1.    Relationships

Allianz first argues that while the FMOs and their agents have relationships with Allianz, the FMOs do not have interrelationships with other FMOs.  Mot. at 14.  Allianz contends that this "rimless hub-and-spoke configuration" does not satisfy the "relationships" prong of Boyle's structure requirement.  Id. (Citing In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 374–75 (3d Cir. 2010).

Plaintiffs respond that Boyle's loose "relationships among associates" requirement is easily satisfied.  Specifically, plaintiffs argue that Allianz and all of the FMO associates have entered contractual arrangements governing their relationships and division of profits.  Opp'n at 24.  Furthermore, plaintiffs argue that Allianz has a direct ownership interest in 13 of the FMOs, all of whom communicated regularly with each

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|------------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

other and Allianz, and that all of the owned and un-owned FMOs are in turn related to Allianz through the MAC Board.  Id.

The Court finds that summary judgment for Allianz based on Boyle's "relationships" element is inappropriate.  In reaching this determination, the Court finds Allianz's heavy reliance on Ins. Brokerage is misplaced.  In that case, which involved alleged collusion between an insurance broker and its insurer-partners to steer clients to the insurers in return for commissions, the Third Circuit held that a RICO enterprise was not present where plaintiffs merely averred that insurers entered into commission agreements to become "strategic partners," knew the identities of the broker's other insurer-partners and the details of their commission agreements, agreed with the broker not to disclose the details, and adopted similar tax reporting strategies in order to conceal the scheme. 618 F.3d at 374.  By contrast, in the instant matter plaintiffs have offered sufficient evidence for a rational jury to determine that the MAC Board operated as an intermediary for communications between and among FMOs, supplying the "unifying rim" of relationships absent in Ins. Brokerage.[3]  See e.g., PAMF ¶ 51; Declaration of Andrew Friedman ("Friedman Decl."), Ex. 236 (Memo from MAC Board Chairman to all FMOs seeking feedback and concerns in preparation for upcoming MAC Board meeting with Allianz); Ex. 220 (Email from Joe Lehman, Chairman of the MAC Board, soliciting input from various FMOs regarding separate contracts for life and annuity lines); Ex. 310 (Email from Lehman to various FMOs seeking input for upcoming FMO meeting); Ex. 216 (Memo summarizing conference call with large producing FMOs seeking input and feedback on broker-dealer contracts); PAMF ¶ 59; Friedman Decl., Ex. 253 (Email from Dave Sipprell, Allianz Senior Vice President of Strategic Accounts and Eric J. Thomas,

---

[3] Because it finds a triable issue of material fact exists as to whether the MAC Board supplied the "unifying rim" in Allianz's purported "hub-and-spoke" structure, the Court declines to reach plaintiffs' arguments that Boyle's "relationships" element is satisfied by the Entities' hierarchical structure or that the existence of the enterprise may be inferred by evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|--------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Vice President of FMO Distribution, explaining that the MAC Board was established to "represent the interests of ALL Field Marketing Organizations,"[4] noting that "[t]he Board is also expected to bring forth recommendations and provide feedback to the Sr. Management Team at Allianz," and encouraging FMOs to "utilize the MAC Board members if you have questions, comments, recommendations or suggestions"); Ex. 297 (former MAC Board member testified that Allianz would develop a product or improve upon an existing one based on MAC Board requests); Ex. 282 (testimony of Joe Lehman that one of the reasons for the creation of the MAC Board was to allow FMOs to work with Allianz in improving production).

### 2. Common Purpose

Allianz next contends that because each FMO competes "aggressively, and at cross-purposes" with every other FMO, plaintiffs are unable to prove the "common purpose" element required by Boyle. Specifically, Allianz argues that "'[i]f the constituents are competitors, if they are acting independently or at cross purposes – or if the allegation of common purpose is purely conclusory – this prong will not be satisfied.'" Id. at 16 (quoting Gregory P. Joseph, *Civil RICO: A Definitive Guide* 93–94. (3d ed. 2010) ("*Civil RICO*")). Moreover, Allianz maintains that "'were the rule otherwise, competitors who independently engaged in similar types of transactions with the same firm could be considered associates in a common enterprise. Such a result would contravene Boyle's definition of 'enterprise.'" Id. at 16–17 (quoting Ins. Brokerage, 618 F.3d at 375.).

