1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  JOHN J. STOIA, JR. (141757)
   THEODORE J. PINTAR (131372)
3  RACHEL L. JENSEN (211456)
   STEVEN M. JODLOWSKI (239074)
4  655 West Broadway, Suite 1900
   San Diego, CA 92101
5  Telephone: 619/231-1058
   619/231-7423 (fax)
6  jstoia@rgrdlaw.com
   tedp@rgrdlaw.com
7  rjensen@rgrdlaw.com
   sjodlowski@rgrdlaw.com
8
   BONNETT, FAIRBOURN, FRIEDMAN
9     & BALINT, P.C.
   ANDREW S. FRIEDMAN
10 KIMBERLY C. PAGE
   2901 N. Central Avenue, Suite 1000
11 Phoenix, AZ 85012
   Telephone: 602/274-1100
12 602/274-1199 (fax)
   afriedman@bffb.com
13 kpage@bffb.com

14 Co-Lead Class Counsel
   [Additional counsel appear on signature page.]
15
               UNITED STATES DISTRICT COURT
16            CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION
17
18 VIDA F. NEGRETE, as Conservator for )   No. CV-05-6838-CAS(MANx)
   EVERETT E. OW, an individual, on      )
   Behalf of All Other Similarly Situated )  CLASS ACTION
19 Persons,                              )
                                         )   PLAINTIFFS' MEMORANDUM IN
20                          Plaintiff,   )   OPPOSITION TO DEFENDANT
                                         )   ALLIANZ LIFE INSURANCE
21            vs.                        )   COMPANY OF NORTH AMERICA'S
                                         )   THIRD MOTION FOR PARTIAL
22 ALLIANZ LIFE INSURANCE              )   SUMMARY JUDGMENT
   COMPANY OF NORTH AMERICA, a )
23 Minnesota corporation,               )   JUDGE: Hon. Christina A. Snyder
                                         )   DATE:  October 29, 2012
24                          Defendant.   )   TIME:  10:00 a.m.
                                         )   CTRM:  5 – 2nd Floor
25
26 [Caption continued on following page.]

27        [REDACTED] PURSUANT TO
     PROTECTIVE ORDER ENTERED JULY 20, 2006
28

749500_1

1  CAROLYN Y. HEALEY, on Behalf of   ) No. CV-05-8908-CAS(MANx)
   Herself and All Others Similarly    )
2  Situated,                           ) CLASS ACTION
                                       )
3                      Plaintiff,      )
                                       )
4       vs.                            )
                                       )
5  ALLIANZ LIFE INSURANCE             )
   COMPANY OF NORTH AMERICA, a       )
6  Minnesota corporation,             )
                                       )
7                      Defendant.      )
   _____)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

749500_1

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................ 1

II.  STATEMENT OF FACTS ........................................................... 3

     A.   The FMOs in Which Allianz Has an Ownership Interest .................... 4

     B.   The Non-Allianz-Owned FMOs Who Are MAC Board Members ....................................................... 5

III. ALLIANZ ATTEMPTS TO RE-HASH THE SAME PREVIOUSLY-REJECTED ARGUMENTS ......................................................... 6

IV.  THE MAC BOARD MEMBERS AND OTHER NON-ALLIANZ-OWNED FMOS PROVIDE SUFFICIENT "DISTINCTIVENESS" ............ 8

V.   CAUSATION IS SATISFIED AS TO PURCHASES FROM NON-ENTERPRISE FMOs ................................................................ 14

VI.  THE PAROL EVIDENCE RULE IS INAPPLICABLE .............................. 18

     A.   The Fraud Exception Precludes Application of the Parol Evidence Rule ..................................................... 19

     B.   The Parol Evidence Rule Does Not Apply for Additional Reasons ................................................................ 22

VII. THE *IORIO* JUDGMENT DOES NOT PRECLUDE MR. OW FROM PURSUING HIS MASTERDEX 10 CLAIMS IN THIS ACTION ............. 24

VIII. CONCLUSION .......................................................................... 25

749500_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alling v. Universal Mfg. Corp.,*
    5 Cal. App. 4th 1412 (1992)..................................................................21

*Allstate Ins. Co. v. Etienne,*
    No. 09-CV-3582 SLT (RLH), 2010 U.S. Dist. LEXIS 113995
    (E.D.N.Y. Oct. 26, 2010)....................................................................11

*Bank of Am. Nat'l Trust & Savings Ass'n v. Pendergrass,*
    4 Cal. 2d 258 (1935)................................................................20, 21

*Bendzak v. Midland Nat'l Life Ins. Co.,*
    440 F. Supp. 2d 970 (S.D. Iowa 2006)................................................11

*Boyle v. United States,*
    556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009)....................9

*Bridge v. Phoenix Bond & Indem. Co.,*
    553 U.S. 639, 1285 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008)...........14, 17, 18

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP,*
    329 F.3d 923 (7th Cir. 2003)..............................................................14

*Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.,*
    669 F. Supp. 2d 1152 (C.D. Cal. 2009)..............................................12

*Canyon County v. Syngenta Seeds, Inc.,*
    519 F.3d 969 (9th Cir. 2008)..............................................................15

*Casa Hererra, Inc. v. Beydoun,*
    32 Cal. 4th 336 (2004)......................................................................21

*Cedric Kushner Promotions, Ltd. v. King,*
    533 U.S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001).............*passim*

*Corales v. Bennett,*
    567 F.3d 554 (9th Cir. 2009)..............................................................18

*Duncan v. The McCaffrey Group, Inc.,*
    200 Cal. App. 4th 346 (2011)............................................................19

- ii -

**Page**

*Ferguson v. Koch,*
    204 Cal. 342 (1928)..................................................................................... 19

*Fitzgerald v. Chrysler Corp.,*
    116 F.3d 225 (7th Cir. 1997).................................................................. 12, 13

*Fleury v. Ramacciotti,*
    8 Cal. 2d 660 (1937)................................................................................... 19

*Graham v. Scissor-Tail, Inc.,*
    28 Cal. 3d 807 (1981).................................................................................. 23

*Gray v. Zurich Ins. Co.,*
    65 Cal. 2d 263 (1966).................................................................................. 23

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..................................................................... 24

*Hemi Group, LLC v. City of New York,*
    __ U.S. __, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010) ....................................... 15

*Holmes v. Sec. Investor Prot. Corp.,*
    503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) ......................... 14, 15

*Impress Commc'ns v. Unumprovident Corp.,*
    335 F. Supp. 2d 1053 (C.D. Cal. 2003)....................................................... 19

*In re Actiq Sales & Mktg. Practices Litig.,*
    No. 07-4492, 2009 U.S. Dist. LEXIS 43710
    (E.D. Pa. May 22, 2009)............................................................................. 17

*In re American Honda Motor Co.,*
    958 F. Supp. 1045 (D. Md. 1997) .............................................................2, 16

*In re Countrywide Fin. Corp. Mortg. Mktg. and Sales Practices Litig.,*
    601 F. Supp. 2d 1201 (S.D. Cal. 2009) ................................................... 13, 14

*In re Lupron Mtkg. & Sales Practices Litig.,*
    295 F. Supp. 2d 148 (D. Mass. 2003)......................................................... 17

- iii -

749500_1

1

2                                                                            **Page**

3   *In re Nat'l W. Life Ins. Deferred Annuities Litig.,*

4       467 F. Supp. 2d 1071 (S.D. Cal. 2006) ................................................. 11

5   *Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc.,*
        No. 08-CV-3980 (JS) (ETB), 2009 U.S. Dist. LEXIS 72579
6       (E.D.N.Y. Aug. 14, 2009) ........................................................................ 12

7
    *King. Serin v. Northern Leasing Sys.,*
8       No. 7:06-CV-1625, 2009 U.S. Dist. LEXIS 130899
9       (S.D.N.Y. Dec. 15, 2009) ....................................................................... 12

10  *Levinson v. Mass. Mut. Life Ins. Co.,*
        No. 4:06-cv-086, 2006 U.S. Dist. LEXIS 83397
11      (E.D. Va. Nov. 9, 2006) .......................................................................... 12

12
    *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,*
13      431 F.3d 353 (9th Cir. 2005) ..................................................................... 9

14  *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe,*
15      235 F.3d 443 (9th Cir. 2000) ..................................................................... 8

16  *Maio v. Aetna, Inc.,*
17      221 F.3d 472 (3d Cir. 2000) .................................................................... 19