---

[4] Allianz's argument that its reference to the MAC Board as "represent[ing] the interests of ALL Field Marketing Organizations" does not demonstrate any relationship among FMOs, but rather confirms the vertical interaction between Allianz and the nine MAC Board members is unavailing. See Reply at 5. It strains reason–and conflicts with the available evidence–to imagine the MAC Board effectively representing the interests of all FMOs without communication between those FMOs that are members of the MAC Board and those that are not.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|----------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Plaintiffs respond that Allianz's argument that competitors cannot share a common purpose as a matter of law was "squarely rejected" by the court in In re Nat. Western Life Ins. Deferred Annuities Litig. ("National Western I"), 635 F. Supp. 2d 1170 (S.D. Cal. 2009). Opp'n at 27. Moreover, plaintiffs contend that Allianz's factual contention that the FMOs acted at cross-purposes is inconsistent with the record in this case, which shows a "high degree of coordinated conduct" with respect to targeted sales to seniors. Id.

The Court finds Allianz's argument unavailing for the reasons articulated in National Western I. In that case, as in the present matter, an annuities issuer moved for summary judgment as to RICO claims on the basis that it did not share a common purpose with the various national marketing organizations ("NMO") and sales agents who ultimately sold the issuer's products. See id. at 1172. The court cited Odom v. Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007) for the principle that the "common purposes" element does not require the enterprise participants to share all of their purposes in common. Id. The court then found that plaintiffs had set forth sufficient evidence to prove that the issuer, the NMOs, and the sales agents shared the common purpose to sell the issuer's deferred annuities. Id.[5] As in National Western I, plaintiffs

---

[5] Allianz argues that National Western I was incorrectly decided because in distinguishing the Ins. Brokerage district court opinion, the court failed to address Boyle, in which the Supreme Court confirmed that an association-in-fact enterprise must have a structure. Reply at 8. However, this argument fails for three reasons. First, the National Western I court relied substantially on the definition of "common purpose" from United States v. Turkette, 452 U.S. 576, which remained unchanged after Boyle. See Boyle, 129 S. Ct. at 2245 ("As we said in Turkette, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose."). Second, the National Western I court expressly held that nothing about a hub and spoke structure of the type Allianz contends exists here precludes a finding of common purpose. 635 F. Supp at 1175. Third, the court noted that even if an organizational structure were required, the facts of Ins. Brokerage were "plainly distinguishable" as the plaintiffs in that case alleged an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

here have cited sufficient evidence to allow a jury to determine that Allianz, the FMOs, and the sales agents share the "common purpose" of increasing sales of Allianz products through senior-focused promotional materials and seminar programs. Opp'n at 29. Most significantly, the FMOs and sales agents sell Allianz's products, and this relationship involves "more than mere sales" as Allianz exerts control over the FMOs through training, marketing materials, commissions, etc. See National Western I, 635 F. Supp. at 1174.

### B.    Participation in Enterprise Management

Under Reves v. Ernst & Young, 507 U.S. 170, 179 (1990), a RICO plaintiff must establish that the defendant participated in the "operation or management" of the enterprise, taking "some part in directing those affairs." RICO liability requires a "showing that the defendants conducted or participated in the conduct of the *'enterprise's* affairs,' not just their *own* affairs." Id. at 185 (emphases in original).

Allianz argues that it is entitled to summary judgment because plaintiffs cannot prove Allianz operated or managed the purported enterprise as distinct from its own business of underwriting and offering annuity products. Mot. at 18. Specifically, Allianz argues that its mandated use of its sales materials and provision of optional training for sales agents merely evince the "operation of a garden-variety marketing arrangement' between Allianz and the FMOs and their affiliated independent agents." Id. (quoting Crichton v. Golden Rule Ins. Co., 576 F.3d 392, 400 (7th Cir. 2009)).