18  *Marlow v. Allianz Life Ins. Co. of N. Am.,*
        No. 08-CV-000752-CMA-MJW, 2009 U.S. Dist. LEXIS 43502
19      (D. Colo. May 12, 2009) ......................................................................... 12

20
    *Masterson v. Sine,*
21      68 Cal. 2d 222 (1968) ............................................................................. 22

22  *Mattel, Inc. v. MGA Entm't, Inc. & Consol. Actions,*
23      782 F. Supp. 2d 911 (C.D. Cal. 2010) ..................................................... 11

24  *McCubbrey v. Boise Cascade Home & Land Corp.,*
25      71 F.R.D. 62 (N.D. Cal. 1976) ................................................................ 24

26  *McCullough v. Suter,*
        757 F.2d 142 (7th Cir. 1985) .................................................................. 11

27

28

- iv -

749500_1

1

2                                                                                    **Page**

3   *McLain v. Great Am. Ins. Cos.,*

4       208 Cal. App. 3d 1476 (1989)........................................................22

5   *Mear v. Sun Life Assurance Co. of Canada,*
        No. 06-12143-RWZ, 2008 U.S. Dist. LEXIS 9593
6       (D. Mass. Jan. 24, 2008).........................................................12

7   *Migliaccio v. Midland Nat'l Life Ins. Co.,*

8       No. CV 06-1007, 2007 U.S. Dist. LEXIS 8159

9       (C.D. Cal. Jan. 26, 2007).......................................................13

10  *Negrete v. Allianz Life Ins. Co. of N. Am.,*
        238 F.R.D. 482 (C.D. Cal. 2006) ...............................................15
11

12  *Negrete v. Allianz Life Ins. Co. of N. Am.,*
        Nos. CV 05-6838-CAS(MANx), CV 05-8908-CAS(MANx),
13      2011 U.S. Dist. LEXIS 118529 (C.D. Cal. Oct. 13, 2011) .........................*passim*

14  *Odom v. Microsoft Corp.,*

15      486 F.3d 541 (9th Cir. 2007)..................................................2, 17

16  *River City Markets, Inc. v. Fleming Foods West, Inc.,*

17      960 F.2d 1458 (9th Cir. 1992) ................................................11

18  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*

19      30 F.3d 339 (2d Cir. 1994) ...................................................12

20  *Rowe v. Bankers Life & Cas. Co.,*
        No. CV-09-491, 2010 WL 3699928
21      (N.D. Ill. Sept. 13, 2010) ....................................................12

22  *Sever v. Alaska Pulp Corp.,*

23      978 F.2d 1529 (9th Cir. 1992)................................................1, 11

24  *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.,*

25      890 F.2d 108 (9th Cir. 1989)................................................22, 23

26  *Smith v. John Hancock Ins. Co.,*
        No. 06-3876, 2008 U.S. Dist. LEXIS 66912
27      (E.D. Pa. Sept. 2, 2008).......................................................19

28

749500_1

**Page**

*Strigliabotti v. Franklin Res., Inc.,*
   398 F. Supp. 2d 1094 (N.D. Cal. 2005) ......................................................... 8

*United States v. Allard,*
   458 F.2d 1136 (3d Cir. 1972) ....................................................................... 17

*United States v. Benny,*
   786 F.2d 1410 (9th Cir. 1986) ...................................................................... 9

*United States v. Bruckman,*
   874 F.2d 57 (1st Cir. 1989) ......................................................................... 17

*United States v. Castillo,*
   829 F.2d 1194 (1987) .................................................................................. 18

*United States v. Feldman,*
   853 F.2d 648 (9th Cir. 1988) ................................................................. 10, 11

*United States v. Turkette,*
   452 U.S. 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981) ................................ 16

*Wang v. Massey Chevrolet,*
   97 Cal. App. 4th 856 (2002) ........................................................................ 21

*Watts v. Allstate Indem. Co.,*
   No. S-08-1877 LKK/GGH, 2009 U.S. Dist. LEXIS 56275
   (E.D. Cal. July 1, 2009) ......................................................................... 13, 14

*Webster v. Omnitrition Int'l, Inc.,*
   79 F.3d 776 (9th Cir. 1996) ........................................................................ 14

*Williams v. Mohawk Indus., Inc.,*
   465 F.3d 1277 (11th Cir. 2006) ................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

749500_1

Page

**STATUTES, RULES AND REGULATIONS**

18 U.S.C.
§1341 ..........................................................................3, 16
§1343 ..........................................................................3, 16
§1961 ..........................................................................3, 16
§1961(4).............................................................................9
§1962(c).............................................................................2
§1962(d)...........................................................................14

California Code of Civil Procedure
§1856(a)...........................................................................22
§1856(g)....................................................................19, 21

**SECONDARY AUTHORITIES**

3 Arthur L. Corbin, *Corbin on Contracts*
§§582-584 (1960) .............................................................22

Restatement (Second) of Contracts
§211 (1981)......................................................................23

749500_1

# I.     INTRODUCTION

On October 13, 2011, after nearly six years of discovery, this Court denied Allianz's second motion for summary judgment in its entirety.  That motion challenged nearly every element of plaintiffs' RICO claims, including the enterprise and causation elements.[1] *See Negrete v. Allianz Life Ins. Co. of N. Am.*, Nos. CV 05-6838-CAS(MANx), CV 05-8908-CAS(MANx), 2011 U.S. Dist. LEXIS 118529 (C.D. Cal. Oct. 13, 2011).  In denying summary judgment, the Court found that plaintiffs had submitted sufficient evidence to demonstrate the following: (i) the existence of an association-in-fact RICO enterprise; (ii) Allianz's participation in the operation of that enterprise; and (iii) causation – an injury to plaintiffs "by reason of" Allianz's misconduct.  *Id.* at *14-*30, *39-*49.  The Court fully considered and rejected Allianz's arguments that plaintiffs' RICO claims must be dismissed, and ordered that this case proceed to trial.

Now, seven months later, Allianz has filed yet another motion for summary judgment, its third, again challenging plaintiffs' RICO claims.  Allianz's latest effort again fails to provide a basis for dismissal.  For instance, it argues that the enterprise is indistinct from Allianz because the FMO members are Allianz agents, and therefore they conduct the affairs of the corporation.  Allianz's distinctness argument fails because it conflates RICO's "common purpose" requirement with the requirement that the person and enterprise be distinct entities.  The fact that certain FMOs and Allianz shared a common purpose, *i.e.*, to sell seniors deferred annuities, does not somehow transform the FMOs and Allianz into a single indistinct entity.

Allianz's argument also ignores controlling Supreme Court and Ninth Circuit authority rejecting this very notion.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163-64, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001); *Sever v. Alaska Pulp*

---

[1]     Unless otherwise noted, citations are omitted and emphasis is added.

749500_1

1   *Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992).  The facts here clearly demonstrate both

2   "formal" and "practical" separation, ***either*** of which is sufficient to satisfy the

3   distinctness required by 18 U.S.C. §1962(c), as many of the enterprise FMO members

4   are separate entities which operate as non-exclusive independent contractors. *King*,

5   533 U.S. at 163.  Indeed, as recently as its last summary judgment motion, Allianz had

6   steadfastly taken the position that its FMOs were independent entities over which it

7   had little or no control.   Defendant Allianz Life Insurance Company of North

8   America's Memorandum in Support of Its Renewed Motion for Partial Summary

9   Judgment ("Dkt. No. 695-1") at 3-4, 17 (Allianz "does not direct agents' business

10  activities.").

11       Allianz's next argument that the pared-down enterprise somehow breaks the

12  causal chain with respect to certain class members fares no better.  This Court has

13  twice found that the Allianz-mandated disclosure forms, required to be signed by all

14  class members, serve as evidence of causation.  That reasoning holds true regardless

15  of whether the FMO and/or agent, from whom a Class member purchased the annuity,

16  is a member of the enterprise.

17       Courts have long recognized that RICO schemes involving innocent or

18  unsuspecting agents still inflict "direct" harm on their victims. *In re American Honda*

19  *Motor Co.*, 958 F. Supp. 1045, 1059 (D. Md. 1997); *Odom v. Microsoft Corp.*, 486 F.3d

20  541, 552-53 (9th Cir. 2007).  In fact, almost no scheme could succeed ***without*** the use

21  of some unsuspecting agents.  This reality is recognized by the language of the RICO

22  statute, which imposes mail and wire fraud liability on persons who not only directly

23  commit an illegal act, but also those who "cause" the illegal act (*e.g.*, by having an

24  agent deliver the material containing the false representation).  Both situations apply

25  here.  As the Court previously recognized, Allianz was involved in the sale of every

26  annuity sold to every class member, because it helped train the agents, determined the

27  content of the written sales materials and issued the policies.  Allianz also "caused" the

28  FMOs to commit the illegal acts, because Allianz directed – indeed, required – the

- 2 -

749500_1

FMOs to use Allianz's written sales materials to accomplish a sale.  18 U.S.C. §1961 (imposing liability not only on persons who commit the prohibited acts, but also on persons who cause the acts to be committed); 18 U.S.C. §§1341, 1343 (a person may not "cause[] to be delivered" any matter which contains false representations).