Plaintiffs respond that under Reves, Allianz need only play "some part" in the operation or management of the enterprise. Opp'n at 31. Accordingly, to escape liability, plaintiffs argue that Allianz must prove as a matter of law that it played "no

---

"indefinite number of ephemeral ad-hoc enterprises created by the insurance broker and involving multiple insurance companies." Id. at 1177.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|-----------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

part" in the operation or management of the enterprise, which it "plainly cannot do." Id.

The Court finds summary judgment inappropriate because a triable issue of fact exists as to whether Allianz has participated in the management of a RICO enterprise. In reaching this conclusion, the Court finds Golden Rule inapposite. The conduct of Allianz and the FMOs in the alleged enterprise far exceeded the mere "conduit" scenario alleged in Golden Rule. See 576 F.3d at 399–400 ("Chricton has done little more than plead facts suggesting the existence of the marketing relationship between the Federation and Golden Rule. . . . His allegations of the Federation's role suggest it was merely a conduit for the sale of Golden Rule's insurance."). In contrast to Golden Rule, here plaintiffs have cited evidence the FMOs prepared and submitted promotional materials, sponsored training programs equipping agents with sales tactics, supplied agents with lists of targets, and exhorted Allianz to endorse and promote sales seminars. PAMF ¶¶ 27–30, 67–80, 148–149. Moreover, unlike in Golden Rule where defendant merely controlled the content of its promotional materials, here Allianz owned and controlled 13 FMOs, retained the right to terminate any FMO, trained sales agents, and required all FMOs and sales agents to promise in writing to supply customers with particular product brochures and SOUs. PAMF ¶ 140–142. In short, there is sufficient evidence for a rational jury to determine that Allianz has participated in "the operation or management" of the enterprise.

## C.    Causal Link Between RICO Conduct and RICO Injury

Having found that a question of material fact exists as to the existence of a RICO enterprise, the Court now turns to the related questions of whether a jury could rationally conclude that a RICO injury is present, and if so, whether Allianz's conduct proximately caused that injury.

### 1.    Existence of a RICO Injury

The RICO statutes provide that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

United States district court" for damages. 18 U.S.C. § 1964(c). A RICO injury is established by proof of: (1) concrete financial loss; and (2) harm to a business or property interest. Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 981 (9th Cir. 2008). To compute RICO damages, "[a] standard measure of out-of-pocket loss is monies paid out minus any value received." Jed S. Rakoff, *Rico Civil and Criminal Law and Strategy* ("*RICO: Criminal and Civil*") § 4.02[2] at 4-6 (2007). The out-of-pocket measure of damages is "the difference in actual value between what the plaintiff gave and what [they] received." In re First Alliance Mortg. Co., 471 F.3d 977, 1001–02 (9th Cir. 2006). "The out-of-pocket measure restores a plaintiff to the financial position he enjoyed prior to the fraudulent transaction." Id.

Allianz contends that it is entitled to summary judgment because plaintiffs cannot prove an actual and concrete loss to their property for three reasons: (1) both plaintiffs enjoyed financial gains; (2) the "reduction" of never promised benefits is not a RICO injury; and (3) California and Florida insurance regulators authorized the value of plaintiffs' policy benefits relative to the premiums paid. Mot. at 33. Each argument is addressed in turn.

### a. Plaintiffs' Alleged Profit from Allianz Annuities

Allianz first contends that rather than suffering an injury to business or property, both plaintiffs profited from their Allianz annuities. Id. at 33. Allianz bases this argument on its contention that the proper measure of plaintiffs' annuities is their accumulation value – which includes the premium bonus – rather than their cash surrender value. Id. at 34. For example, Allianz argues that even though Healey surrendered her annuity for nearly $1,000 less than the $30,000 she paid for it, Healy's policy had an accumulation value of $35,838 on the date of surrender, representing a gain of nearly $6,000. Id. at 35.