Allianz's final argument – that the parol evidence rule bars plaintiffs' fraud claims – is simply a re-hash of its failed argument that because it complied with the minimum guaranteed benefit provisions of the annuity contracts, its misrepresentations in the sale of the annuities are somehow irrelevant.  This Court has already found that:

> it is no defense for Allianz that it complied with the terms of the annuities contracts because plaintiffs' claims rest on their contention that they were deceived into purchasing the annuities through half-truths and misrepresentations in marketing materials rather that Allianz breached the resulting contract.

*Negrete*, 2011 U.S. Dist. LEXIS 118529, at *48-*49.  Put simply, this is a fraud action, not a breach of contract action.  Allianz cannot escape liability by relying on the language of its contracts, especially where, as here, that language is consistent with the representations in its brochures.

## II.     STATEMENT OF FACTS

Plaintiffs incorporate by reference and do not repeat the Statement of Facts contained in their Memorandum in Opposition to Defendant Allianz Life Insurance Company of North America's Renewed Motion for Partial Summary Judgment. Dkt. No. 739.  The full factual details of Allianz's scheme to defraud were set forth in response to Allianz's previous summary judgment motion.  Many of these facts are also set forth in the Court's October 13, 2011 order denying Allianz's motion for summary judgment. *Negrete*, 2011 U.S. LEXIS 118529, at *8-*11.  As the Court found in denying that motion, plaintiffs have submitted sufficient evidence to demonstrate: (i) the existence of an association-in-fact RICO enterprise; (ii) Allianz's participation in the operation of that enterprise; and (iii) that plaintiffs suffered an

1  injury "by reason of" the conduct constituting the RICO violation. *Negrete*, 2011 U.S.

2  Dist. LEXIS 118529, at \*14-\*30, \*39-\*49. Plaintiffs submit the following additional

3  facts, which are relevant to the enterprise and causation issues raised by Allianz's

4  instant motion.

5      The enterprise consists of: (1) Allianz; (2) the 13 FMOs in which Allianz holds

6  ownership interests; and (3) the 6 FMOs who have served as Board members of the

7  Marketing Advisory Committee ("MAC").

8      **A.**    **The FMOs in Which Allianz Has an Ownership Interest**

9      The Senior Annuity Enterprise includes 13 FMOs in which Allianz has an

10  ownership interest.[2] ███████████████████████████

11  ████████████████████████ Fact Nos. 1-14.

12  ████████████████████████████████

13  ███████████████████ *Id.* ████████

14  ████████████████████████████████

15  ██ *Id.* ██████████████████████████

16  ██████ Fact Nos. 4, 8, 11.

17      Despite being owned (or partially-owned) by Allianz, the FMOs perform many,

18  if not all, of the same functions as the non-Allianz-owned FMOs. ████████

19  ████████████████████████████████

20  ███████████████ Fact No. 136. ██████

21  ████████████ Fact No. 70. ████████████

22  ████████████ Fact Nos. 73-74. ██████████

23  ████████████████████████████████

24  ██████ Fact Nos. 20, 25-35.

25  ────────────────

26  [2]    All references to "Fact No." are to Plaintiffs' Statement of Genuine Issues and Additional Material Facts in Plaintiffs' Response to Defendant Allianz Life Insurance

27  Company of North America's Statement of Uncontroverted Facts and Conclusions of Law in Support of Its Third Motion for Partial Summary Judgment and Plaintiffs'

28  Statement Of Genuine Issues and Additional Material Facts, filed concurrently.

-4-

749500_1

**B.    The Non-Allianz-Owned FMOs Who Are MAC Board Members**

Fact No. 37.  The Enterprise includes six of these FMOs in which Allianz holds no ownership interest.  Fact Nos. 38-43.  Fact No. 44.  Fact No. 45.  *Id.*  Fact Nos. 46-50.  The FMOs are headquartered across the country, in Texas, North Carolina, and California.  Fact Nos. 51-56.  None of the FMOs are based in Minnesota, where Allianz is headquartered.  *Id.*  Many of the FMOs were established well before Allianz began selling the annuities at issue in this action.  Fact Nos. 57-60.

The relationship between Allianz and these FMOs is defined by contractual agreement.  Fact No. 61.  Fact No. 62.  Fact No. 63.  Fact No. 64.  Fact Nos. 65, 136.  Fact No. 99.



- 5 -



1    █████████████████████████ Fact No. 66. ███

2    █████████████████ Fact No. 67. ████████████

3    ███████████ *Id.*

4    ██████████████████████████████████████

5    █████████████████████████████████████████

6   Fact No. 68.  Indeed, as Allianz has repeatedly pointed out, the FMOs contract with

7   non-Allianz agents, vie to solicit agents from their competitors, and train and contract

8   with agents who are appointed to sell competitors' products.  Fact No. 69; Dkt. No.

9   695-1 at 3.

10   ███████████████████████████████████████

11   ██████████████ Fact No. 70.  For example, ████████████

12   ███████████████████████████ Fact No. 71. ███

13   █████████████████████████████████████████

14   ████████████████████████████████ Fact No. 72.

15   Some FMOs also ███████████████████████████████

16   ████████████████████ Fact No. 70.  As Charles Kavitsky,

17   Allianz's former President and Chief Marketing Officer, put it at deposition, ███

18   ██████████████████████ Fact No. 75.

19       While they operate independently, the MAC Board members are focused on

20   targeting senior citizens.  Fact Nos. 80-87, 98.  Plaintiffs previously submitted

21   substantial evidence demonstrating that the MAC Board members target the senior

22   market in furtherance of the enterprise.  *Negrete*, 2011 U.S. Dist. LEXIS 118529, at

23   *25 ("the record in this case . . . shows a 'high degree of coordinated conduct' with

24   respect to targeted sales to seniors").

25   **III.   ALLIANZ ATTEMPTS TO RE-HASH THE SAME**

26          **PREVIOUSLY-REJECTED ARGUMENTS**

27       Allianz's latest summary judgment arguments are not new.  One year ago, on

28   June 10, 2011, Allianz filed a renewed motion for partial summary judgment, arguing

749500_1

1   that plaintiffs could not show a RICO association-in-fact enterprise. *Negrete*, 2011

2   U.S. Dist. LEXIS 118529, at \*13-\*30.  In connection with that issue, Allianz argued

3   that plaintiffs could not show that the enterprise was "distinct" from Allianz's own

4   business. *Id.* at \*28 ("Allianz argues that it is entitled to summary judgment because

5   plaintiffs cannot prove Allianz operated or managed the purported enterprise as

6   distinct from its own business of underwriting and offering annuity products.").  It

7   also argued that plaintiffs could not show that they were injured by reason of Allianz's

8   conduct because of the annuity contracts' guarantees. *Id.* at \*40 ("Allianz argues that

9   the RICO violation plaintiffs allege did not cause the alleged RICO injury.").  The

10  Court rejected both of these arguments and upheld plaintiffs' claims. *Id.*

11       In its latest motion, Allianz re-packages virtually all of the same attacks it

12  lodged in its previous motion.  This time, Allianz argues that plaintiffs' enterprise is

13  "functionally indistinct" from Allianz itself, and that certain class members were not

14  injured "by reason of" Allianz's conduct.[3]  *Compare* Def's Mem. at 10-14 *with*

15  *Negrete*, 2011 U.S. Dist. LEXIS 118529, at \*28, \*40.  Also, while it characterizes its

16  final argument as a challenge to parol evidence, this is simply a re-hash of its

17  previously-rejected argument that it cannot be liable because it has complied with the

18  minimum guaranteed benefit provisions of the annuity contracts.  *Compare* Def's

19  Mem. at 2, 17-19 ("Because the contracts promise only that policy owners will receive

20  certain guaranteed rates and values, the RICO claims are at variance with the written

21  contracts' integrated terms and cannot be premised upon purported 'promises' in

22  SOUs and consumer brochures that contradict, or add to, the terms of their contracts.")

23  *with Negrete*, 2011 U.S. Dist. LEXIS 118529, at \*34 ("Allianz next contends

24  plaintiffs are seeking more benefits than they were promised . . . .").