Plaintiffs respond that Allianz's argument fails because Ow and Healey each sustained net losses on their investments. Opp'n at 48. Specifically, plaintiffs argue that plaintiffs' out-of-pocket damages should be measured at the date they acquired the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|------------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Allianz annuities, rather than at some later date.  Id. (citing Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv., 189 F.3d 1017, 1032 (9th Cir. 1999) ("out-of-pocket damages are calculated as of the time of the transaction.").  Moreover, plaintiffs maintain that the fact that plaintiffs' accumulation accounts reflect some gain, does not eliminate plaintiffs' injury.  Id.

   The Court agrees with plaintiffs that Allianz's "profits" argument is premised on an incorrect measure of damages.  Under Ambassador Hotel, plaintiffs' out-of-pocket damages should be measured as of the date of the transaction.  See also Abell v. Potomac Ins. Co., 858 F.2d 1104, 1137–38 (5th Cir. 1988) (remanding RICO case because expert used formula discounting to value at time of trial, finding that damages "must be recomputed to determine their present value at the time the bonds were purchased.") (internal emphasis omitted), vacated on other grounds sub nom., Fryar v. Abell, 492 U.S. 914 (1989).  Plaintiffs' expert, Dr. Craig McCann ("Dr. McCann"), a former senior financial economist in the Office of Economic Analysis of the Securities and Exchange Commission,[6] claims to have determined plaintiffs' damages as of the date of plaintiffs' purchase.  McCann July 25, 2008 Decl., ¶ 48.  Specifically, Dr. McCann contends that he isolated the damages directly attributable to each of Allianz's misrepresentations and omissions by separately quantifying the diminished values resulting from the excessive commissions, the ERA, and the illusory bonuses.  McCann March 21, 2011 Decl., ¶ 102. According to Dr. McCann, valued as of the applicable purchase dates, Ow paid a total of $409,844 for annuities that were collectively worth only $362,908 and Healey paid $30,000 for an Allianz annuity worth only $24,954.  Id. ¶16.  The Court finds that based on Dr. McCann's analysis, a rational jury could determine that plaintiffs suffered losses as a result of their purchases of Allianz's annuities.[7]  Moreover, even if the Court were to

---

   [6] Dr. McCann obtained a Ph.D. in Economics from UCLA and is a Chartered Financial Analyst.  McCann July 25, 2008 Decl. ¶¶ 7–8.

   [7] Even absent Dr. McCann's opinion, the Court finds that a rational jury could find that plaintiffs suffered a RICO injury based on plaintiffs' realized losses on certain of their Allianz products.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N.<br>AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N.<br>AMERICA | | |

agree with Allianz that the proper measure is the annuities' accumulation value on the
day of surrender, a gain in accumulation value would not eliminate plaintiffs' injury.
That is, even if plaintiffs' accounts increased in value, it does not follow that plaintiffs
would not have earned a greater profit had Allianz not made the alleged reduction in the
credited rate of return.  See In re Nat. Western Life Ins. Deferred Annuities Litig.
("National Western II"), 268 F.R.D. 652, 666 (S.D. Cal. 2010) ("The fact that Plaintiffs'
accounts increased in value does not mean that the Plaintiffs would not have received
more value absent Defendants['] alleged reduction in the credited rate.").

### b.     Concrete Injury to Business or Property

     Allianz next contends plaintiffs are seeking more benefits than they were promised,
and this claim cannot establish a RICO injury as a matter of law.  Mot. at 35.  To support
its argument, Allianz relies primarily on Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000)
and Impress Commc'ns v. Unumprovident Corp., 335 F. Supp. 2d 1053 (C.D. Cal. 2003).

     Plaintiffs respond that Allianz mischaracterizes plaintiffs' injuries as involving
mere "expectancy" or "intangible property" interests.  Instead, plaintiffs contend that
their annuities' measurably lower yields, higher surrender charges, lost principal and
premium overcharges are concrete financial losses that "easily satisfy" the Ninth Circuit
standard.  Opp'n at 50 (citing Canyon County, 519 F.3d at 976) ("In the ordinary context
of a commercial transaction, a consumer who has been overcharged can claim an injury
to her property, based on a wrongful deprivation of her money.").