25

26

27  [3]     All references to "Def's Mem." or "Motion" are to Defendant Allianz Life Insurance Company of North America's Memorandum of Points and Authorities in Support of Its Third Motion for Partial Summary Judgment, Dkt. No. 829-1.

28

749500_1

1    Attempting to justify this second bite at the apple, Allianz suggests that

2  plaintiffs' enterprise has "evolved." Def's Mem. at 2-3. But, the Court's October 13,

3  2011 order squarely addresses the fact that plaintiffs had narrowed their definition of

4  the RICO enterprise, from Allianz and all of its FMOs and agents to Allianz and

5  certain of its owned and un-owned FMOs. *See Negrete*, 2011 U.S. Dist. LEXIS

6  118529, at *17-*18 n.2 ("At oral argument, plaintiffs' counsel limited the scope of the

7  Enterprise to Allianz, the 13 FMOs in which Allianz holds an ownership interest, and

8  the 6 FMOs that have served as members of the MAC Board."). After acknowledging

9  this, the Court went on to find that "triable issue[s] of fact *exists as to the alleged*

10  *Enterprise in either iteration*." *Id.* at *18 n.2. The Court has therefore already found

11  that plaintiffs have more than enough proof to establish a RICO enterprise.[4] Allianz

12  provides no basis for the Court to revisit this issue or to reach a different result.

13  **IV.    THE MAC BOARD MEMBERS AND OTHER NON-ALLIANZ-
     OWNED FMOS PROVIDE SUFFICIENT "DISTINCTIVENESS"**

14

15    As it did in its previous motion for summary judgment, Allianz challenges the

16  enterprise element of plaintiffs' RICO claim. Largely ignoring controlling authority,

17  including Supreme Court and Ninth Circuit precedent, Allianz argues that plaintiffs

18  cannot prove an associated-in-fact RICO enterprise in this case because the Senior

19  Annuity Enterprise is supposedly "functionally indistinct" from Allianz itself. Def's

20  Mem. at 10-13. Allianz is wrong.

21    A RICO enterprise is "any individual, partnership, corporation, association, or

22  other legal entity, and any union or group of individuals associated in fact although

23

24  [4]    Under the "law of the case" doctrine, a defendant is generally precluded from
     advancing "the same general attack" on plaintiffs' claims. *See Strigliabotti v.*
25  *Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097-98 (N.D. Cal. 2005) (citing *Lower*
     *Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)).
26  The doctrine applies whether the issue was previously decided by the same court, or a
     higher court in an identical case. *Lower Elwha*, 235 F.3d at 452. A defendant cannot
27  avoid application of the law of the case doctrine by simply changing the emphasis of
     its challenge. *See Strigliabotti*, 398 F. Supp. 2d at 1098.
28

749500_1

1   not a legal entity." 18 U.S.C. §1961(4).   A RICO enterprise "need not have a

2   hierarchical structure or a 'chain of command.'" *Boyle v. United States*, 556 U.S. 938,

3   948, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009).   The statute's "enumeration of

4   included enterprises is obviously broad . . . and the very concept of an association in

5   fact is expansive." *Id.* at 944.

6        In *King*, 533 U.S. at 161, the Supreme Court explained that the only

7   "distinctiveness" required between the "person" and the "enterprise" is a "legally

8   different entity with different rights and responsibilities due to its different legal

9   status." *Id.* at 163. So long as the enterprise can be formally *or* practically separable

10   from the person, a plaintiff may proceed with their RICO claim. *Id.*; *see also United*

11   *States v. Benny*, 786 F.2d 1410, 1416 (9th Cir. 1986) (all that is required "is that the

12   [enterprise] be either formally (as when there is corporation) or practically (as when

13   there are other people beside the proprietor working in the organization) separable

14   from the [person]").

15        The Senior Annuity Enterprise here readily satisfies the "distinctiveness"

16   requirement, as multiple members of the enterprise are both formally ***and*** practically

17   separable from Allianz. Allianz's motion glosses over the obvious fact that much of

18   the Senior Annuity Enterprise consists of FMOs which are non-exclusive, independent

19   contractors, which are neither owned by, nor part of, Allianz's corporate structure.

20   This includes the members of the MAC Board.   It also includes the non-Allianz-

21   owned FMOs who target senior citizens.   Each of these enterprise members is

22   indisputably a separate legal entity. Fact Nos. 61-75. This supplies the requisite

23   "formal legal distinction" between Allianz and the enterprise, and therefore ends the

24   inquiry. *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 362

25   (9th Cir. 2005) (enterprise consisting of company, its employees, and law firm

26   employed by company sufficient to show RICO enterprise).

27        There is also plenty of "practical[]" separation between Allianz and the FMOs.

28   *Living Designs*, 431 F.3d at 362. In fact, the level of "distinctness" here is far higher

- 9 -

749500_1

1   than that associated with the RICO enterprise found sufficient by the Supreme Court in

2   *King*. There, even though the enterprise consisted solely of a closely held corporation

3   and a single employee, it was nevertheless sufficiently "distinct," as employees are

4   natural persons distinct from the corporation itself. *King*, 533 U.S. at 163.

5          Although the non-Allianz-owned FMOs sell Allianz deferred annuities, they

6   (like any other independent contractor) retain complete control over their operations

7   and key business functions. These FMOs ███████████████████████████████████

8   ██████████████████████████████████████████████████████████ Fact

9   Nos. 68-70. And, as Allianz has repeatedly pointed out, these FMOs ███████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████ *Id.*; Dkt. No. 695-1 at 3. These FMOs also █████████

13  ████████████████████ Fact No. 70. As such, they are not simply "conducting normal

14  business affairs" of Allianz (Def's Mem. at 11), but instead, are engaged in a wide

15  variety of non-Allianz related business activity.

16         Allianz nevertheless argues that the Senior Annuity Enterprise is not

17  sufficiently distinct because Allianz "cannot operate except through its employees,

18  agents and affiliates." Def's Mem. at 11. But Allianz's "agency" argument is the

19  same argument rejected by the Supreme Court in *King*. In *King*, the defendants

20  argued that the enterprise was not distinct because "a corporation acts only through its

21  directors, officers, and agents." 533 U.S. at 165. The Court rejected this argument,

22  finding that the president, a natural person, was distinct from the corporation, a legally

23  different entity with different rights and responsibilities. *Id.* at 163.

24         As in *King*, the Ninth Circuit in *United States v. Feldman*, 853 F.2d 648 (9th

25  Cir. 1988), rejected a similar claim, when it found that an individual defendant was

26  "distinct" from several corporations he had formed. *Id.* at 656. In so finding, the

27  Ninth Circuit explained that "the corporations enjoyed legal status that incorporation

28  provides," and that "their very separate existence that made [defendant's] activities

- 10 -

possible and profitable." *Id.* (citing *McCullough v. Suter*, 757 F.2d 142, 143-44 (7th Cir. 1985)); *see also Sever*, 978 F.2d at 1534 (officers of a corporation were distinct from the corporation itself, notwithstanding "the inability of the corporation to operate except through its officers").

███████████████████████████████████████████████████████

█████████████████████████ Fact No. 62. Accordingly, by definition, they are separate and distinct from Allianz itself. *Mattel, Inc. v. MGA Entm't, Inc. & Consol. Actions*, 782 F. Supp. 2d 911, 1038 (C.D. Cal. 2010) (enterprise consisting of a company, its subsidiaries, and one independent contractor was sufficiently distinct); *Allstate Ins. Co. v. Etienne*, No. 09-CV-3582 SLT (RLH), 2010 U.S. Dist. LEXIS 113995, at *19-*20 (E.D.N.Y. Oct. 26, 2010) (association-in-fact enterprise involving "non-exclusive independent contractors" was sufficiently distinct); *see also Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006) (distinctiveness element satisfied where the association-in-fact enterprise was composed of plaintiff's employer and several temp and recruiting agencies).