     Allianz's argument that plaintiffs have not alleged and cannot prove concrete
financial losses is unpersuasive.  In reaching this conclusion, the Court finds that
plaintiffs' alleged injury is plainly distinguishable from the contract-based injuries at
issue in Maio and Impress Commc'ns.  Specifically, whereas plaintiffs in the present
matter assert immediate and tangible out-of-pocket losses in the form of overpayments
for financial products due to fraudulent misrepresentations by Allianz, the alleged injuries
in Maio  and Impress Commc'ns were nebulous, involving the intrinsic quality of health

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

care services and the inherent value of coverage in disability insurance policies. Moreover, the <u>Maio</u> and <u>Impress Commc'ns</u> courts each emphasized the speculative nature of the plaintiffs' alleged injuries.  <u>See Maio</u>, 221 F.3d at 494 (finding injury insufficient under RICO where it was premised on conclusion that mere possibility of inferior care in the future reduced the economic value of the health insurance); <u>Impress Commc'ns</u>, 335 F. Supp. 2d at 1064, 1065 (noting that in the absence of a claim for benefits, "there can be no showing that the benefits given were less than those purchased with the premiums," and that "any harm [plaintiffs] might have suffered is purely speculative." ).  In contrast, plaintiffs here have provided sufficient evidence of out-of-pocket losses taking place at the moment they purchased annuities from Allianz for a rational jury to conclude that plaintiffs suffered concrete injuries within the meaning of RICO.  <u>See</u> McCann March 21, 2011 Decl. ¶¶ 19–20.

### c.  Authorization by Insurance Regulators

Allianz next argues that plaintiffs cannot prove a RICO injury because the policies at issue were approved by the Florida and California Insurance Commissioners.  Mot. at 37.  Specifically, Allianz contends that Ow's and Healy's annuities were authorized for sale after substantial scrutiny, rate and form examinations, and detailed revisions addressing policy "characteristics" raised by the regulators.  <u>Id.</u>  Accordingly, Allianz argues that under the filed rate doctrine, plaintiffs' opinions about the value of their annuities cannot establish a concrete financial loss within the meaning of RICO.  <u>Id.</u> at 37–38.

Plaintiffs respond that Allianz's annuity contracts were filed with the California Department of Insurance ("DOI") for reference purposes only.  Opp'n at 54.  Moreover, plaintiff argues that even if the contracts were approved, the marketing brochures and SOUs for the products at issue and upon which plaintiffs' claims are based were not approved by regulators.  <u>Id.</u>  In any case, plaintiffs assert that even if the regulators insulated Allianz from liability with respect to the value of its annuities, it would not deprive this Court of authority to adjudicate plaintiffs' claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|---------------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

The Court agrees with plaintiffs that Allianz "regulatory approval" argument is unavailing.  First, the California DOI had no statutory authority to approve or disprove of Allianz annuity contracts.  See Cal. Ins. Code § 10168.93(b) ("[N]othing contained in this section shall be construed as requiring or providing for the prior approval by the commissioner of forms of individual annuity contracts . . . .").  Even if the Allianz contracts were approved by state regulators, it would not deprive this Court of the authority to adjudicate plaintiffs' claims.  See Reichardt v. Life Ins. Co. Of N. Am., 485 F. Supp. 56, 64 (N.D. Cal. 1979) ("The Commissioner's approval of a policy form in the abstract does not preclude a California court . . . from finding that such a policy violates the law."); Addison v. Am. Med. Secur., No Cl 00-01455 (Fla. Cir. Ct. 2002) (courts may review OIR findings for statutory violations.).  Additionally, the Court finds that a triable issue of fact exists as to whether regulators approved any marketing materials prior to their use by Allianz.  Compare DSUF ¶ 141 with PAMF ¶ 241; Friedman Decl., Ex. 124 (email from Vickie Hendrickson, Allianz AVP of Corporate Product Filing Compliance, stating that a Florida Department of Insurance representative admitted that the Department had no jurisdiction to object to Allianz SOU's).