In *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071 (S.D. Cal. 2006), the court recognized this key distinction. There, plaintiffs defined the enterprise as an insurance company, its marketing organizations and its independent sales agents. *Id.* at 1084. The court held that the RICO enterprise was sufficiently distinct, because it did "not simply consist solely of the named Defendants, but of the named Defendants together with individual sales agents and any other participants." *Id.* at 1085. The court in *Bendzak v. Midland Nat'l Life Ins. Co.*, 440 F. Supp. 2d 970, 989 (S.D. Iowa 2006), reached the same conclusion, when it rejected Midland's argument that the plaintiff had failed to allege a RICO enterprise involving a life insurance company and its annuity sales agents. As in *King*, both courts correctly observed that the agency relationship between the insurance carrier and the agent did not preclude their legal separability. *Id.*; *Nat'l Western*, 467 F. Supp. at 1084 (citing *King*, 533 U.S. at 163); *see River City Markets, Inc. v. Fleming Foods West, Inc.*, 960

- 11 -

749500_1

1  F.2d 1458, 1461 (9th Cir. 1992) ("we find nothing in our RICO case law which

2  instructs that two contracting business entities cannot form an 'enterprise' for RICO

3  purposes"); *Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1164

4  (C.D. Cal. 2009) ("[a] mere relationship, whether contractual or even structural,

5  between two corporate defendants does not preclude their legal separability.  Nor does

6  it prevent them from acting in concert as an 'enterprise' for the purposes of RICO.").

7      In light of this authority, it is not surprising that Allianz relies almost

8  exclusively on unpublished, non-controlling, out-of-circuit decisions, such as *Marlow*

9  *v. Allianz Life Ins. Co. of N. Am.*, No. 08-CV-000752-CMA-MJW, 2009 U.S. Dist.

10  LEXIS 43502 (D. Colo. May 12, 2009).  In *Marlow*, the court relied on the Second

11  Circuit's opinion in *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30

12  F.3d 339 (2d Cir. 1994) (also cited by Allianz), which was distinguished by the

13  Supreme Court in *King*.  *Serin v. Northern Leasing Sys.*, No. 7:06-CV-1625, 2009

14  U.S. Dist. LEXIS 130899, at *35 (S.D.N.Y. Dec. 15, 2009) ("the Supreme Court

15  distinguished [*Riverwoods*], and overruled the Second Circuit, in *Cedric Kushner*

16  *Promotions, Ltd. v. King*. . . ."); *Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc.*, No.

17  08-CV-3980 (JS) (ETB), 2009 U.S. Dist. LEXIS 72579, at *7 (E.D.N.Y. Aug. 14,

18  2009) ("the Supreme Court expressly limited *Riverwoods'* reach in [*King*]").

19      Allianz also cites *Mear v. Sun Life Assurance Co. of Canada*, No. 06-12143-

20  RWZ, 2008 U.S. Dist. LEXIS 9593 (D. Mass. Jan. 24, 2008), and *Levinson v. Mass.*

21  *Mut. Life Ins. Co.*, No. 4:06-cv-086, 2006 U.S. Dist. LEXIS 83397 (E.D. Va. Nov. 9,

22  2006), both of which were dismissed at the pleading stage because "[t]he complaint

23  offers no facts regarding the formation, nature, or operation of the enterprise."

24  *Levinson*, 2006 U.S. Dist. LEXIS 83397, at *22.  That is not the case here, as this

25  Court has already found that plaintiffs have submitted proof of the enterprise.

26  *Negrete*, 2011 U.S. Dist. LEXIS 118259, at *18-*30.  In *Rowe v. Bankers Life & Cas.*

27  *Co.*, No. CV-09-491, 2010 WL 3699928 (N.D. Ill. Sept. 13, 2010), the court relied on

28  the Seventh Circuit's opinion in *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th

- 12 -

1  Cir. 1997), which this Court previously distinguished in a similar RICO annuities

2  case. *See Migliaccio v. Midland Nat'l Life Ins. Co.*, No. CV 06-1007, 2007 U.S. Dist.

3  LEXIS 8159, at *12 n.1 (C.D. Cal. Jan. 26, 2007) ("the Sammons Annuity Group does

4  not resemble the employer/employee relationship in *Fitzgerald* because defendants'

5  agents are independent contractors who can and do contract to sell deferred annuity

6  products issued by other companies").

7         Further, even if the FMOs were Allianz subsidiaries, which they are not, the

8  Senior Annuity Enterprise would still have the requisite separation, because the FMOs

9  helped facilitate the unlawful activity.  *Watts v. Allstate Indem. Co.*, No. S-08-1877

10  LKK/GGH, 2009 U.S. Dist. LEXIS 56275, at *17-*18 (E.D. Cal. July 1, 2009)

11  (finding, under *King*, that a subsidiary is "distinct" from its parent for purposes of

12  RICO enterprise); *In re Countrywide Fin. Corp. Mortg. Mktg. and Sales Practices*

13  *Litig.*, 601 F. Supp. 2d 1201 (S.D. Cal. 2009) (enterprise consisting of mortgage

14  company and its appraisal subsidiary sufficiently distinct because the participation of

15  the company's subsidiaries in the enterprise allowed the enterprise to function more

16  effectively).

17         The conduct of the FMOs is far from incidental to the scheme.  Indeed, the very

18  purpose for Allianz to acquire some of its FMOs was to advance the scheme.  Fact

19  Nos. 17-19, 24. ██████████████████████████

20  ███████████████████████████████████████

21  █████  Fact Nos. 18-35. ████████████████████

22  ███████████████████████████████████████

23  ███████████████████████████████████████

24  ███████████████  Fact No. 65. ████████████████

25  ███████████████████████████████████████

26  ████████████████████████  Fact Nos. 20, 25-35, 80-87, 98.

27

28

1    In the Ninth Circuit, this is precisely the type of conduct by a subsidiary that

2  satisfies the "distinctness" test.[5]  In *Countrywide*, for example, the court found that an

3  enterprise consisting of parent and subsidiary was sufficiently distinct where the

4  subsidiary's conduct "permit[ed] Defendants to advance their scheme and conceal the

5  fraudulent activity they have been engaging in."  601 F. Supp. 2d at 1214-15.  Here,

6  too, Allianz has used the FMOs it owned to advance its scheme.  *See Watts,* 2009 U.S.

7  Dist. LEXIS 56275, at *17-*18 (finding, under *King,* that a subsidiary is "distinct" from

8  its parent for purposes of RICO enterprise); *Bucklew v. Hawkins, Ash, Baptie & Co.,*

9  *LLP,* 329 F.3d 923, 934 (7th Cir. 2003) (a subsidiary is distinct from its parent when the

10  "decision to operate through subsidiaries rather than divisions somehow facilitated [the

11  enterprise's] unlawful activity").

12    Accordingly, nothing in Defendant's latest motion provides a basis to alter the

13  Court's prior ruling that "summary judgment [is] inappropriate because a triable issue

14  of fact exists as to whether Allianz has participated in the management of a RICO

15  enterprise. . . .  The conduct of Allianz and the FMOs in the alleged enterprise far

16  exceed the mere 'conduit' scenario." *Negrete,* 2011 U.S. Dist. LEXIS 118529, at *28-

17  *29.

18  **V.    CAUSATION IS SATISFIED AS TO PURCHASES FROM
          NON-ENTERPRISE FMOs**

19

20    To establish proximate causation, plaintiffs need only show "some direct

21  relation between the injury asserted and the injurious conduct alleged." *Bridge v.*

22  *Phoenix Bond & Indem. Co.,* 553 U.S. 639, 654, 1285 S. Ct. 2131, 170 L. Ed. 2d 1012

23  (2008) (quoting *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268, 112 S. Ct.

24  1311, 117 L. Ed. 2d 532 (1992)).  "When a court evaluates a RICO claim for

25  proximate causation, the central question it must ask is whether the alleged violation

26  ―――――――――――

[5]    Almost every circuit, including the Ninth Circuit, has held that the intra-
27  corporate conspiracy doctrine does ***not*** apply to RICO claims. *See Webster v.*
   *Omnitrition Int'l, Inc.,* 79 F.3d 776, 787 (9th Cir. 1996), (extending §1962(d) liability
28  to a wholly intra-corporate conspiracy).

- 14 -

1  led directly to plaintiff's injuries." *Negrete*, 2011 U.S. Dist. LEXIS 118529, at *39

2  (citing *Hemi Group, LLC v. City of New York*, __ U.S. __, 130 S. Ct. 983, 989, 175

3  L. Ed. 2d 943 (2010), and *Holmes*, 503 U.S. at 269); accord *Canyon County v.*

4  *Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (to evaluate the causal link

5  between the RICO violation and the injury, the court examines "both the nature of the

6  violation and the cause of the injury to the plaintiff").