## 2.    Causation of RICO Injury

An injury "by reason of" a RICO violation requires plaintiffs "to show that a RICO predicate offense 'not only was a 'but for' cause of [their] injury, but was the proximate cause as well.'" Hemi Group, 130 S. Ct. At 989 (quoting Holmes v. Secs. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006).[8]

---

[8] The parties dispute at length whether plaintiffs must prove reliance in order to meet the proximate cause requirement.  See Mot. at 21–24, Opp'n at 38–39.  Specifically, plaintiffs cite Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 660 (2008), for the principle that they need not show as a "prerequisite to establishing proximate causation, that [they] relied on the defendant's allege misrepresentations." Opp'n at 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Allianz argues that the RICO violation plaintiffs allege did not cause the alleged RICO injury. Specifically, Allianz contends that plaintiffs cannot prove (1) any promise of contract benefits above contract guarantees, (2) any duty compelling Allianz to disclose its internal pricing or discretionary benefit calculations, or (3) that Allianz did not tell the truth about the terms and conditions of the annuities. Mot. at 21. More fundamentally, Allianz argues that plaintiffs cannot claim their purchases were influenced by a subjective belief that greater interest and payout rates would be paid than those provided by their annuity contracts as such claims would be inconsistent with the signed SOUs expressly advising applicants that they should not expect more than the annuity's guaranteed values. Id.

**a.    Reliance on Brochures and SOUs**

Allianz contends that based on their testimony, plaintiffs cannot prove their reliance on Allianz consumer brochures and SOUs. Allianz cites plaintiffs' conflicting positions in the complaints, deposition testimony, responses to requests for admissions *inter alia*, as to whether plaintiffs read the brochures and SOUs, understood them, and relied on them. Mot. At 22; See e.g., Defendant's Ex. 2 ISO Motion for Summary

---

Although Bridge established that a plaintiff need not show "first-party" reliance where the plaintiff was injured due to a third party's reliance on a defendant's fraudulent misrepresentations, see 553 U.S. at 658, plaintiffs' argument that they need not prove reliance in this case is unavailing. This is so because proof that Allianz's alleged deceptive scheme proximately caused class members to suffer a concrete financial loss will depend on a showing that class members made investment decisions based on material misinformation or omissions about the annuity products marketed to them such that this is a case "where proof of reliance is 'a mile post on the road to causation.'" See Class Order at 14 (quoting Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004). However, as discussed below, plaintiffs have provided adequate evidence of their reliance on Allianz's misrepresentations so as to preclude summary judgment for Allianz.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx) <br> CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE: <br> CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

Judgment, 89 (Deposition testimony of Everett Ow that he "[didn't] . . . recall anything quite like this" when shown the FlexDex Multi-Choice and Power 7 consumer brochures); Defendant's Ex. 22 ISO Motion for Summary Judgment, 400 (Deposition testimony of Carolyn Healey that she "[didn't] recall" seeing the sales materials for her Bonus Maxxx annuity). Moreover, Allianz asserts that either the plaintiffs read and relied on the sales materials and are charged with knowledge of their contents, or they did not read the materials in which case the materials were irrelevant to their purchasing decisions. Id.

Plaintiffs respond that although unnecessary, they have presented ample evidence of actual reliance on Allianz's sales materials. Opp'n at 39. Plaintiffs also contend that it is of no consequence that plaintiffs cannot now specifically recall reading Allianz's marketing materials because a jury could reasonably attribute this to plaintiffs' "advanced ages and the many years that have passed since they made their purchases." Id. at 40.

Allianz's argument that plaintiffs cannot prove reliance on the SOUs and brochures is without merit. Plaintiffs have presented substantial evidence of reliance on Allianz's sales materials including their uncontroverted execution of the SOU's confirming that they reviewed Allianz's sales materials. This Court has already determined that plaintiffs' execution of the SOUs could adequately establish proximate causation. Class Order at 17. Moreover, on similar facts, the court in Iorio v. Allianz Life Ins. Co. Of N. Am. found sufficient evidence to preclude summary judgment. 2008 U.S. Dist. LEXIS 11834, *83 (S.D. Cal. July 8, 2008) ("[Plaintiffs'] signatures on the SOUs, indicating that they had received and read the applicable marketing brochures, and their recollections that a promise of a '10% immediate bonus' factored into their purchasing decisions are sufficient to create a jury question on actual reliance."). While plaintiffs' testimony and discovery responses indicate that they may not recall particular representations from the sales materials years after purchase, this does not "disprove that at the time of the purchase [plaintiffs] relied on the representations contained in [Allianz's] materials." National Western II, 268 F.R.D. at 266. Furthermore, Allianz's contention that if plaintiffs read the SOUs and marketing materials they should be charged with the information contained therein is unavailing because it fails to account for the possibility