7      This Court has previously held that proximate causation can be shown class-

8  wide through plaintiffs' and class members' signatures on the Statement of

9  Understandings ("SOU"), which Allianz requires all annuity purchasers to sign.

10  *Negrete*, 2011 U.S. Dist. LEXIS 118529, at *42-*43 (citing *Negrete v. Allianz Life*

11  *Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006)) ("This Court has already

12  determined that plaintiffs' execution of the SOUs could adequately establish

13  proximate causation."). This, of course, applies regardless of whether the FMO

14  selling the annuity is part of the enterprise.

15      Allianz nevertheless argues that certain class members are not "direct victim[s]"

16  of the scheme where they purchased from FMOs which are not part of the enterprise.

17  Def's Mem. at 14. Essentially, Allianz argues that the involvement of these "non-

18  enterprise" FMOs negates causation. *Id.* Allianz is incorrect for at least three reasons.

19      ***First***, the Court's prior reasoning – that the Allianz-mandated disclosure forms

20  serve as evidence of causation – applies equally to the claims of those class members

21  who purchased from an agent and/or FMO, which is not part of the enterprise.

22  *Negrete*, 2011 U.S. Dist. LEXIS 118529, at *42-*43. This is because every class

23  member – whether or not they purchased through an enterprise FMO – was required

24  (by Allianz) at the time of sale to review the consumer brochure and sign the Allianz

25  SOU. Fact Nos. 139-141. By signing the SOU, the class member attested that he or

26  she had "read and [understood] the [Allianz sales] information" and that Allianz's

27  written marketing materials had "been discussed with and explained to me by the

28  agent." *Id.*

- 15 -

1    ***Second***, Allianz was integrally involved in the sale of every annuity sold to a

2    class member, and the evidence here shows that Allianz was not just an enterprise

3    member, it was the leader of the enterprise. *Negrete*, 2011 U.S. Dist. LEXIS 118529,

4    at *27-*30 (the conduct of Allianz and the FMOs in the alleged enterprise far

5    exceeded acting as "mere 'conduit[s]'").  Allianz designed and issued the annuity

6    products.  Fact No. 143. ████████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████  Fact Nos. 103-134. Allianz determined

9    the content of written sales materials, requiring the FMOs and agents to obtain

10   permission from Allianz before using the targeted ads, and requiring all FMOs and

11   sales agents to promise in writing to supply the purchaser with the very product

12   brochures and SOU's containing the alleged misleading statements and omissions.

13   Fact No. 140.  It was this conduct, made in an effort to further the common purpose of

14   the enterprise, which led directly to class members purchasing the policy.

15       ***Third***, even if a class member purchased an annuity from an agent contracted

16   through an FMO which was not a member of the enterprise, Allianz is not relieved of

17   liability, because the FMOs were necessary to carry out the scheme.  RICO was

18   enacted to impose liability on criminal organizations that infiltrated legitimate

19   businesses and used them, often unwittingly, as instruments to commit racketeering

20   activities. *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d

21   246 (1981).  Under 18 U.S.C. §1961, liability is imposed, not only on persons who

22   commit the prohibited acts, but also on persons who ***cause the acts to be committed***.

23   *Id*.  Likewise, both the mail and wire fraud statutes impose liability for either directly

24   committing, or "causing," an illegal act.  18 U.S.C. §§1341, 1343 (a person may not

25   "cause[] to be delivered" any matter which contains false representations).

26       As many courts have recognized, RICO schemes will necessarily involve the

27   use of innocent or unsuspecting agents or third parties. *See American Honda*, 958

28   F. Supp. at 1059 n.12 (mail and wire fraud violations "frequently or necessarily

- 16 -

749500_1

1   involve innocent actors who actually do the delivering or printing"); *Odom*, 486 F.3d

2   at 552-53 (RICO does not require a showing "that every member be 'involved in each

3   of the underlying acts of racketeering, or that the predicate acts be interrelated in any

4   way.'"). Yet, despite the involvement of an unsuspecting agent, these schemes can –

5   and frequently do – inflict "direct" harm on their victims.

6        As an example, in *In re Actiq Sales & Mktg. Practices Litig.*, No. 07-4492,

7   2009 U.S. Dist. LEXIS 43710 (E.D. Pa. May 22, 2009), plaintiffs brought a RICO

8   claim based upon an alleged deceptive marketing scheme which involved the

9   widespread dissemination of inaccurate information about the safety of the

10  defendant's drugs. *Id.* at *1-*4.  The defendant argued that the plaintiffs could not

11  show "direct injury, . . . because the acts of the physicians and . . . other third parties,

12  [who prescribed the drugs], were allegedly unforeseeable and independent of

13  Defendant's actions." *Id.* at *8-*9.  Relying on *Bridge*, the Court disagreed, saying

14  that "[t]he notion that Defendants' comprehensive marketing scheme had no effect on

15  physicians and third parties, such that their selection of Actiq was wholly

16  unforeseeable by Defendant, is unrealistic. Indeed, Defendant markets aggressively

17  with the intent that, as a result of their efforts, physicians will prescribe their product."

18  *Id.* at *9-*10.

19       The court in *In re Lupron Mtkg. & Sales Practices Litig.*, 295 F. Supp. 2d 148,

20  175 (D. Mass. 2003), reached the same conclusion, when it found that physicians who

21  prescribed defendant's drugs were not intervening actors because defendants

22  "***instigated both the culpable and the innocent intermediaries to commit acts that***

23  ***were not only foreseeable but intended***." *Id.*  Numerous other examples of cases exist

24  where courts have found that the causal link was not broken by a third party

25  intermediary. *United States v. Allard*, 458 F.2d 1136 (3d Cir. 1972) (defendant liable

26  for scheme to defraud carried out through use of innocent third party); *United States*

27  *v. Bruckman*, 874 F.2d 57, 60 (1st Cir. 1989) (causation requirement met even though

28  innocent third party sent the mailings, because "mails [were] reasonably . . .

- 17 -

749500_1

1  anticipated in the course of the scheme"); *United States v. Castillo*, 829 F.2d 1194,

2  1198 (1987) (causation requirement is met so long as some use of the mails was

3  reasonably to be anticipated in the course of the scheme).

4      Here too, Allianz has "instigated" the scheme in which the FMOs (the

5  "intermediaries") commit acts at the direction of Allianz. *Cf. Corales v. Bennett*, 567

6  F.3d 554, 572 (9th Cir. 2009) ("Generally, an act is an intervening cause where it is

7  unforeseeable or extraordinary."). ████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████████████████████ Fact

10 Nos. 139-141. In addition, Allianz ████████████████████████

11 ████████████████████████████████████████████████

12 ██████████████ Fact No. 133. ████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████ Fact No. 135. By implementing these policies,

15 Allianz ensured that the harm was both ***foreseeable*** and ***intended.*** *Bridge*, 553 U.S. at

16 648 (the question is simply whether the harm was a "foreseeable and natural"

17 consequence of predicate acts).

18 **VI.    THE PAROL EVIDENCE RULE IS INAPPLICABLE**

19      Allianz's parol evidence argument fails at the threshold level for the simple

20 reason that this is a fraud case, not a breach of contract case. Plaintiffs allege that

21 Allianz made certain misrepresentations and half-truths to class members in its

22 consumer brochures. Plaintiffs are not offering evidence of the statements in

23 Allianz's consumer brochures in an attempt to establish, alter or change the terms of

24 the annuity contract. This is not a dispute over the meaning of certain terms of

25 Allianz's annuity contracts. Indeed, this Court has already refused to find that

26 plaintiffs' fraud claims are contract-based. *See Negrete*, 2011 U.S. Dist. LEXIS

27 118529, at *35-*36 (distinguishing the damages sought by plaintiffs from the

28

749500_1

1   "contract-based" injuries at issue in *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000)

2   and *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053 (C.D. Cal.

3   2003)).   Moreover, plaintiffs' misrepresentation claims are ***consistent*** with the

4   guaranteed benefits provided by Allianz's annuity contracts.  *Id.* at *41, *48-*49.

5   Because plaintiffs' claims do not hinge on the contract terms, defendant's entire

6   argument is inapposite.

7   **A.   The Fraud Exception Precludes Application of the Parol**
     **Evidence Rule**

8

9   Citing its own boilerplate annuity contract, Allianz invokes the parol evidence

10  rule in an attempt to avoid being held accountable for its misrepresentations in its

11  consumer brochures and SOU.  Def's Mem. at 17-18.  However, evidence of fraud has

12  always been an exception to the parol evidence rule and bars its application here.