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|----------|-----------------------------------------------|------|------------------|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

that plaintiffs read and relied on the SOUs without fully understanding their significance. See e.g., Friedman Decl., Ex. 280 (Deposition testimony of Carolyn Healey that she did not understand the terms of her Bonus Maxxx policy.)

**b.    Duty to Disclose**

Ordinarily, there is no duty "to disclose pricing information during arm's-length contract negotiations," including "no special duty in the relationship between an insurer and a potential insured." Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co., 62 Cal. App. 4th 1166, 1173 (Cal. Ct. App. 1998). However, "[p]roof of an affirmative, material misrepresentation supports a conviction of mail fraud without any additional proof of a fiduciary duty." United States v. Benny, 786 F.2d 1410, 1418 (9th Cir. 1986).

Allianz argues that plaintiffs cannot prove Allianz caused their alleged injury because Allianz was under no duty to disclose information about premium pricing to potential policyholders. Mot. at 24. Allianz relies heavily on Mear v. Sun Life Assur. Co. Of Can., 2008 WL 245217 (D. Mass. Jan. 24, 2008) (dismissing complaint where plaintiff alleged that undisclosed sales charges and "excessive" commissions resulted in diminution of her principal investment) and Kennedy v. Jackson Nat'l Life Ins. Co., 2010 WL 4123994 (N.D. Cal. Oct. 6, 2010) (granting summary judgment to defendant where plaintiff argued defendant violated the duty to disclose by failing to explain the effects of sales commissions) for the principle that Allianz's failure to explain the effects of its costs in determining rates of return did not violate a duty to disclose material information. Mot. at 24–28.

Plaintiffs respond that Allianz's "duty to disclose" argument fails because Allianz has an affirmative duty not to mislead. Opp'n at 40. Moreover, plaintiffs contend that the authorities Allianz cites as immunizing its misrepresentations are "uniformly distinguishable." Opp'n at 42.

The Court finds Allianz "no duty" argument unavailing because a rational jury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

could determine that Allianz's sales materials affirmatively misrepresented that bonuses were "immediate" as well as that its annuities paid "full value" and involved "no sales charges."  Such affirmative misrepresentations would give rise to a duty to fully disclose all material facts necessary to make full and complete disclosure.  That is, even though Allianz may not have had a separate duty to disclose what costs factored into its annuity pricing, "where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated."  <u>Iorio</u>, 2008 U.S. Dist. LEXIS 118344, at *49–*50 (quoting <u>Vega v. Jones, Day, Reavis & Pague</u>, 121 Cal. App. 4th 282, 292 (Cal. Ct. App. 2005)).  Allianz's reliance on <u>Mear</u> and <u>Kennedy</u> is misplaced because those cases are factually distinguishable from the present case.  In contrast to this case where plaintiffs have cited significant evidence of affirmative misrepresentations, the plaintiff's claim in <u>Mear</u> was substantially premised on the argument that the insurer committed "fraud by omission" such that the complaint was "bereft of the specification of the time, place, and content, of any alleged false representation." 2008 WL 245217, at *6.  Moreover, the <u>Mear</u> court found that the defendant made the disclosures that the plaintiff alleged were lacking.  <u>Id.</u> at *25–*26.  <u>Kennedy</u> is similarly distinguishable because the plaintiff's claims were based primarily on alleged omissions in the defendant's annuity contracts rather than affirmative misrepresentations in sales materials.  2010 WL 4123994, at *11.  Insofar as the plaintiff alleged an affirmative misrepresentation in a newspaper advertisement, the <u>Kennedy</u> court noted that the plaintiff had failed to provide any evidence that any sales representative used the advertisement or that plaintiff had even seen the advertisement.  <u>Id.</u> at *9.  Finally, unlike here, the defendant in <u>Kennedy</u> disclosed in bold print on the front page of its annuity contracts that the interest rate on bonus annuities in subsequent years will be lower than the interest rate on non-bonus annuities.  <u>Id.</u> at *11.  Accordingly, because a rational jury could determine that Allianz's sales materials affirmatively misrepresented the terms of its annuities, the Court finds summary judgment for Allianz on the grounds that it had no duty to disclose its pricing methodology is inappropriate.