13  C.C.P. §1856(g) ("this section does not exclude other evidence . . . to establish

14  illegality or fraud.");  *Smith v. John Hancock Ins. Co.*, No. 06-3876, 2008 U.S. Dist.

15  LEXIS 66912, at *2, *7 (E.D. Pa. Sept. 2, 2008) (in fraud against an insurer for

16  representing, in a pre-sale disclosure statement, that annuity offered a "1.00% bonus

17  for each premium payment," when in fact the insurer "recouped" the bonus credited

18  on the first-year of her deferred annuity policy through lower returns, court found that

19  the parol evidence rule did not bar plaintiff's claim).  This fundamental rule has deep

20  roots.  As the California Supreme Court has explained, "[p]arol evidence is ***always***

21  admissible to prove fraud . . . . *[I]t was never intended that the parol evidence rule*

22  *should be used as a shield to prevent the proof of fraud.*"  *Ferguson v. Koch*, 204

23  Cal. 342, 347 (1928); *Fleury v. Ramacciotti*, 8 Cal. 2d 660, 662 (1937).

24  While Allianz acknowledges this longstanding exception, it attempts to sidestep

25  it, arguing that the misrepresentations in its marketing materials are somehow "at

26  variance" with the guaranteed terms of policyholders' contracts.  Def's Mem. at 2-4.

27  This is incorrect.  First of all, the alleged misrepresentation must be "'directly at

28  variance with the promise of the writing.'"  *Duncan v. The McCaffrey Group, Inc.*,

- 19 -

749500_1

200 Cal. App. 4th 346, 365 (2011) (citing *Bank of Am. Nat'l Trust & Savings Ass'n v. Pendergrass*, 4 Cal. 2d 258, 263 (1935)).  The false statements here do not come close to meeting this standard.  *Negrete*, 2011 U.S. Dist. LEXIS 118529, at *41 (finding that claims that a policyholder's belief that they would receive greater interest and payout rates was not "inconsistent" with Allianz's contractual guarantees).

Plaintiffs contend that Allianz falsely represents that its policies have no sales charges or fees.  Nothing in the contracts suggests or even hints to a layperson that the policies actually do impose sales charges.[6]  Allianz Exs. 8-11.  There is no mention of the word "fee," "commission," or "load"; nor is there any mention or explanation of Allianz's method for determining the crediting rate.  *Id.*  The contracts certainly do not inform the policyholder that Allianz would recoup the agent commissions through onerous surrender penalties, lower credits to account values and lower annuitization payments.  *Id.*  Instead, the annuity contracts give the misleading impression that the policy is free of charges and fees.  Allianz Ex. 8 at OW 00233 (the "premium allocation percentage" is 100%); Allianz Ex. 9 at ALC 0134063 (same); Allianz Ex. 10 at ALC 0134118 (same).  The fact that the annuity contract imposes a floor on crediting rates, *i.e.*, a guaranteed minimum, has nothing to do with Plaintiffs' claims.

Similarly, nothing in the contracts suggests that Allianz would claw back the promised bonus also through surrender penalties, lower account credits and lower annuitization payments.  The annuity contracts provide that policy owners will "receive a 12% Premium Bonus."  Allianz Ex. 8 at OW 00229, OW 00233 ("12% for the first five Policy Years").  Allianz fails to provide any reason why it cannot pay the minimum guaranteed rate or otherwise meet its contractual obligations and still honor its bonus representation.

---

[6]     All references to "Allianz Ex." or "Allianz Exs." are to the exhibits attached to the Declaration of Denise A. Fee in Support of Defendant Allianz Life Insurance Company of North America's Third Motion for Partial Summary Judgment, filed under seal May 30, 2012.

- 20 -

749500_1

1    The same is true with respect to Allianz's misrepresentation that policy owners

2   would receive "full value" if certain deferral requirements were met, as the contracts

3   fail to even mention the "haircut." Allianz Exs. 8-11. There is certainly no language

4   *contradicting* or *modifying* Allianz's representation that policy owners will receive all

5   of their accumulation value if they annuitize their annuity after five years.

6    For these reasons, *Casa Hererra, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004), and

7   *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412 (1992), relied on by Allianz,

8   provide it little assistance. Def's Mem. at 17-18. In both of those actions, the parties'

9   contracts contained terms *that direcily contradicted* representations made during

10   contract negotiations, which formed the basis of the fraud claim. *Herrera*, 32 Cal.

11   App. 4th at 339-40 (plaintiff alleged that defendant had promised during contract

12   negotiations its oven would produce 1,500 dozen 16-ounce tortillas per hour; contract

13   stated that the oven would only produce 1,500 dozen 10-ounce tortillas per hour);

14   *Alling*, 5 Cal. App. 4th at 1424, 1436 (plaintiff alleged fraud based upon business

15   plan/prospectus distributed during negotiations; contract specifically disclaimed any

16   references to the business plan or its projections). In other words, plaintiffs in *Casa*

17   *Hererra* and *Alling* had improperly attempted to turn a contract dispute into a fraud

18   case.

19    Here, it is just the opposite. As noted above, Allianz's annuity contracts are

20   entirely consistent with plaintiffs' claims. *See* C.C.P. §1856(g) (parol evidence rule

21   does not exclude evidence to establish fraud or illegality). Because Allianz's

22   misrepresentations "tend to establish some independent fact," and do not directly

23   contradict the express terms of the annuity policy, plaintiffs may proceed with their

24   claims. *See Pendergrass*, 4 Cal. 2d at 263 (the alleged misrepresentation must be

25   "directly at variance with the promise of the writing."); *Wang v. Massey Chevrolet*, 97

26   Cal. App. 4th 856, 873 (2002).

27

28

- 21 -

749500_1

**B.**   **The Parol Evidence Rule Does Not Apply for Additional Reasons**

The parol evidence rule applies only where the parties to a contract have a fully integrated and unambiguous written agreement. C.C.P. §1856(a). Allianz's entire argument is premised on the fallacy that its policy contracts are fully integrated. "The crucial issue in determining whether there has been an integration is whether the parties *intended* their writing to serve as the exclusive embodiment of their agreement." *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968). To determine the parties' intent, the court must examine the writing itself, along with the circumstances at the time of the writing. *Id.* (citing 3 Arthur L. Corbin, *Corbin on Contracts* §§582-584 (1960)). If the circumstances show that the parties did not intend the writing to be an integration, in whole or in part, the parol evidence rule is not applicable. *Id.*

Here, the standardized sales process precludes any notion that the policyholder genuinely intended the policy to be a complete merger of the representations, including the purchase of the product. As required by Allianz, to purchase an annuity a policyholder must review the consumer brochure and statement of understanding and submit an application (along with a check). Fact Nos. 139-141. If the application is approved, Allianz issues a boilerplate, non-negotiable policy approximately one month later. Fact Nos. 142, 144. In this situation, Allianz's deferred annuity policies cannot be considered "integrated." *McLain v. Great Am. Ins. Cos.*, 208 Cal. App. 3d 1476, 1485 (1989) (the use of a preprinted (standard) form agreement often suggests that the written contract did not integrate all of the parties' agreement); *see also Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*, 890 F.2d 108, 112 (9th Cir. 1989) (rejecting argument that merger clause is dispositive on the issue of integration, "especially when the contract is a pre-printed form drawn by a sophisticated seller and presented to the buyer without any real negotiation").

Policyholders are also provided no meaningful opportunity to review or discuss the policy contract before purchasing the annuity, because Allianz does not ███████

- 22 -

749500_1

1 ██████████████████████████████████████████████

2 ██ Fact Nos. 145-147. Moreover, the policy ████████████████████

3 ██████████████████ *Id.* Thus, as a matter of law, policyholders cannot have been

4 deemed to have assented to the "entire contract" provision relied upon by Allianz.

5 *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819 (1981) (contract provision will not

6 be enforced if it does not fall within the reasonable expectations of the parties);

7 Restatement (Second) of Contracts §211 (1981) (parol evidence may be admitted to

8 show the terms of a standardized form contract because the standardized process

9 eliminates any bargaining over the details of the transaction).