### c.    Truthfulness of Allianz's Disclosures

Allianz next argues that plaintiffs have not identified any representations that are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

"half truths" that could trigger a duty to disclose or constitute a scheme to defraud. Specifically, Allianz contends that there is no merit to plaintiffs' claims that Allianz's statements regarding "no sales loads," "full value," and "immediate bonuses" were untrue. Mot. at 30–31. Furthermore, Allianz asserts the ERA only applies when policies are annuitized prior to year 11, only can result in a payout rate that exceeds the contract guarantee, and never applies where there is a surrender. Id. at 30. As for the premium bonus, Allianz argues that plaintiffs cannot claim that the bonus was not immediately credited to their annuitization values, or that their contracts were thereafter credited less than the guaranteed interest. Id. at 31.

In response, plaintiffs argue that Allianz made a number of affirmative misrepresentations. Specifically, plaintiffs contend that: (1) Allianz affirmatively misrepresented that plaintiffs' annuities carried no sales charges when they in fact do, (2) Allianz affirmatively misrepresented that policyholders would receive an "immediate bonus" when in fact they would not due to the interaction of lower yields and surrender penalties, and (3) Allianz affirmatively misrepresented that plaintiffs would receive the "full value" if they annuitized after five years, knowing this was not the case given that the ERA applied to all annuitizations occurring before year 11.

Because there is adequate evidence for a rational jury to determine that Allianz's statements concerning the absence of sales charges, the immediate bonus, and full value were misleading, the Court finds summary judgment for Allianz is inappropriate. Moreover, the Court agrees with plaintiffs that it is no defense for Allianz that it complied with the terms of the annuities contracts because plaintiffs' claims rest on their contention that they were deceived into purchasing the annuities through half-truths and misrepresentations in marketing materials rather that Allianz breached the resulting contract.

### D.    RICO Conspiracy

Finally, Allianz argues that plaintiffs' conspiracy claims under 18 U.S.C. § 1962(d) fail as a matter of law because no substantive violation of 18 U.S.C. § 1962(c) can be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-6838 CAS (MANx)<br>CV 05-8908 CAS (MANx) | Date | October 13, 2011 |
|---|---|---|---|
| Title | VIDA F. NEGRETE; ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA; AND RELATED CASE:<br>CAROLYN B. HEALEY, ETC. v. ALLIANZ LIFE INS. CO. OF N. AMERICA | | |

proven. Mot. at 39–40.

However, because the Court declines to grant summary adjudication to Allianz with respect to plaintiffs' § 1962(c) claim for the reasons articulated above, Allianz's request for summary adjudication of plaintiffs' conspiracy claim under § 1962(d) fails as well. See Howard v. Am. Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000) ("[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy."); Smith v. Levine Leichtman Capital Partners, Inc., 723 F. Supp. 2d 1205, 1216 (N.D. Cal. 2010) ("Allegations that the defendants knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise are sufficient to state a claim under Section 1962(d).") (citing United States v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004)). The evidence plaintiffs have offered of Allianz's significant role in directing the affairs of the alleged Enterprise creates a question of material fact as to whether Allianz knowingly agreed to facilitate a scheme that included the operation or management of the Enterprise such that summary adjudication of plaintiffs' conspiracy claim is inappropriate.

**IV.   CONCLUSION**

In accordance with the foregoing, the Court hereby DENIES Allianz's renewed motion for partial summary judgment.

IT IS SO ORDERED

_____ : _____

Initials of
Preparer

_____