10      In any event, nothing in the provision upon which Allianz relies

11 ***unambiguously*** manifests a policyholder's intent to exclude Allianz's pre-sale

12 representations from the agreement.  Allianz Ex. 8 at OW 00262; Allianz Ex. 9 at

13 ALC 0134079; Allianz Ex. 10 at ALC 0134135; Allianz Ex. 11 at ALC 0134155.  Nor

14 does the provision express an intent to waive fraud claims based on representations in

15 Allianz's sales materials.  Allianz Ex. 8 at OW 00262; Allianz Ex. 9 at ALC 0134079;

16 Allianz Ex. 10 at ALC 0134135; Allianz Ex. 11 at ALC 0134155.  The provision does

17 not imply – let alone state – that Allianz's prior representations, in the brochures it

18 created and required to be provided to purchasers, are negated and cannot be relied

19 upon by policyholders.  Allianz Ex. 8 at OW 00262; Allianz Ex. 9 at ALC 0134079;

20 Allianz Ex. 10 at ALC 0134135; Allianz Ex. 11 at ALC 0134155.

21      If anything, just the opposite is true.  The provision ***includes*** language which

22 could easily be understood to include pre-sale representations.  Specifically, the

23 provision stating that the contract includes another pre-sale document (the

24 application), which is part of the sales package required to be provided to the

25 policyholder. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 269-70 (1966).  As such, there

26 cannot be a summary determination, as a matter of law, that the policy is fully

27 integrated. *Id.* (since an insurance contract is unquestionably adhesionary in nature,

28 all ambiguities are construed against the drafter).  It is reasonable for a policyholder to

- 23 -

1  rely upon the representations in Allianz's consumer brochures, and Allianz should not

2  be able to rely on its annuity contracts to disclaim any responsibility for its pre-sale

3  representations.

4  **VII.   THE _IORIO_ JUDGMENT DOES NOT PRECLUDE MR. OW**
        **FROM PURSUING HIS MASTERDEX 10 CLAIMS IN THIS**

5        **ACTION**

6        Allianz asks the Court to enter final judgment on the claims released by the

7  settlement agreement in _Iorio v. Allianz Life Ins. Co. of N. Am._, No. CV-05-633 (JLS)

8  (CAB) (S.D. Cal.), including the claims asserted by Mr. Ow with respect to his

9  MasterDex 10 annuity.[7] Def's Mem. at 16.  The _Iorio_ settlement involved six Allianz

10 two-tier deferred annuities.  Allianz Ex. 14 at 4.

11       With respect to the claims of the class members within the _Iorio_ settlement,

12 plaintiffs have stipulated that the release obtained in _Iorio_ extinguishes and satisfies

13 their claims.  Allianz Ex. 17 at 1.  However, with respect to the claims asserted by Mr.

14 Ow on his MasterDex 10 annuity, judgment is certainly not appropriate.  As Allianz

15 acknowledges in its statement of facts, Mr. Ow filed this action and is prosecuting it

16 based, in part, on the purchase of that annuity.  Allianz's Alleged Undisputed Material

17 Fact No. 1.  By doing so, he has demonstrated his intent to exclude himself from the

18 _Iorio_ action.  _Hanlon v. Chrysler Corp._, 150 F.3d 1011, 1024-25 (9th Cir. 1998)

19 (holding that individual's prosecution of a competing state class action operated as an

20 individual opt-out of nationwide class); _McCubbrey v. Boise Cascade Home & Land_

21 _Corp._, 71 F.R.D. 62, 69 (N.D. Cal. 1976) (instituting litigation after receipt of notice

22 operated as an effective opt-out of the class settlement).  Accordingly, Allianz is not

23 entitled to judgment with respect to the claims asserted by Mr. Ow on his MasterDex

24 10 annuity.

25

26  _____

27  [7]     Only one of Mr. Ow's four Allianz deferred annuity policies (the MasterDex

28  10) was at issue in the _Iorio_ case.  Allianz's Alleged Undisputed Material Fact No. 56.

749500_1

## VIII.  CONCLUSION

For each and all of the foregoing reasons, Allianz's motion for summary judgment is not well-taken, and should be denied in its entirety.

Respectfully submitted,

DATED:  August 14, 2012

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN J. STOIA, JR.
THEODORE J. PINTAR
RACHEL L. JENSEN
PHONG L. TRAN
STEVEN M. JODLOWSKI


_____s/ Theodore J. Pintar_____
THEODORE J. PINTAR

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

DATED:  August 14, 2012

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
KIMBERLY C. PAGE


_____s/ Andrew S. Friedman_____
ANDREW S. FRIEDMAN

2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
MANFRED MUECKE
501 W. Broadway, Suite 1450B
San Diego, CA  92101
Telephone:  619/756-7748

Co-Lead Class Counsel

- 25 -

749500_1

**ECF CERTIFICATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated:  August 14, 2012

By:  s/ Theodore J. Pintar
THEODORE J. PINTAR

749500_1

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 14, 2012.

s/ Steven M. Jodlowski
STEVEN M. JODLOWSKI

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: sjodlowski@rgrdlaw.com

749500_1

## Mailing Information for a Case 2:05-cv-06838-CAS -MAN

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Christopher G Barnes**
  cgb@jordenusa.com

- **Stephen R Basser**
  sbasser@barrack.com

- **Arthur G Boylan**
  arthur.boylan@leonard.com

- **Frank G Burt**
  fgb@jordenusa.com,pjc@jordenusa.com,jal@jordenusa.com

- **Raul A Cuervo**
  rac@jordenusa.com,vhv@jordenusa.com,bpp@jordenusa.com

- **Lance A Etcheverry**
  lance.etcheverry@skadden.com,jon.powell@skadden.com,psigney@skadden.com,dolly.hansen@skadden.com,al.chua@skadden.com

- **Ingrid M Evans**
  ingrid@evanslaw.com,paralegal@evanslaw.com,info@evanslaw.com,judy@evanslaw.com

- **Tonna Kaye Farrar**
  tfarrar@bffb.com,rcreech@bffb.com,nvarner@bffb.com

- **Denise A Fee**
  daf@jordenusa.com

- **Lawrence J Field**
  lawrence.field@leonard.com

- **Howard David Finkelstein**
  hdf@classactionlaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,rcreech@bffb.com,ngerminaro@bffb.com

- **Roland C Goss**
  rcg@jordenusa.com

- **Wilson F Green**
  wgreen@bfgwc.com

- **Evangeline F Grossman**
  egrossman@shernoff.com,eramirez@shernoff.com

- **Tania Marie Hoff**
  tania.hoff@nbcuni.com,brenda.dalusong@nbcuni.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven M Jodlowski**
  sjodlowski@rgrdlaw.com,e_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **James F Jorden**
  jfj@jordenusa.com,lw@jordenusa.com

- **Stephen J Jorden**
  sj@jordenusa.com,sxg@jordenusa.com

- **Kurtis J Kearl**

kjkearl@kjklegal.com

- **Mark L Knutson**
  mlk@classactionlaw.com

- **J Andrew Meyer**
  ameyer@forthepeople.com,vgerlach@forthepeople.com

- **NBC Universal, Inc.**
  tania.krebs@nbcuni.com

- **Thomas Jerome Nolan**
  tnolan@skadden.com,carl.roth@skadden.com

- **Linda B Oliver**
  loliver@reedsmith.com,swurth@reedsmith.com

- **Kimberly C Page**
  kpage@bffb.com

- **Theodore J Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Elizabeth Wiet Reutter**
  elizabeth.reutter@leonard.com

- **Elaine A Ryan**
  eryan@bffb.com

- **Eric C Schaffer**
  ecschaffer@reedsmith.com

- **Kristin A Shepard**
  kas@jordenusa.com

- **William M Shernoff**
  wshernoff@shernoff.com,sbruchey@shernoff.com,tcorby@shernoff.com,eramirez@shernoff.com

- **James Paul Sizemore**
  paul@sizemorelawfirm.com,kamerrer@sizemorelawfirm.com

- **John J Stoia , Jr**
  johns@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patricia N Syverson**
  psyverson@bffb.com,rcreech@bffb.com,eryan@bffb.com,afriedman@bffb.com

- **Leah O Taylor**
  lotaylor@taylorlawyers.com

- **Michael D Thamer**
  michael@trinityinstitute.com,office@trinityinstitute.com

- **Phong L Tran**
  ptran@rgrdlaw.com

- **Michael Valerio**
  mav@jordenusa.com

- **Dawn B Williams**
  dbw@jordenusa.com

- **Jeffrey L Williams**
  jlw@jordenusa.com,ksm@jordenusa.com

- **C Todd Willis**
  ctw@jordenusa.com,jal@jordenusa.com

- **John A Yanchunis**
  tponder@forthepeople.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Joel A Cohen
Shernoff Bidart Darras Echeverria LLP
600 South Indian Hill Boulevard
Claremont, CA 91711

Christa L Collins
Christa L Collins LLC
1780 102nd Avenue North  Suite 100
St Petersburg, FL 33716
```