1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4     THE HON. JUDGE CHRISTINA A. SNYDER, JUDGE PRESIDING

5

6  VITA F. NEGRETE; etc.,            )
                                     )
7                 Plaintiffs,        )
                                     )
8          vs.                       ) NO. 05-CV-6838-CAS
                                     ) RELATED CASE NO.
9  ALLIANZ LIFE INSURANCE COMPANY OF ) 05-CV-8908-CAS
   NORTH AMERICA;                    )
10                Defendant.         )
   _____)

11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               Los Angeles, California

17              Monday, February 23, 2015

18

19

20

21

22

         LISA M. GONZALEZ, CSR No. 5920, CCRR
23            U.S. District Courthouse
          312 North Spring Street - Room 438
24           Los Angeles, California 90012
                   213.894.2979
25               www.lisamariecsr.com

1    **APPEARANCES:**

2

3    **FOR THE PLAINTIFFS:**   ROBBINS GELLER RUDMAN & DOWD LLP
                                BY:   THEODORE J. PINTAR, ESQ.
4                               and  STEVEN JODLOWSKI, ESQ.
                                655 West Broadway
5                               Suite 1900
                                San Diego, California  92101
6                               (619) 231-1058

7

8    **FOR THE DEFENDANT:**    CARLTON FIELDS JORDEN BURT
                                BY:   STEPHEN J. JORDEN, ESQ.
9                               One State Street
                                Suite 1800
10                              Hartford, Connecticut  06103-3102
                                (860) 392-5000

11

12                             CARLTON FIELDS JORDEN BURT
                                BY:  JAMES F. JORDEN, ESQ.
13                              100 S.E. Second Street
                                Suite 4200
14                              Miami, Florida  33131-2113
                                (202) 965-8100

15

16

17

18

19

20

21

22

23

24

25

1      *Los Angeles, California, Monday, February 23, 2015;*

2                          *10:10 A.M.*

3                           *-o0o-*

4            THE CLERK:  Calling calendar item five, case

5      CV-05-6838, Vida F. Negrete v. Allianz Life Insurance

6      Company of North America; and related case, CV-05-8908,

7      Carolyn B. Healey, etc., v. Allianz Life Insurance Company

8      of North America.

9            Counsel please state your appearances.

10           MR. PINTAR:  Good morning, Your Honor.  Ted

11     Pintar.  And with me is Steve Jodlowski of the Robbins

12     Geller firm for plaintiffs.

13           THE COURT:  Good morning.

14           STEVE JORDEN:  Good morning, Your Honor.  Steve

15     Jordan for Allianz and with me is Jim Jorden.

16           THE COURT:  Good morning.

17           Okay.  Well, at long last we're here.

18           I think we have two objectors in the courtroom; is

19     that correct?

20           MS. GILL:  Yes.

21           MR. MADIGAN:  Yes.

22           THE COURT:  You want to come forward and identify

23     yourselves.

24           MS. GILL:  Robin Gill.

25           THE COURT:  Good morning, Ms. Gill.

1          And, Mr. Madigan, I presume?

2          MR. MADIGAN:  Steve Madigan.

3          THE COURT:  Okay.  I guess before we get going

4  here, obviously, I have objections from both of you.  My

5  understanding, Mr. Madigan, was that you had withdrawn

6  yours.  I don't know if you've changed your mind or what

7  your position is today.

8          MR. MADIGAN:  I -- no, I ask that the court weigh

9  that.

10          THE COURT:  Okay.  And that's still your position?

11          MR. MADIGAN:  Yes.

12          THE COURT:  Okay.  And, Ms. Gill, do you have a

13  position regarding your pending objection?

14          MS. GILL:  I'm here in support.  I'd like to speak

15  to it today.

16          THE COURT:  I'm going to give you an opportunity

17  because I think we ought to hear from you perhaps first and

18  then hear from the plaintiffs and defendants thereafter.

19          So if you want to come forward.

20          MS. GILL:  Thank you.  My name is Robin Gill, and

21  I'm here today in support of the objections I filed with the

22  court in opposition to the proposed settlement agreement and

23  to preserve appeal rights in the event that the settlement

24  agreement gets approved by the court.

25          My dad, Charles R. Hertzberg, was the most

1   honorable man I've ever known.  He was caring and a very

2   fair man who dedicated his career to public service with

3   over 30 years in the Small Business Administration.  His

4   integrity was highly regarded, as was his expertise in

5   financial loan programs, as evidenced by his three

6   appearances in the congressional record before senate

7   subcommittees.

8          When my dad made me a party to the deferred

9   annuity contract negotiations with the defendant in October

10   of 2005, I became duty bound to protect his interest, and

11   that's why I'm here today.

12         My dad's purpose in bringing me to this meeting

13   was to meet the Allianz agent and make sure that he fully

14   explained the contract provisions to me for handling the

15   disbursements of the asset upon the contract maturity date

16   in the event that he died prior to October 24th, 2015.

17   Sadly, he did.

18         Now, I don't work in the legal field nor in the

19   insurance industry so you can imagine my surprise when I

20   received the notifications of the class action on

21   November 6th, 2014.  I was confused, overwhelmed, and then

22   alarmed.  Operating under the court deadline, my response

23   required a crash course in both.  I'd like to share what I

24   find -- what I've discovered with the court from the

25   perspective of an absent class member.  My first finding was

1    critical to comprehending the language in the settlement

2    agreement proposed before this court.

3         My first finding found three differences between

4    the single-tier annuity and the two-tier annuity contract.

5    The single-tier annuity contract is not regulated by any

6    governing authority, while a two-tier annuity is regulated

7    by the state insurance commission within each state or

8    territory.

9         Number two, a single-tier annuity does not contain

10   any life insurance component, and it does not have a death

11   benefit.  A two-tier annuity contract is a life insurance

12   policy with a death benefit.

13        And, number three.  A single-tier annuity is

14   strictly an investment vehicle, however, it's not a

15   registered security so there's no regulatory oversight.  Any

16   court determination as to the fairness and adequacy of the

17   settlement as proposed needs to highly scrutinize the relief

18   available to all members.  Relief available to single-tier

19   annuitants as much as two-tier annuitants' relief.

20        In the timely objection that I filed with the

21   court, I offer seven separate justifications that warrant

22   this court's denial of the proposed settlement, the attorney

23   fees, and the named representatives' award:

24        Number one, inadequate representation.

25        Plaintiffs' counsel argues that this case turns on

1    the deceptive sales practices used by the defendant to

2    induce senior citizens to purchase contracts with annuity

3    dates that extend beyond actuary tables.  If plaintiffs'

4    counsel were concerned about absent and deceased members'

5    interests, they would have sought to safeguard those

6    members' interests from any post-sale predatory tactics and

7    other breaches.  Instead plaintiff counsel focused their

8    effort on defendant's use of deceptive sales practices to

9    induce seniors to purchase deferred annuity products

10   ignoring any post-sale breaches, which is proximate cause of

11   damages to most claim members.  Class members.

12          Number two.  Adequacy requirement on the part of

13   plaintiffs' counsel has not been met for all members.

14          Plaintiffs' counsel would have the court believe

15   that its adequacy requirement under Rule 23(a)(4) is met by

16   simply stating it.  Without any support of their assertion,

17   they imply that they have the support of class members due

18   to the absence of any conflict -- of any evident conflict

19   between class members and class counsel.  This member's

20   objection presents a conflicting interest on behalf of all

21   members who suffered damages and would receive no relief in

22   the settlement.  One only has to look at the settlement to

23   see a conflict between the single-tier and two-tier annuity

24   benefits provided for in the settlement, which they

25   euphemistically refer to as "tailor benefits."

1          Plaintiffs' counsel would have the court believe

2     that single-tier annuities, with diminishing surrender

3     charges over time, afford less recovery opportunity.  They

4     conveniently ignore the terms of the contract in regard to

5     maturity dates and defendant's liability for any breach.

6     They suggest, without providing any percentages of the

7     actual class member breakdown by annuity type, that a

8     substantial portion of the class encompasses a two-tier

9     product.  If numerosity requirements are met with the

10    two-tier product, then what purpose does it serve to snare

11    members with single-tier products into a class where

12    plaintiffs' counsel provides inadequate representation.

13    This is a dirty trick to new class members.

14          Number three, insufficient notice.  I can't be

15    sure why I received a special notice of right to remain a

16    class member or request exclusion from class action on

17    November 6th, 2014.

18          On multiple calls to the settlement administrator,

19    which were recorded, I was advised that I was eligible to

20    exclude from the class action.  It wasn't until I received a

21    call from settlement administrator, Nicole, on November 17,

22    2014, that I learned there was no opt-out eligibility for my

23    contract and no relief available in the settlement.

24          In the declaration of Kimberly Ness, she

25    identifies that Rust Consulting received 17 timely

1    exclusions from eligible class members who received the

2    special notice.  What is not disclosed is how many invalid

3    exclusion requests were received.  Like the other objectors

4    requesting that their contracts remain as is, members who

5    are denied the opportunity to opt out want to ensure that

6    the defendant cannot dodge their liability for a post-sale

7    breach of contract by a release in this settlement.

8          THE COURT:  Let me stop you there.  I don't think

9    you're in the position of those people who want an as-is

10   situation because they have the right to decline to have the

11   benefits of the class.  I think you are saying that you were

12   entitled to something more because there's some inherent

13   conflict.

14         MS. GILL:  Not at all, Your Honor.  What I'm

15   saying is that the terms of the contract were done in

16   good-faith bargaining by both parties.  If there's a

17   post-sale breach, then each party would be liable for

18   that -- or that party would be liable for that breach and

19   could include a contract rescission or anything.  What I'm

20   saying is that the settlement release is overbroad, and that

21   they dodge any liability of breach of contract.

22         THE COURT:  Okay.

23         MS. GILL:  In the declaration of Todd Willis,

24   exhibits were provided to demonstrate the notification

25   requirements under the Class Action Fairness Act of 2005

```
 1   were met.  Letters to each state insurance commissioner were
 2   included to support this assertion.  However, in my home
 3   state of Maryland, the insurance commissioner's office
 4   informed me that they have no jurisdiction over single-tier
 5   annuity contracts.  Therefore, no indication that their
 6   support of this settlement could be inferred and no evidence
 7   that the state attorney generals who hold the consumer
 8   protection responsibility were notified.  The court should
 9   closely scrutinize the notification requirement under the
10   CAFA Act for compliance.
11              THE COURT:  Well, they were notified.
12              MS. GILL:  The state attorneys?  I didn't see it
13   in the declaration of Todd Willis.
14              THE COURT:  They were.
15              MS. GILL:  Okay.
16              THE COURT:  None of the state attorney generals
17   filed objections.
18              MS. GILL:  I only saw the exhibits that provided
19   the notification to the state insurance commission, not the
20   state attorney general.  And when I called the insurance
21   commission, they informed me they had no jurisdiction over
22   single-tier contracts.
23              THE COURT:  I know that, but what I'm saying to
24   you is the record reflects that the defendants notified the
25   attorney general of the United States and all of the states'
```

1    attorney general.

2           MS. GILL:  Thank you, Your Honor.  I didn't see

3    that.  Thank you.

4           The extent of --

5           Number four, the extent of discovery and stage of

6    litigation.  Motion doesn't mean action.

7           Plaintiffs' counsel would have the court believe

8    that comprehensive discovery was conducted simply because

9    they had been at it for nine years and looked at three

10   million pages of documents produced by the defendant and

11   other third parties.  Yet the defendant denies all

12   allegations so it's no surprise what documents were

13   provided.  Plaintiffs' counsel's job is to find out

14   everything the defendant is hoping to conceal, not just

15   passively review what they receive.  Plaintiff counsel cites

16   the extensive analysis performed on actuarial and financial

17   data produced by Allianz but looking in the wrong direction

18   for the wrong information could hardly be referred to as

19   discovery.  If you're looking for a smoking gun to support

20   plaintiffs' allegations don't ask the shooter for it.  The

21   actual instruments used to defraud members are available

22   from the members themselves in the form of contracts,

23   correspondence sent to members from the defendant via U.S.

24   mail and as well as other material evidence and testimony.

25   Plaintiffs' counsel have overlooked their basic

 1   responsibility to discover the facts.  Stating that the

 2   proposed settlement was a product of extensive arm-length

 3   negotiations making it presumptively fair and reasonable

 4   doesn't make it so particularly when the resulting

 5   settlement is neither fair nor reasonable.  Winning this

 6   case on the merits is not as plaintiffs' counsel claims

 7   difficult, it's their job.  With 49 million in attorney fees

 8   on the line, they have every incentive to make it sound like

 9   winning this case is very difficult and risky, but the court

10   shouldn't be taken in by this.  Plaintiffs' counsel has had

11   nine years to prepare the case for trial.  The largest risk

12   of going to trial belongs to the defendant.  This may

13   explain the facially excessive amount of attorney fees that

14   the defendant agreed not to object to in the settlement

15   which would be otherwise known as a clear agreement.  It's

16   incumbent on this court to closely scrutinize for collusion

17   with $49 million in stake, in fees at stake.  A conspiracy

18   could be likely.

19          Number five.  The settlement release is overbroad

20   and allows defendant to escape all liability at the class

21   members' expense.

22          Any settlement being demanded as a condition of

23   this -- any settlement where the release being demanded as a

24   condition of the settlement is extremely overbroad and

25   encompasses claims that were neither pursued in the class

1    complaint nor subject to true adversarial litigation prior

2    to the settlement is inequitable.  Under the proposed

3    settlement, the class forever releases Allianz from

4    liability arising from any and all claims made in

5    conjunction with those alleged in the lawsuit.

6         In addition to stripping class members of their

7    potentially valuable statutory damage claims, the broad

8    general release protects the Allianz-affiliated agents, none

9    of whom have given any consideration in exchange for

10   receiving the proposed liability shield.  By releasing the

11   class claims and ending current litigation in exchange for

12   nothing of value, the settlement will leave the class worse

13   off than if the class had never been brought.

14        Number six is just a question:  Does the

15   settlement serve a higher purpose in the public interest

16   that the court should consider?  Does it provide safeguards?

17   The court should never be used as a tool to protect bad

18   actors practicing fraud in any form on the unsuspecting

19   public.

20        However, if the court approved the proposed

21   settlement, it would effectively serve as a shield to

22   promote such practices.  The defendant is liable for all the

23   actions of its employees and affiliated agents which require

24   them to assure that business is conducted in accordance with

25   the law.  The defendant denies all allegations of wrongdoing

1    on their part and on the part of all their employees and

2    their affiliated agents in any manner.

3         Furthermore they contend that the settlement class

4    members with fully annuitized contracts have not suffered

5    any damages or loss as a result of the conduct alleged in

6    the action, as if they determined this as a trier of fact.

7    Yet they seek to strip away members legal rights in exchange

8    for no meaningful relief.

9         In other words, they would have the court believe

10   that there's no fraudulent schemes out there in the sales of

11   execution of contracts on their annuities.  Products -- and

12   in their design.  Therefore, we can expect that the

13   defendant will continue to conduct business as usual if the

14   proposed settlement is approved.

15        Plaintiffs' counsel would have the court believe

16   that this settlement is beneficial to class members and

17   provides meaningful relief, yet members that receive no

18   monetary relief in the settlement with damages have nothing

19   meaningful in any form of relief.  They don't even get to

20   learn of the extent of the insidious behavior employed by

21   the defendant because it never sees the light of day until

22   it's too late to do anything about it.

23        Perhaps if injunctive relief had been provided for

24   in the settlement then at least the action could have served

25   a higher purpose in deterring the use of fraudulent schemes

1   to receive unjust enrichment.  If light were to be shined on

2   the predatory practices engaged by the defendant at trial,

3   then at least it could serve to heighten public awareness to

4   the pitfalls in certain annuity products.

5           So does the settlement serve a higher purpose?

6   No.  The court should reject the settlement, not allow

7   deceptive tactics to be hidden under the cover of darkness.

8   At least a trial would shed light on the facts as tried by a

9   jury.

10          And, number seven.  The settlement does not

11  provide any equitable claim review process.

12          The settlement structure is designed so that

13  members have no means to have their claims fairly

14  adjudicated.  There are no provisions for an appeal process

15  by any independent reviewer regardless of the circumstances

16  of the damages.  Under the proposed settlement, the extent

17  of the defendant's willful fraud and the resulting damages

18  would forever be hidden.  At least if the court orders the

19  case to go to trial, the members and the public interest can

20  be better served by heightening public awareness to the

21  predatory tactics employed by the defendant.

22          Other than class members, practically everyone

23  involved in this case stands to benefit from the proposed

24  settlement.  The named plaintiffs receive monetary

25  compensation.  All defendants including those that have

1    contributed nothing to the settlement are released from

2    liability in this and other related actions, and class

3    counsel stands to receive attorney's fees in excess of

4    $49 million.  Meanwhile class members stand to lose their

5    seventh amendment rights under the U.S. Constitution in

6    exchange for nothing, leaving them worse off than if this

7    case had never been brought.

8           Neither defendant's counsel nor plaintiffs'

9    counsel meet their burden of demonstrating that the

10   settlement is fair, reasonable, or equitable for absent

11   class members.  For all the foregoing reasons, the proposed

12   settlement should be rejected by the court.

13          And in conclusion, I would like to thank the court

14   for considering my objections and permitting me the

15   opportunity to speak here today.  Thank you, Your Honor.

16          THE COURT:  Thank you, Ms. Gill.

17          I need to get some paper, so I'm going to leave

18   the bench for about two seconds.  I think that we're going

19   to hear from counsel.  Obviously, I have some observations

20   because I have been involved in this, as counsel know,

21   Ms. Gill doesn't know, since 2005, so I have some

22   understanding of how contentious matters have been, and what

23   the nature of the litigation has been.

24          That said, I think one of the -- several of the

25   things that you ought to address for purposes of her

```
 1   argument is, first of all, I think that someone should
 2   address what has happened when Allianz has gone to trial on
 3   other cases regarding these annuities.
 4           I think, secondly, someone should be prepared to
 5   address the injunctive relief point, and I do not believe
 6   that there's a conflict between the single-tier and two-tier
 7   annuity holders, but that said, I think you need to address
 8   why there's not a conflict.  And I think you will have a
 9   laundry list of other things that you will want to speak to,
10   but let me run and get the paper that I inadvertently left
11   in chambers.
12           (Brief pause in the proceedings)
13           THE COURT:  Okay.  My apologies.
14           Who would like to speak first?
15           Mr. Madigan, do you want to -- I'm sorry.
16   Mr. Madigan wishes to speak, and I apologize.
17           MR. MADIGAN:  Judge, I have -- my objection really
18   is raised toward a number of issues.  First of all, it's a
19   scope of the release.
20           THE COURT:  Right.  And, of course, you have the
21   Florida litigation pending.
22           MR. MADIGAN:  I have some litigation, it's pending
23   against another insurance company and the connection is the
24   agent who sold the Allianz annuities is also the agent who
25   was responsible for the other company's annuities.
```

```
 1              THE COURT:  Right, but I don't think this
 2    settlement releases the agent in that capacity.
 3              MR. MADIGAN:  Yeah, no, I understand.  And I'm
 4    kind of in a -- I hate it to say it like this.  I don't mean
 5    it as really negative, but it was really -- we've had
 6    discussions with counsel regarding settlement, but I would
 7    like to see Mr. Lucci excluded from the whole process
 8    because he represents a predicate act in my RICO case, the
 9    Allianz, and I'm afraid of claim preclusion that I may not
10    be able to get his particular action under this class action
11    then brought into my RICO.  And there is -- so that's the
12    consideration here that I have.  I don't really see the
13    issue with why he can't be left out.  And I'll be perfectly
14    honest with you, since I'm in an adversarial position with
15    Carlton Fields because they represent the other insurance
16    company, and it's kind of hard to get anything when you're
17    questioning whether who's being -- who somebody's
18    representing at that particular moment.  I just say that to
19    get it off my chest.
20              THE COURT:  Okay.
21              MR. MADIGAN:  Now, I am objecting to the scope.  I
22    also am objecting to the methodology in the valuation
23    primarily of the consideration being provided to the
24    deferred class of which my parents are still part.  They
25    have two, $100,000-premium based policies.  And then the
```

1   effect on the attorney's fees because if the value is not

2   what they say it is, what Mr. Long has put in his actuarial

3   report, that would revise the attorney's fees down.

4            THE COURT:  Well, it could but might not.

5            MR. MADIGAN:  Now, the issue, and I'll start with

6   the valuation issue.  Listen, I'm a CPA, I'm retired, but I

7   don't know what -- I have to be really frank here, I don't

8   know what Mr. Long was doing regarding the -- giving 9

9   percent CV to the cash surrender value, adding that to your

10  cash surrender value.  This whole -- this whole suit is

11  about taking advantage of the elderly.  And now we have a

12  situation where an alternative that's given to the elderly

13  is to increase a cash surrender value which still is less

14  than, in most cases, less than the premiums paid.

15           Now, if I were to take that cash surrender value

16  and compare it to an annuitant who went ten years and they

17  got their bonus and everything like that, they go ten years

18  at that point, they annuitize their annuity, just simple

19  Steve Madigan ran the cash -- ran the present values of the

20  stream of income.  Okay.  And I used the example that

21  Mr. Long provides in his -- in his position paper whatever,

22  and that pretty much correlates to my parents' numbers, but

23  I thought it was, you know, I used those numbers, and the

24  value to -- I got to get my glasses on.  The annuitizing, it

25  doesn't even come close.  I ran it at 2 percent discounts,

1  3 percent, 4 percent, 5 percent, and at no case did that

2  stream of annuity payments over ten years even come close to

3  the cash surrender value to the 9 percent.  I don't have any

4  problem with the offer.  To offer people 9 percent, fine,

5  but you also have to value this appropriately.

6  Allianz insurance company is being relieved of a

7  liability on their books -- Allianz has on their books a

8  liability for that 135,000 amortization value.  It's on

9  their books.  So after this is all said and done, and you

10  take -- and you just take the amount of people that he said

11  would benefit from this, Allianz is, after taking into

12  consideration the cash that they paid to increase the cash

13  surrender value of, after doing that, at 2 percent, $221

14  million relief of a liability.  At 3 percent, $171 million

15  relief of a liability.  At 4 percent, $124 million relief of

16  a liability.  And at 5 percent, $82 million relief of a

17  liability.

18  Now, I'm under the impression here that Allianz

19  provides monetary relief, and we provide a release, but

20  what's happening here is that Allianz is receiving monetary

21  relief and it's a huge number, it's gigantic, and it's

22  only -- and that's based on the 24 percent of the annuitants

23  who choose this, as he says in the example, that's what it

24  comes down to.  He didn't, in his analysis, not one place

25  does he talk about the benefits that the defendant receives

1   as a result of this, and I find that amazing.  The annuitant

2   is paying for it.  And this is the whole problem we've had

3   at the beginning.  The attorneys will tell you that we were

4   concerned about liquidity and we're concerned about the

5   distance between the annuitization value and the cash

6   surrender value.

7            THE COURT:  Right.

8            MR. MADIGAN:  They talk about that.  Okay, if

9   you're going to talk about that, then why should Allianz

10  receive, like I said, in the hundreds of millions of dollars

11  of elimination of liability on their books?  They got to be

12  going -- this is the sweetest deal going for them.

13           Now, the second point is the enhanced 5 percent.

14  Again, I hate to say it, but I'm very disappointed --

15           THE COURT:  You're talking about single tier or

16  are you talking about two tiers?

17           MR. MADIGAN:  Yeah, they offered that to the

18  two-tiered annuity.

19           THE COURT:  Okay.

20           MR. MADIGAN:  Can I get a drink of water?

21           THE COURT:  Sure.

22           MR. MADIGAN:  With regard to the 5 percent penalty

23  pre-enhancement, and it's 25 percent over five years, I look

24  at this as -- he ran his number, and he took the entire

25  population of the deferred class and he said, "What would

1    the penalty be if everybody in the deferred class took the

2    5 percent?" and he says it's $757 billion.  That's

3    everybody.  That's people who have never incurred a penalty,

4    some people who have incurred one penalty, two, three,

5    whatever.  It's unlikely -- it's unlikely that we have heavy

6    penalties on deferred class have been incurred because these

7    people protect their annuitization value because they're

8    still in the program.

9         Okay.  Now, that penalty -- and I ran the numbers

10   on this -- he says in his example that -- he gives an

11   example of a cash surrender value of 90,000 and an

12   annuitization value of 135-.  You take that difference, 45,

13   and he comes up with the penalty in the first year would be

14   2,500.

15        THE COURT:  Right.

16        MR. MADIGAN:  Did you know in the second year it

17   would be greater than 2,500, the third year it would be

18   greater than that year, the fourth year would be greater

19   than that year, and the fifth year would be greater than

20   that year?  That's how he comes out with $757 million.

21        THE COURT:  I'm not sure that's right, but --

22        MR. MADIGAN:  You never -- you never can have a

23   decreasing penalty because the product is geared toward the

24   annuitization value increasing at a greater rate than the

25   cash surrender value.

1          Okay.  So we're talking about huge penalties.  I'd

2  like to know when he takes 15 percent of that number was

3  there anybody in that example of the 15 percent that

4  incurred five years of penalties in the past.  And how many

5  people in that 15 percent did he take who are people that

6  even incurred a penalty or incurred multiple penalties in

7  the past?  You can't confuse that.  You got to do apples and

8  apples and oranges and oranges.  And to sit there -- their

9  wish is to get $757 million.  Okay.  Their expectancy is

10  15 percent of that number, according to him, or an asset.

11  We're taking away from them an asset.

12          Well, if only 3 percent of that 15 percent ever

13  incurred a penalty, the amount of damages of $113 million is

14  clearly overstated.

15          But another thing, Judge, it's really bothersome

16  to me, and I ran a lot of numbers in the past as a CPA

17  working for Ernst & Ernst in the old days.  The simplest way

18  to have found out what they were giving up would have been,

19  over the past 14 years, back to the date 2001 to present,

20  they would have taken the historical data provided to them

21  by Allianz and they would have determined how many people

22  that are currently in the deferred class incurred a penalty.

23  Then they would have weighted that based on the premiums

24  because some -- you have different size premiums, different

25  size annuities, weighted that, and then you would have

```
 1  multiplied by five because there's five years in there.  I
 2  don't even know if you'd multiply by five.  Yeah, you'd
 3  multiply by five.  What you'd end up with is the historical
 4  amount of penalties that Allianz received from the members
 5  of the deferred class only over the past 14 years.  But
 6  instead he takes the maximum that could ever possibly be,
 7  that's 757 million, and he applies a 15 percent factor to
 8  that to come up with and say:  This is what Allianz is
 9  giving up.  Well, Allianz is giving up a wish.  A wish.
10  Maybe an expectancy once you do 15 percent; but if you do
11  the 15 percent, you got to analyze in that 15 percent
12  whether it only includes people that have incurred a
13  penalty.  Those people who they collect their penalty from.
14  You don't collect it from people over the past
15  whatever years who have never incurred a penalty.
16          The next point on this is, I give them this, I
17  give them this, and Mr. Long doesn't value it.  I don't
18  understand it.  He should have taken, compared the cash, the
19  present value strings of taking your money for the first
20  five years at the -- of taking a withdraw, staying in
21  deferred status, taking your 5 percent hence penalty for the
22  next ten years, then annuitizing.  In other words, the
23  product would be open for 15 years.  Last 10 years
24  annuitization, first 10 years they withdraw.  Okay.  And
25  compare that to somebody who took, just simply took a
```

1  ten-year annuitization.  That would give you, the difference

2  gives you the present value of what we are receiving in

3  present value dollars.

4  　　　　In other words, I don't dispute the fact that

5  giving somebody an additional 5 percent isn't a value in a

6  timing sense.  In a timing sense, it's a value, yes, but if

7  you run the numbers out as I have, you know, we're talking

8  about, 20, at the best, 20, 25 million dollars in timing

9  sense.  You're talking about -- what the penalties are given

10  up, we don't really know that answer because he hasn't

11  provided historical data on what Allianz has collected in

12  the past.

13  　　　　And regarding the 9 percent, I don't see where it

14  had any value.  I'm not saying they didn't offer it.  I'm

15  saying they offered, that's fine.  But just offering

16  something in a class action is one thing.  It's the

17  responsibility now to value what was offered.  And if you

18  can never -- if 10-year annuitization never gets you to the

19  point where it falls below the cash surrender value plus the

20  9 percent, you gave these people nothing.  And in fact

21  Allianz stuck in their pocket the elimination of a

22  liability, which I think is an absolute crime.  I mean I am

23  -- as a CPA, I'm really disappointed in Mr. Long's analysis.

24  　　　　Now, next point I'll get to is the scope of the

25  release.  Eight years ago we had an opt out.  In that opt

1   out you've got a notice.  And in that notice, it provided

2   there would probably be a release, I assume.  I haven't --

3   my parents what they got, but I assume they got it.  Okay.

4   There is no way, over eight-year period people like myself

5   may have a lawsuit here, but you wouldn't know that on the

6   opt-out period, you know, and so Allianz takes advantage of

7   the eight years.  They take -- they just get and they just

8   keep it going and going and going to the point where the

9   plaintiffs' lawyers, I think, give in, and they succumb to

10  poor -- to valuing something that shouldn't be valued as it

11  was valued.

12          Now, do I think the plaintiffs' lawyers have

13  provided incompetent representation?  No, I think there's

14  been a wink and a nod, but no.

15          I am -- regarding the release, though, they were

16  probably informed in that original notice there would

17  probably be a release, but not a release to the extent we're

18  talking about here.  And an example is in paragraph -- I got

19  to get my glasses on -- in paragraph -- article 9(a):

20  "Plaintiffs and the settlement class members expressly agree

21  that this release is and may be used as a complete defense

22  to and precludes any claim, action, or proceeding

23  encompassed by the release against Allianz releasees."

24          So that means if this is a predicate act in my

25  RICO case against this other insurance company and the

1    agent, that simply because we've had a -- he can use that as

2    a complete defense to the entire RICO action.

3              THE COURT:  Well, I don't think that's right, but

4    we'll hear from the defendants.

5              MR. MADIGAN:  Right.  I mean -- I don't understand

6    here why Mr. Lucci, the agent in question, who's an

7    independent agent, has sold 18 annuities to my parents, 16

8    not involving Allianz, why he can't -- why he couldn't have

9    been -- we couldn't have come to some arrangement where he

10   could be excluded.  He's -- an independent agent is like a

11   guy with two heads.  He's a party, and he's not a party.

12   For the 16 that he sold, he's not a party.  That are outside

13   of this lawsuit.  For the two that he sold, he is a party.

14             Okay.  And -- so what ends up happening, what ends

15   up happening here is, see, I -- somebody can say -- Judge, I

16   know you can say, "I don't know if I can read it that way."

17   They said the same thing to me, but, you know what, when I'm

18   in a lawsuit involving a lot of money, all of a sudden I'm

19   going to be spending legal fees defending what this thing

20   may very well say.  And I think that's -- I want to have

21   some finality to what's in there on that.

22             Plus I just don't see -- I don't see why

23   plaintiffs' counsel, knowing full well it's been eight years

24   in the works, why plaintiffs' counsel didn't adequately on

25   this point, on the scope of the release, they don't need a

1   gigantic release, Allianz, they're eight years down the

2   road.  Unfortunately, like my dad, most of these -- most of

3   these people who have bought policies have died, have passed

4   on.  Representative like I'm a representative but,

5   obviously, a lot of representatives don't come forward, they

6   don't -- they just don't do it.

7        THE COURT:  Well, there are lots of reasons they

8   may not come forward.  They may be satisfied with the

9   settlement, they may be indifferent to the settlement, but

10   we can't really --

11        MR. MADIGAN:  We don't know.  We don't know.  I

12   agree with you.

13        But at the same time, given it was eight years

14   ago, Allianz really didn't need a very encompassing release

15   here.

16        THE COURT:  Well, I don't know that I agree with

17   that.  They have many, many agents, and if those agents are

18   sued with regard to Allianz products, there are going to be

19   claims against Allianz, and I think that they're trying to

20   buy peace.

21        MR. MADIGAN:  Well, I don't have any problem with

22   the release of damages to Allianz or the agent.  I don't

23   have any problem in the -- my RICO action is -- I don't have

24   any problem with getting no damages associated with the

25   Allianz sales.  I don't have any problem with that.  I'm not

```
 1   after money.  I'm just saying in terms of a predicate act

 2   which will have no money associated with it, that's what I

 3   want.

 4              THE COURT:  I hear what you want.  I'm not -- I

 5   don't know the circumstances of your case.  I assume you

 6   have an attorney in your case.

 7              MR. MADIGAN:  Yeah, I do.

 8              THE COURT:  And that person probably can advise

 9   you regarding what the impact is, but I'm not sure that I'm

10   prepared to accept your statement that somehow this

11   prejudices your RICO case in the other case.  That's --

12              MR. MADIGAN:  Yeah, no.  And I don't want to

13   individualize this thing to make it look like -- this

14   release is for the entire class and other people may have

15   issues too down the road.  Who knows.

16              THE COURT:  One never knows.

17              MR. MADIGAN:  One never knows.  You're right.

18   You're absolutely right.  My thinking, though, is that -- is

19   that they need to really re-think particularly clause eight

20   and particularly the way they have -- the scope of this,

21   just the scope of this release.  And I just really wish that

22   the plaintiffs' lawyers had provided better protection for

23   class members because really when it comes down to it, we,

24   as class members, don't want to give up any more in terms of

25   a release than Allianz wants to pay.
```

```
 1              And so -- but I -- but when what we end up is such

 2    a broad release, I don't think we're really adequately

 3    represented from the viewpoint of the release that was

 4    struck particularly in terms of the fact that Allianz jumped

 5    on our side of the fence and, as I said earlier, is being

 6    relieved of a huge liability that exceeds, it exceeds almost

 7    the entire settlement here.  And, you know, that's really

 8    what I have to say on that.

 9              THE COURT:  I'm going to have to ask you to sort

10    of wrap it up because I have to hear from them.

11              MR. MADIGAN:  Wrap it up.

12              THE COURT:  Only because -- I'm really unclear.

13    Obviously, you sent me something withdrawing your objection

14    and from what I've heard today, I think you're renewing your

15    objection.  And I guess we just all ought to know where you

16    stand.

17              MR. MADIGAN:  Well, like I say, most of this --

18    all of it was basically said in the objection.  I'm just

19    presenting it here.  I'm really discussing -- I'm concerned

20    about the release, I'm concerned about the valuation that's

21    been provided by Mr. Long who's been used here.  I mean I

22    just think it's grossly overstated, and -- I just say one

23    last point.  I kind of feel like Section 23 of the Federal

24    Rules provides for common interest and let's say we have a

25    common interest here, but in terms of the remedy, it doesn't
```

1    say anything necessarily about the remedy or the relief, but

2    the relief isn't necessarily a common relief.

3          And it's, particularly, in the deferred class

4    here, I -- I don't see why they couldn't have received an

5    increase in their annuitization value like everybody else.

6    Why do they have to jump through hoops?  This whole thing

7    would have been eliminated by an increase in the

8    annuitization value, which I have run the numbers.

9          And if everybody -- it's just -- we're talking

10   about maybe 120, -30, 40 million dollars, which if you say

11   the others are worth -- that would have brought them up to

12   their 250 million.  I really -- it's about 220 or whatever,

13   but I don't understand why the deferred class couldn't have

14   been treated the same as the pay-out class or the first-tier

15   class.  They both got increases to their annuitization

16   value.  Why didn't they provide the annuitization value

17   increase to the deferred class?  I don't get it.

18         THE COURT:  Well, I'm sure they will respond.  I

19   think Mr. Long will explain the reasons as of the party --

20   the counsel, but I'm not going to speak for them.  I'm going

21   to let them speak for themselves.

22         MR. MADIGAN:  Thank you.

23         THE COURT:  Thank you, Mr. Madigan.

24         Mr. Pintar.

25         MR. PINTAR:  Thank you, Your Honor.

1      A lot of points that I would like to address, and

2  I will, in doing that, try and reach -- I will reach the

3  points that you raised, and I know defendants want to

4  address some points too so we're going to divide it up a

5  little bit.

6      But I would like to start with, I think, where we

7  left off, and that's the valuation of the settlement at

8  $251 million based on the Long declaration.  We, obviously,

9  have a different viewpoint, and that is that it's a very

10  conservative valuation.  And we think it's conservative on

11  two levels.

12      What Mr. Long did was, yes, he does calculate what

13  the 100 percent utilization number would be, but then he

14  takes very conservative utilization assumptions for purposes

15  of calculating the actual value.  And, you know, for several

16  of the benefits it's 20 percent utilization, 15 percent

17  utilization, and then when you get down to the claim process

18  and the various categories of misrepresentation, suitability

19  and financial need, those utilization assumptions are below

20  2 percent.

21      So we think the value is going to be much higher

22  than what he calculated.

23      But also there were 42,000 annuities that -- where

24  there were terminations due to death, and the data didn't

25  allow Mr. Long to determine which category they would fall

1   under because they could fall under the annuitization relief

2   category or they could fall under the claim process

3   depending on what the beneficiary did in terms of taking the

4   death benefit.  So those were not even included in the

5   valuation.

6              So, again, that's another area where it was just

7   very conservative.

8              And then, finally, well, to shift gears a little

9   bit, looking at the result and what we achieved here, our

10   damage expert, Mr. McCann estimated damages at 489 million,

11   and we feel we've achieved benefits of over 250 billion,

12   which we think is unheard of in a settlement in a case of

13   this nature.

14              Also, just to hit a couple of other points on why

15   we're -- where we are.  The parties were in a very strong

16   position as you know, having lived this litigation with us,

17   to really judge the strengths and weaknesses of the claims.

18   Nine years of very hard-fought litigation.  I'm not going to

19   go through all the details, which you're very familiar with.

20   We were weeks from trial so we certainly knew the risks.  We

21   had the benefit of two mediators in this case.  One early on

22   that was unsuccessful and then Robert Caplan of Judicate

23   West down in San Diego who helped us really get to the goal

24   line, very sophisticated mediator who helped the parties

25   resolve the case.

1            And then the settlement compares very favorably

2    with the other annuity settlements that this court has

3    already approved.

4            Now, if I could just touch briefly on the

5    attorney's fees and expenses which were alluded to, not

6    really squarely addressed but certainly alluded to.  I want

7    to hit a couple of points.

8            It's 1.27 multiplier.  I'm not going to go through

9    all the details, but that was based on 73,000 hours of work.

10   And we submitted, for the court's review, a task-based

11   summary, which was very detailed, and what we tried to do

12   was to give the court a real appreciation for how we spent

13   our time so that the court could say:  Look -- so the court

14   could analyze, look, was their time well spent or not.  And

15   so we feel that the 73,000 hours is fully supported.

16           And as far as the rates that we charge, those are

17   the same rates that were approved in this case and the other

18   annuity settlements and that have been approved by many

19   courts.

20           And then as a cross check, the percentage approach

21   of 16.9 percent is well below the Ninth Circuit benchmark of

22   25 percent.  So the fee -- in summary, if you look at the

23   result obtained, the stage at which the settlement was

24   reached and the fact that there was serious risk in this

25   litigation, we brought very novel RICO claims.  We were able

1    to get a class certified.  There was tremendous risk in

2    maintaining that certification through trial.  And as we all

3    know, Allianz was very successful when it went to trial in

4    the *Mooney* case, and we face that very serious risk and the

5    objectors seem to assume, to point out what Ms. Gill argued,

6    on the one hand she makes it sound as if we were very

7    passive in how we litigated the case, but, on the other

8    hand, there was no risk at taking the case to trial, which

9    are very inconsistent.  I think we were very diligent in the

10   way that we prosecuted the case, and I think we recognized

11   the very real risk at trial.

12           In terms of could we have achieved more relief or

13   different relief, I know that objectors a lot of times like

14   to second guess what we achieved and, you know, the reality

15   of settlement is a compromise, and the Ninth Circuit

16   recognized that fact in the *Hanlon* case.  And when you look

17   at $251 million in estimated benefits, this was a tremendous

18   result and a very meaningful settlement.

19           I want to address some of the specific objections

20   by Ms. Gill.  She raised the issue of post-sales predatory

21   tactics.  Somehow those -- it's not clear to me what tactics

22   she's referring to or how those could be articulated in the

23   claim, and so, you know, it's very difficult to address

24   that, but we did take a very hard look at the sales

25   practices and the way that these annuities work, and we feel

```
 1   that our claims were properly addressing the issues, and I'm
 2   sorry I'm just not clear what she's referring to.
 3              THE COURT:  Well, I guess you need to address why
 4   you didn't seek -- why the settlement doesn't include
 5   injunctive relief.
 6              First of all, I expect the defendants were not
 7   amenable to it, but the reason probably, if I'm just
 8   speculating, is that if you're talking about conduct that's
 9   going to occur in the future, it's very hard to know what it
10   is, and what the injunction would look like.  If you're
11   talking about the conduct that was the subject of this
12   lawsuit, it would be extremely difficult to craft injunctive
13   relief that's precise enough so that it would be enforceable
14   by this court or any other court.  So --
15              MR. PINTAR:  Well, I think that's it.  The very
16   last point, which is there is no -- one, it was discussed
17   and it was very much a heated issue in the settlement
18   negotiations, but at the end of the day, it was:  How do you
19   tailor that to our basic claim, which is that these are
20   inferiority investment -- inferior investments compared to
21   other investments.  And the nature of the claim really
22   didn't lend itself to enforceable injunctive relief.
23              THE COURT:  Well, I understand that, and I guess
24   for the benefit of the objectors, since I probably have
25   spent 10,000 hours working on this case over the last nine
```

1  years, probably more than any other case I've ever worked

2  on, and I know how hard litigated it was and why -- there

3  were serious questions whether the plaintiffs could prevail

4  on their theory.  The fact that it was brought on a

5  class-wide basis meant there had to be a common basis for

6  damages, namely, the nature of the annuity itself as opposed

7  to the suitability issues and that created a very steep

8  slope for you to climb and try the case and the defendants

9  certainly did their job in -- and they would have tried to

10  hold you to the class that was certified.  And if no class

11  was certified, then everyone would be on his or her own,

12  which is probably -- would produce a result that is much,

13  much less desirable than what's happening here.

14          MR. PINTAR:  I think that's right, Your Honor.

15          And if I could also address the issue of the

16  purported conflict between --

17          THE COURT:  I think you should.

18          MR. PINTAR:  -- between the single tier and the

19  two-tier annuities.  First of all, there is no difference in

20  the relief of those annuities that are fully -- that are in

21  the annuitization stage, receiving a stream of payments or

22  if they've been fully surrendered because then they would

23  receive the same claim process or annuitization bonus.  But

24  with respect to those that are in deferral, there is

25  different relief, and there's a reason there's different

1   relief for those.

2          With respect to the two-tier annuities, from our

3   perspective, we truly believe there's a liquidity issue with

4   those, and that's what we try to provide to the class, and

5   the cash surrender value bonus is 9 percent, which is

6   basically giving folks their money back with zero penalty,

7   and that's a huge benefit for a lot of people.  We're

8   basically saying:  If you don't like the contract you

9   entered into, you can exit penalty free, more or less, and

10  that's huge.

11         And with respect to the enhanced penalty-free

12  withdrawals, that's 5 percent additional for any five

13  years -- it doesn't have to be consecutive -- so that's on

14  top of the penalty-free withdrawal provisions that are

15  already in the contract.  So it's providing tremendous

16  amount of liquidity.  That was a primary focus of this

17  litigation.

18         With respect to the single-tier annuities, those

19  surrender charges have basically been eliminated through

20  time.  The class period ended in September of 2007.  I'm

21  sorry.  November of 2007.  But -- so those folks, it's not

22  really an issue of a surrender or penalty there, it's the

23  issue of the embedded cost, which they have endured, and we

24  provide them a tremendous annuitization bonus to address

25  those costs.  So we've tried to tailor it to the issues that

1   were in this case, and those are very meaningful benefits,

2   we believe, and there's certainly no conflict.  You know,

3   participating in one does not diminish the other, et cetera,

4   they're completely independent of each other.

5           I'm just going through my notes, Your Honor, to

6   see if there were any other particular issues that were

7   raised.

8           I think Ms. Gill raised the issue of the notice

9   and Mr. Hertzberg did receive notice in 2007 in the Friedman

10  declaration at paragraph 21.  We identify that, but also

11  just overall this was a tremendous notice program that the

12  court approved on preliminary approval and it included

13  mailing, you know, approximately 240,000 direct mail pieces.

14  We had a live telephone operator and -- who received 30,000

15  calls and a Web site, which received 15,000-some odd hits.

16  So -- and I will tell you that plaintiffs' counsel fielded a

17  number -- I apologize I don't have the number, but we

18  fielded a number of calls from class members who had

19  additional questions or just wanted to speak to the

20  attorneys involved in the case.

21          So we feel that from the notice perspective, it is

22  tremendously comprehensive.  We feel it was clear to folks.

23  I think there is really very little dispute about that.

24          And in terms of the second opportunity to opt out

25  which, I guess, has been argued sort of in connection with

```
 1   the notice, it's really up to the court's discretion, and we
 2   addressed that at preliminary approval.  Everybody did
 3   receive an opportunity at some point to opt out, and we feel
 4   it's been fair and reasonable.  And the court exercised its
 5   discretion at preliminary approval.
 6           So, Your Honor, unless the court has any other
 7   questions, I know defendants want to address the release and
 8   some other issues.
 9           THE COURT:  All right.  You're going to have to
10   clarify for me.  I lost you somewhere, Mr. Pintar.  With
11   regard to the request by these objectors that they be given
12   a second opportunity to opt out, what is your position?
13           MR. PINTAR:  That they should not have a second
14   opportunity because they have already received --
15           THE COURT:  That's what I assumed.
16           MR. PINTAR:  I'm sorry if I was unclear.
17           THE COURT:  Okay.  Thank you.
18           Mr. Jorden.
19           STEVE JORDEN:  Thank you, Your Honor.  I'm going
20   to let the other Mr. Jorden address the risk affiliation
21   because he said, "That's mine."  So I want to start with the
22   notice issue.
23           Both Mr. Madigan's father name, who was the owner
24   of the original annuity, and Ms. Gill's father name were
25   both on the Gilardi class notice list of May, 2007.  It is
```

1    true that Ms. Gill got -- or a special notice was sent for

2    one of the policies to Ms. Gill, it was in error, and the

3    customer service representative at the call center for the

4    settlement compounded it by not elevating the question to

5    class counsel when we could have resolved that, and that's

6    unfortunate.  We addressed it.  Things like that do happen,

7    and it's -- sorry for that, but --

8           The next issue I wanted to address just briefly

9    just to clear up, Maryland does regulate all annuities.

10   Single-tier annuities -- I don't know what the person that

11   Ms. Gill was talking too, but if they didn't regulate single

12   annuities, they would hardly have anything to regulate.

13          The release is similar to and not nearly identical

14   to the releases that have been approved in American Equity,

15   in F & G, in the Midland settlement, in the AmerUs

16   settlement in the Eastern district of Pennsylvania and the

17   release that was approved in National Western in the

18   Southern District, and I think the court is familiar with

19   those.  It's similar to almost every release that we've

20   experienced in these annuity and life insurance class

21   actions.

22          THE COURT:  And the benefits are quite similar

23   too.

24          STEVE JORDEN:  Yeah, that is.  It does cover

25   agents, and the law is clear that it can.  And I think Judge

1   McLaughlin in the AmerUs litigation explained why that was,

2   and I think you echoed those sentiments earlier.

3          Now, Mr. Madigan has some very specific issues

4   with release as it pertains to his individual lawsuit, and I

5   think one of the points that we made in the papers was this

6   does not raise an issue as to the fairness of the settlement

7   as a whole.

8          THE COURT:  Oh, I agree, but I think, you know,

9   there would be nothing wrong with assuring him that he's

10  going to be able to proceed with his litigation.

11         STEVE JORDEN:  I think, Your Honor, what's a

12  little bit frustrating about this, that particular objection

13  as to the other parties in the litigation is that now he has

14  the plaintiffs saying that it does not bar his claims

15  against the other defendants in the action unrelated to the

16  settlement annuities.  He has that in writing.  He has that

17  in writing in our papers, and now he has the court

18  expressing that same view.  I don't know what else he needs

19  before the court in Florida.  And we can't write a release

20  to cover every possible situation that could come up with

21  hundreds of thousands of policies.  So --

22         As to the issue about RICO and whether the

23  predicate acts are precluded, that's really an issue -- and

24  I've spoken to his counsel about that.  That is really an

25  evidentiary issue or a RICO issue, and it's not one for the

1    settlement itself and the approval of the settlement

2    process, I don't believe.

3            THE COURT:  Well, I'm not going to try to give

4    legal advice but --

5            STEVE JORDEN:  Right.

6            So post-sales predatory conduct.  I think the

7    court addressed this before is that it's uncertain what's

8    being referred to by Ms. Gill.  And there -- this case --

9    the release is broad but so is the factual predicate in this

10   case.  It did cover agents and FMOs who were deposed and

11   subpoenaed, and I'm not sure exactly what the court could do

12   without something more specific.  Certainly it covered

13   future conduct because, as you recall, Dr. McCann's attack

14   on the value of annuities projected forward decisions that

15   he claimed would be made with respect to all of those

16   annuities so we have to cover that because that is part of

17   the factual predicate.  Other examples I can't really

18   comment on, and I don't have enough information right now to

19   be able to do that.

20           Briefly, the value is directed at the -- at the

21   allegations of the complaint, and it is little difficult to

22   respond to.  It's like punching a cloud because I have --

23   and I think this is difficult for the plaintiffs' counsel

24   too.  We have a whole bunch of statistics being spit out at

25   us, and I don't have any record here to try to get ahold of

```
 1   what he's talking about.  But needless to say, it -- I don't

 2   follow it, and it seems to me that there is value provided

 3   that was very substantial here.

 4           Finally, risk of litigation, I will let Mr. Jorden

 5   address.

 6           THE COURT:  Okay.

 7           JIM JORDEN:  Good morning, Your Honor.

 8           THE COURT:  Good morning, Mr. Jorden.

 9           JIM JORDEN:  Nice to see you again after many

10   years on this case.

11           THE COURT:  We're all much older now.

12           JIM JORDEN:  We're almost there.  So I'll just

13   make a couple of brief observations about the risk here

14   obviously.  Most specifically in a case in federal district

15   court in Minnesota we tried for three weeks, a case called

16   Mooney, which was a class action, certified class action by

17   Judge Montgomery --

18           THE COURT:  With claims far narrower than the ones

19   in this case.

20           JIM JORDEN:  Exactly.  Claims which were almost

21   identical under a statute which is almost identical to the

22   federal RICO statute actually, however, had easier elements

23   to prove.

24           THE COURT:  It was a stronger case than this --

25           JIM JORDEN:  Yes, it was a stronger case.  And a
```

1   larger case.  We tried it for three weeks, and we prevailed

2   both on the question of whether there had been a violation

3   of statute and perhaps, more importantly, on a specific

4   issue that the jury was asked to answer was:  Did anyone

5   suffer financial harm?  And the answer to that was:  No, no

6   one suffered financial harm.

7          THE COURT:  And just refresh my recollection.

8   What year did the jury reach that result?

9          JIM JORDEN:  2009.

10          THE COURT:  2009.  So we're in 2014 and the

11   plaintiffs have continued to litigate this case in the face

12   of that adversity.  I'm suggesting that to the extent

13   someone is suggesting that the plaintiffs were sleeping on

14   the job, you weren't sleeping on the job, and the plaintiffs

15   weren't sleeping on the job.

16          JIM JORDEN:  That is correct, Your Honor.  With

17   due respect, we have litigated against these plaintiffs for

18   many years, and they're very aggressive, and they're very

19   smart, and they do -- and in this case, we think, as we

20   always -- Allianz would always want to do well by their

21   policy holders and certainly the plaintiffs have.

22          One other point I would make also with respect to

23   the risk issue, there is another court in this -- in the

24   Ninth Circuit in a case called *Rivera* that actually held

25   that *Mooney* barred a number of the claims in this very case,

```
 1    and that issue was overcome as well by these plaintiffs'
 2    lawyers.  So, clearly, serious risk and clearly from the
 3    standpoint of what the plaintiffs faced in terms of proving
 4    up on RICO a very serious issue for them.
 5              Thank you, Your Honor.
 6              THE COURT:  Thank you.  Does Mr. Madigan or
 7    Ms. Gill want to be heard further?
 8              MR. MADIGAN:  What was that?
 9              THE COURT:  Do you want to respond?  Do you want
10    to say anything further?
11              MR. MADIGAN:  Yeah, a couple of points.
12              THE COURT:  Okay.  Why don't you come forward and
13    do that.
14              MR. MADIGAN:  When somebody mentioned under the --
15    someone was talking about at length about the benefit to the
16    people that already had surrendered and they were involved
17    in this claims process.  I'd like to make clear that those
18    people are getting a $36 million cap.  And so even though
19    under Mr. Long's statistics he shows that those people put 5
20    billion in the program and they're only getting 3.9, they've
21    only been paid 3.9 billion up to date, there's a $1.1
22    billion difference, and they're subjecting that difference
23    to a cap of 36 million.  Okay.  You know, I think under any
24    of the substantive fairness things, they could pay more.
25              The other issue is under deferred -- people throw
```

```
 1   this 5 percent around like Allianz is just sticking

 2   5 percent in your pocket, but I hope we all understand that

 3   they're taking -- they're giving you 5 percent, but they're

 4   taking it out of both your annuitization value and your cash

 5   surrender value.  So all you're getting is a timing benefit.

 6   You're getting it a little bit faster than you otherwise --

 7          THE COURT:  Well, no.  You're getting a liquidity

 8   benefit too, I think.

 9          MR. MADIGAN:  You're getting a liquidity benefit.

10          THE COURT:  Which is one of the concerns that is

11   expressed in this litigation regarding why these annuities

12   were, as a general group, not valuable.

13          MR. MADIGAN:  But one point on the liquidity.  If

14   they took a 10 percent, they took their annuitization at

15   that point versus this 5 percent, because the numbers,

16   there's not a significant amount of liquidity that exceeds

17   taking annuitizing and taking the 15 percent.  On the

18   numbers you would get, that Mr. Long had, in the first year

19   you would get say 15,000 if you had 100,000 in premiums paid

20   versus 13,000, actually about $13,900, if you took an

21   annuitization of your benefits at that point.

22          So we're talking -- it's not a $5,000 liquidity

23   issue, it's a $1,100 liquidity issue, and that's something.

24   But that's where I say that the whole thing needed to be

25   evaluated and the present value, time value, money, you just
```

 1    discount the various streams of income to come down to where

 2    you are.

 3              And I don't dispute that in the long run, at the

 4    end of the game, there's a total net benefit to the group of

 5    say somewhere around 2- to $10 million, but not 113 million.

 6    Not 113 million.  And I think that's what's missing in

 7    Mr. Long's report.  Okay.

 8              THE COURT:  Okay.

 9              Anything further?

10              MS. GILL:  Just briefly.

11              THE COURT:  Yes.

12              MS. GILL:  I'm a little out of my element so thank

13    you for some latitude here in allowing me to speak.  As far

14    as the liquidity issue, there's been a lot of discussion

15    about the products, but as defense points out, there's also

16    non-fraudulent purposes for these types of contracts and for

17    particular certain senior citizens that may want to preserve

18    an asset for their estate and avoid a tax liability in the

19    estate, which is bargained for in the contract itself.

20              Also the issue of punching a cloud really is not

21    before the court today.  I mean I didn't bring my

22    evidentiary material here to argue, that's for a jury to

23    decide, but what concerns me is the release is circumventing

24    contract provisions that wouldn't provide an opportunity to

25    have the day in court.  So I want to remind the court and

 1  ask them to protect those interests.  Thank you.

 2          THE COURT:  Okay.  I am going to overrule all of

 3  the objections that have been filed.  I think that, first

 4  and foremost, some of the objections really would ask me to

 5  rewrite the agreement and my task here is to determine

 6  whether the settlement is fair, reasonable, and adequate and

 7  is within the range of possible approval.  I credit

 8  Mr. Long's declaration.  I think that he is an expert.  He

 9  is familiar with these settlements, and he has demonstrated

10  these settlements are in fact in line with one another and,

11  anecdotally, some of the other settlements have been

12  negotiated by other independent mediators, one of whom was a

13  judge on this court for whom I have profound respect for his

14  knowledge of the law and his knowledge of accountancy

15  issues.  These are very difficult cases and the litigation

16  has been really fierce.  The parties have litigated very

17  well.  I think that the likelihood of prevailing in the case

18  was at least questionable and a settlement is appropriate.

19          I think the settlement addresses the claims in the

20  case rather than individual interests.  I do not find the

21  release to be overly broad.  Obviously, what I have to say

22  it's not binding on any Florida court, but it does not

23  appear to me that the release purports to release the

24  individual who's been discussed today insofar as that person

25  is involved selling annuities on behalf of someone other

1   than Allianz.

2         I think that the attorney's fees are reasonable.

3   The plaintiffs have litigated over nine years, they have --

4   the loadstar is, I think, reasonable under the

5   circumstances; the multiplier is reasonable under the

6   circumstances; the percentage between the fees and the

7   recovery is well below the 25 percent benchmark of the

8   Ninth Circuit.  I think that counsel has represented their

9   clients with great skill and they are to be complimented

10  both plaintiffs and defendants in this case for what they

11  have achieved and obviously there will be a more formal form

12  of order, which I'm going to ask be prepared and submitted

13  by the parties to include what we've discussed, to include

14  what the objectors have said in these proceedings, and then

15  I will proceed to work from that order and edit it as

16  appropriate.

17        But, in any event, I do think that this is a

18  situation where the settlement should be approved.  I

19  understand there are concerns by individuals, but I think

20  they're individualized concerns, and I don't mean to

21  minimize their concerns, but I think, with my overview and

22  understanding of the case, injunctive relief really would

23  not have been effective because there is no way to foresee

24  future violations, which were the subject of discussion, and

25  it would be very difficult to fashion an injunction which

1   would have any teeth in it given the complex nature of this

2   litigation.  These are certainly complex annuities, and I

3   think all things being considered, all things under Rule 23

4   being considered, it's appropriate to approve the

5   settlement.

6         If anyone wants to add anything, please do so.

7   Otherwise we're going to be in recess.  And I apologize to

8   everyone on the 11:00 o'clock calendar for having to bare

9   with us.

10        STEVE JORDEN:  Thank you, Your Honor.

11        MR. PINTAR:  Thank you, Your Honor.

12            *(Thereupon, proceedings adjourned)*

13

14                    *-oOo-*

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                              *CERTIFICATE*

6

7          *I hereby certify that pursuant to Section 753,*

8   *Title 28, United States Code, the foregoing is a true and*

9   *correct transcript of the stenographically reported*

10  *proceedings held in the above-entitled matter and that the*

11  *transcript format is in conformance with the regulations of*

12  *the Judicial Conference of the United States.*

13

14  *Date:  February 26, 2015*

15

16                            *Lisa M. Gonzalez*
                       */s/_____*
17                     *Lisa M. Gonzalez, U.S. Court Reporter*
                       *CSR No. 5920*
18

19

20

21

22

23

24

25

**$**

$1,100 [1] 47/23
$1.1 [1] 46/21
$10 [1] 48/5
$10 million [1] 48/5
$100,000 [1] 18/25
$100,000-premium [1] 18/25
$113 [1] 23/13
$113 million [1] 23/13
$124 [1] 20/15
$13,900 [1] 47/20
$171 [1] 20/14
$221 [1] 20/13
$251 [2] 32/8 35/17
$251 million [2] 32/8 35/17
$36 [1] 46/18
$36 million [1] 46/18
$49 [2] 12/17 16/4
$49 million [1] 16/4
$5,000 [1] 31/12
$757 [3] 22/2 22/20 23/9
$757 billion [1] 22/2
$757 million [1] 23/9
$82 [1] 20/16
$82 million [1] 20/16

**-**

-30 [1] 31/10
-oOo [1] 3/3
-oOo [1] 51/14

**/**

/s [1] 52/16

**0**

05-CV-6838-CAS [1] 1/8
05-CV-8908-CAS [1] 1/9
06103-3102 [1] 2/10

**1**

1.27 [1] 34/8
10 [2] 24/23 24/24
10 percent [1] 47/14
10,000 [1] 36/25
10-year [1] 25/18
100 [2] 2/13 32/13
100,000 [1] 47/19
1058 [1] 2/6
10:10 [1] 3/2
113 [1] 48/5
113 million [1] 48/6
11:00 o'clock [1] 51/8
120 [1] 31/10
13,000 [1] 47/20
135 [1] 22/12
135,000 [1] 20/8
14 [2] 23/19 24/5
15 [5] 23/3 23/5 24/11 24/23 32/16
15 percent [7] 23/2 23/10 23/12 24/7 24/10 24/11 47/17
15,000 [1] 47/19
15,000-some [1] 39/15
16 [2] 27/7 27/12
16.9 percent [1] 34/21
17 [2] 8/21 8/25
18 [1] 27/7
1800 [1] 2/9
1900 [1] 2/5

**2**

2 percent [3] 19/25 20/13 32/20
2,500 [2] 22/14 22/17
20 [2] 25/8 25/8

20 percent [1] 32/16
2001 [1] 23/19
2005 [3] 5/10 5/25 16/21
2007 [4] 38/20 38/21 39/9 40/25
2009 [2] 45/9 45/10
2014 [4] 5/21 8/17 8/22 45/10
2015 [4] 1/17 3/1 5/16 52/14
202 [1] 2/14
21 [1] 39/10
2113 [1] 2/14
213.894.2979 [1] 1/24
220 [1] 31/12
23 [5] 1/17 3/1 7/15 30/23 51/3
231-1058 [1] 2/6
24 percent [1] 20/22
240,000 [1] 39/13
24th [1] 5/16
25 million [1] 25/8
25 percent [3] 21/23 34/22 50/7
250 billion [1] 33/11
250 million [1] 31/12
26 [1] 52/14
28 [1] 52/8

**3**

3 percent [3] 20/1 20/14 23/12
3.9 [2] 46/20 46/21
30 [2] 5/3 31/10
30,000 [1] 39/14
3102 [1] 2/10
312 [1] 1/23
33131-2113 [1] 2/14
36 million [1] 46/23
392-5000 [1] 2/10

**4**

4 percent [1] 20/15
40 [1] 31/10
42,000 [1] 32/23
4200 [1] 2/13
438 [1] 1/23
45 [1] 22/12
489 million [1] 33/10
49 million [1] 12/7

**5**

5 percent [12] 20/1 20/16 21/13 21/22 22/2 24/21 25/5 38/12 47/1 47/2 47/3 47/15
5000 [1] 2/10
5920 [2] 1/22 52/17

**6**

619 [1] 2/6
655 [1] 2/4
6838 [1] 3/5
6th [2] 5/21 8/17

**7**

73,000 [2] 34/9 34/15
753 [1] 52/7
757 million [1] 24/7

**8**

8100 [1] 2/14
860 [1] 2/10
8908 [1] 3/6

**9**

9 percent [3] 25/13 25/20 38/5
90,000 [1] 22/11
90012 [1] 1/24
92101 [1] 2/5
965-8100 [1] 2/14

**A**

A.M [1] 3/2
able [4] 18/10 34/25 42/10 43/19
about [32] 7/4 14/22 16/18 19/11 20/25 21/4 21/4 21/8 21/9 21/15 21/16 23/1 25/8 25/9 26/18 30/20 30/20 31/1 31/10 31/12 36/8 36/11 39/23 42/12 42/22 42/24 44/1 44/13 46/15 46/15 47/20 48/15
above [1] 52/10
above-entitled [1] 52/10
absence [1] 7/18
absent [3] 5/25 7/4 16/10
absolute [1] 25/22
absolutely [1] 29/18
accept [1] 29/10
accordance [1] 13/24
according [1] 23/10
accountancy [1] 49/14
achieved [5] 33/9 33/11 35/12 35/14 50/11
act [5] 9/25 10/10 18/8 26/24 29/1
action [16] 5/20 8/16 8/20 9/25 11/6 14/6 14/24 18/10 18/10 25/16 26/22 27/2 28/23 42/15 44/16 44/16
actions [3] 13/23 16/2 41/21
actors [1] 13/18
acts [1] 42/23
actual [3] 8/7 11/21 32/15
actually [3] 44/22 45/24 47/20
actuarial [2] 11/16 19/2
actuary [1] 7/3
add [1] 51/6
adding [1] 19/9
addition [1] 13/6
additional [3] 25/5 38/12 39/19
address [15] 16/25 17/2 17/5 17/7 32/1 32/4 35/19 35/23 36/3 37/15 38/24 40/7 40/20 41/8 44/5
addressed [4] 34/6 40/2 41/6 43/7
addresses [1] 49/19
addressing [1] 36/1
adequacy [3] 6/16 7/12 7/15
adequate [1] 49/6
adequately [2] 27/24 30/2
adjourned [1] 51/12
adjudicated [1] 15/14
Administration [1] 5/3
administrator [2] 8/18 8/21
advantage [2] 19/11 26/6
adversarial [2] 13/1 18/14
adversity [1] 45/12
advice [1] 43/4
advise [1] 29/8
advised [1] 8/19
affiliated [3] 13/8 13/23 14/2
affiliation [1] 40/20
afford [1] 8/3
afraid [1] 18/9
after [5] 20/9 20/11 20/13 29/1 44/9
again [3] 21/14 33/6 44/9
against [6] 17/23 26/23 26/25 28/19 42/15 45/17
agent [9] 5/13 17/24 17/24 18/2 27/1 27/6 27/7 27/10 28/22
agents [7] 13/8 13/23 14/2 28/17 28/17 41/25 43/10
aggressive [1] 45/18
ago [2] 25/25 28/14
agree [4] 26/20 28/12 28/16 42/8
agreed [1] 12/14
agreement [5] 4/22 4/24 6/2 12/15 49/5

# A

ahold [1] 43/25
alarmed [1] 5/22
all [33]  6/18 7/13 7/20 9/14 10/25 11/11
  12/20 13/4 13/22 13/25 14/1 15/25
  16/11 17/1 17/18 20/9 27/18 30/15
  30/18 33/19 34/9 35/2 36/6 37/19 40/9
  41/9 43/15 44/11 47/2 47/5 49/2 51/3
  51/3
allegations [4]  11/12 11/20 13/25 43/21
alleged [1]  13/5 14/5
ALLIANZ [38]  1/9 3/5 3/7 3/15 5/13
  11/17 13/3 13/8 17/2 17/24 18/9 20/6
  20/7 20/11 20/18 20/20 21/9 23/21 24/4
  24/8 24/9 25/11 25/21 26/6 26/23 27/8
  28/1 28/14 28/18 28/19 28/22 28/25
  29/25 30/4 35/3 45/20 47/1 50/1
Allianz-affiliated [1]  13/8
allow [2]  15/6 32/25
allowing [1]  48/13
allows [1]  12/20
alluded [2]  34/5 34/6
almost [5]  30/6 41/19 44/12 44/20 44/21
already [4]  34/3 38/15 40/14 46/16
also [10]  17/24 18/22 20/5 32/23 33/14
  37/15 39/10 45/22 48/15 48/20
alternative [1]  17/1
always [2]  45/20 45/20
am [5]  18/21 18/22 25/22 26/15 49/2
amazing [1]  21/1
amenable [1]  36/7
amendment [1]  16/5
AMERICA [3]  1/9 3/6 3/8
American [1]  41/14
AmerUs [2]  41/15 42/1
amortization [1]  20/8
amount [6]  12/13 20/10 23/13 24/4
  38/16 47/16
analysis [3]  11/16 20/24 25/23
analyze [2]  24/11 34/14
anecdotally [1]  49/11
Angeles [3]  1/16 1/24 3/1
annuitant [2]  19/16 21/1
annuitants [2]  6/19 20/22
annuitants' [1]  6/19
annuities [22]  8/2 14/11 17/3 17/24
  17/25 23/25 27/7 32/23 35/2 35/17 37/19
  37/20 38/2 38/18 41/9 41/10 41/12
  42/16 43/14 43/16 47/11 49/25 51/2
annuitization [18]  21/5 22/7 22/12 22/24
  24/24 25/1 25/18 31/5 31/8 31/15 31/16
  33/1 37/21 37/23 38/24 47/4 47/14
  47/21
annuitize [1]  19/18
annuitized [1]  14/4
annuitizing [3]  19/24 24/22 47/17
annuity [23]  5/9 6/4 6/4 6/5 6/6 6/9 6/11
  6/13 7/2 7/9 7/23 8/7 10/5 15/4 17/7
  19/18 20/2 21/18 34/2 34/18 37/6 40/24
  41/20
another [5]  17/23 23/15 33/6 45/23
  49/10
answer [3]  25/10 45/4 45/5
any [39]  6/5 6/10 6/15 7/6 7/10 7/16
  7/18 7/18 8/5 8/6 9/21 12/22 12/23 13/4
  13/9 13/18 14/2 14/5 14/19 15/11 15/15
  20/3 25/14 26/22 28/21 28/23 28/24
  28/25 29/24 36/14 37/1 38/12 39/6 40/6
  43/25 46/23 49/22 50/17 51/1
anybody [1]  23/3
anyone [2]  45/4 51/6
anything [8]  9/19 14/22 18/16 31/1

41/12 46/10 48/9 51/6
apologies [1]  17/13
apologize [3]  17/16 39/17 51/7
appeal [2]  4/23 13/4
appear [1]  49/23
appearances [2]  2/1 3/9 5/6
apples [2]  23/7 23/8
applies [1]  24/7
appreciation [1]  34/12
approach [1]  34/20
appropriate [3]  49/18 50/16 51/4
appropriately [1]  20/5
approval [5]  39/12 40/2 40/5 43/1 49/7
approve [1]  51/4
approved [10]  4/24 13/20 14/14 34/3
  34/17 34/18 39/12 41/14 41/17 50/18
approximately [1]  39/13
are [37]  8/9 9/5 9/11 11/21 15/14 16/1
  18/24 21/16 23/5 23/22 25/2 25/9 27/12
  28/7 28/17 28/18 31/11 32/19 33/15
  34/16 35/9 36/19 37/20 37/20 37/24
  38/14 39/1 41/22 42/23 46/18 48/2
  49/10 49/15 50/2 50/9 50/19 51/2
area [1]  33/6
argue [1]  48/22
argued [2]  35/5 39/25
argues [1]  6/25
argument [1]  17/1
arising [1]  13/4
arm [1]  12/2
arm-length [1]  12/2
around [2]  47/1 48/5
arrangement [1]  27/9
article [1]  26/19
articulated [1]  35/22
as [59]
as-is [1]  9/9
ask [6]  4/8 11/20 30/9 49/1 49/4 50/12
asked [1]  45/4
assertion [2]  7/16 10/2
asset [4]  5/15 23/10 23/11 48/18
associated [2]  28/24 29/2
assume [4]  26/2 26/3 29/5 35/5
assumed [1]  40/15
assumptions [2]  32/14 32/19
assure [1]  13/24
assuring [1]  42/9
attack [1]  43/13
attorney [9]  6/2 10/7 10/16 10/20 10/25
  11/1 12/7 12/13 29/6
attorney's [6]  16/3 19/1 19/3 34/5 50/2
attorneys [3]  10/12 21/3 39/20
authority [1]  6/6
available [4]  6/18 6/18 8/23 11/21
avoid [1]  48/18
award [1]  6/23
awareness [2]  15/3 15/20
away [2]  14/7 23/11

# B

back [2]  23/19 38/6
bad [1]  13/17
bar [1]  42/14
bare [1]  51/8
bargained [1]  48/19
bargaining [1]  9/16
barred [1]  45/25
based [6]  18/25 20/22 23/23 32/8 34/9
  34/10
basic [2]  11/25 36/19
basically [4]  30/18 38/6 38/8 38/19
basis [2]  37/5 37/5
be [59]

became [1]  5/10
because [28]  4/17 9/10 9/12 11/8 14/21
  16/20 16/8 18/15 19/1 22/6 22/7 22/23
  23/24 24/1 25/10 27/1 29/23 30/10
  30/12 33/1 37/22 40/14 40/21 43/13
  43/16 43/22 47/15 50/23
been [31]  7/13 11/9 13/13 14/23 16/7
  16/20 16/22 16/23 22/6 23/18 26/14
  27/9 27/23 30/21 30/21 31/7 31/14
  34/18 37/22 38/19 39/25 40/4 41/14
  45/2 46/21 48/14 49/3 49/11 49/16
  49/24 50/23
before [6]  4/3 5/6 6/2 42/19 43/7 48/21
beginning [1]  21/3
behalf [2]  7/20 49/25
behavior [1]  14/20
being [10]  12/22 12/23 18/17 18/23 20/6
  30/5 43/8 43/24 51/3 51/4
believe [9]  7/14 8/1 11/7 14/9 14/15 17/5
  38/3 39/2 43/2
belongs [1]  12/12
below [4]  25/19 32/19 34/21 50/7
bench [1]  16/18
benchmark [2]  34/21 50/7
beneficial [1]  14/16
beneficiary [1]  33/3
benefit [5]  6/11 6/12 15/23 20/11 33/4
  33/21 36/24 38/7 46/15 47/5 47/8 47/9
  48/4
benefits [10]  7/24 7/25 9/11 20/25 32/16
  33/11 35/17 39/1 41/22 47/21
best [2]  25/8
better [5]  15/20 29/22
between [8]  6/3 7/19 7/23 17/6 21/5
  37/16 37/18 50/6
beyond [1]  7/3
billion [5]  22/2 33/11 46/20 46/21 46/22
binding [1]  49/22
bit [4]  32/5 33/9 42/12 47/6
bonus [4]  19/17 37/23 38/5 38/24
books [4]  20/7 20/7 20/9 21/11
both [4]  4/4 5/23 9/16 31/15 40/23 40/25
  45/2 47/4 50/10
bothersome [2]  23/15
bought [1]  28/3
bound [1]  5/12
breach [5]  8/5 9/7 9/17 9/18 9/21
breaches [2]  7/7 7/10
breakdown [1]  8/7
brief [2]  17/12 44/13
briefly [4]  34/4 41/8 43/20 48/10
bring [1]  48/21
bringing [1]  5/12
broad [4]  13/7 30/2 43/9 49/21
Broadway [1]  2/4
brought [6]  13/13 16/7 18/11 31/11
  34/25 37/4
bunch [1]  43/24
burden [1]  16/9
BURT [2]  2/8 2/12
business [3]  5/3 13/24 14/13
buy [1]  28/20

# C

CAFA [1]  10/10
calculate [1]  32/12
calculated [1]  32/22
calculating [1]  32/15
calendar [2]  3/4 51/8
CALIFORNIA [5]  1/2 1/16 1/24 2/5 3/1
call [2]  8/21 41/3
called [3]  10/20 44/15 45/24
Calling [1]  3/4

# C

calls [3] 8/16 39/15 39/18
can [13] 5/19 14/12 15/19 21/20 22/22 25/18 27/1 27/15 27/16 27/16 29/8 38/9 41/25
can't [7] 8/14 18/13 23/7 27/8 28/10 42/19 43/17
cannot [1] 9/6
cap [2] 46/18 46/23
capacity [1] 18/2
Caplan [1] 33/22
career [1] 5/2
caring [1] 5/1
CARLTON [3] 2/8 2/12 18/15
Carolyn [1] 3/7
CAS [2] 1/8 1/9
case [48] 1/8 3/4 3/6 6/25 12/6 12/9 12/11 15/19 15/23 16/7 18/8 20/1 26/25 29/5 29/6 29/11 29/11 33/12 33/21 33/25 34/17 35/4 35/7 35/8 35/10 35/16 36/25 37/1 37/8 39/1 39/20 43/8 43/10 44/10 44/14 44/15 44/19 44/24 44/25 45/1 45/11 45/19 45/24 45/25 49/17 49/20 50/10 50/22
cases [3] 17/3 19/14 49/15
cash [15] 19/9 19/10 19/13 19/15 19/19 20/3 20/12 20/12 21/5 22/11 22/25 24/18 25/19 38/5 47/4
categories [1] 32/18
category [2] 32/25 33/2
cause [1] 7/10
CCRR [1] 1/22
center [1] 41/3
CENTRAL [1] 1/2
certain [2] 15/4 48/17
certainly [7] 33/20 34/6 37/9 39/2 43/12 45/21 51/2
CERTIFICATE [1] 52/5
certification [1] 35/2
certified [4] 35/1 37/10 37/11 44/16
certify [1] 52/7
cetera [1] 39/3
chambers [1] 17/11
changed [1] 4/6
charge [1] 34/16
charges [2] 8/3 38/19
Charles [1] 4/25
check [1] 34/20
chest [1] 18/19
choose [1] 20/23
CHRISTINA [1] 1/4
Circuit [4] 34/21 35/15 45/24 50/8
circumstances [4] 15/15 29/5 50/5 50/6
circumventing [1] 48/23
cites [1] 11/15
citizens [2] 7/2 48/17
claim [10] 7/11 15/11 18/9 26/22 32/17 33/2 35/23 36/19 36/21 37/23
claimed [1] 43/15
claims [16] 12/6 12/25 13/4 13/7 13/11 15/13 28/19 33/17 34/25 36/1 42/14 44/18 44/20 45/25 46/17 49/19
clarify [1] 40/10
class [58]
class-wide [1] 37/5
clause [1] 29/19
clear [7] 12/15 35/21 36/2 39/22 41/9 41/25 46/17
clearly [3] 23/14 46/2 46/2
clients [1] 50/9
climb [1] 37/8
close [2] 19/25 20/2

closely [2] 10/9 12/16
cloud [2] 43/22 48/20
Code [1] 52/6
collect [2] 24/13 24/14
collected [1] 25/11
collusion [1] 12/16
come [11] 3/22 4/19 19/25 20/2 24/8 27/9 28/5 28/8 42/20 46/12 48/1
comes [4] 20/24 22/13 22/20 29/23
comment [1] 48/1
commission [3] 6/7 10/19 10/21
commissioner [1] 10/1
commissioner's [1] 10/3
common [4] 30/24 30/25 31/2 37/5
company [1] 1/9 3/6 3/7 17/23 18/16 20/6 26/25
company's [1] 19/16 24/25
compare [2] 19/16 24/25
compared [2] 24/18 36/20
compares [1] 34/1
compensation [1] 15/25
complaint [1] 13/1 43/21
complete [2] 26/21 27/2
completely [1] 39/4
complex [2] 51/1 51/2
compliance [1] 10/10
complimented [1] 50/9
component [1] 6/10
compounded [1] 41/4
comprehending [1] 3/18
comprehensive [2] 11/8 39/22
compromise [1] 35/15
conceal [1] 11/14
concerned [5] 7/4 21/4 21/4 30/19 30/20
concerns [5] 47/10 48/23 50/19 50/20 50/21
conclusion [1] 10/9
condition [2] 12/22 12/24
conduct [6] 14/5 14/13 36/8 36/11 43/6 43/13
conducted [2] 11/8 13/24
Conference [1] 52/12
conflict [8] 7/18 7/18 7/23 9/13 17/6 17/8 37/16 39/2
conflicting [1] 7/20
conformance [1] 52/11
confuse [1] 23/7
confused [1] 5/21
congressional [1] 5/6
conjunction [1] 13/5
Connecticut [1] 2/10
connection [2] 17/23 39/25
consecutive [1] 38/13
conservative [4] 32/10 32/10 32/14 33/7
consider [1] 13/16
consideration [4] 13/9 18/12 18/23 20/12
considered [2] 51/3 51/4
considering [1] 16/14
conspiracy [1] 12/17
Constitution [1] 5/5
Consulting [1] 8/25
consumer [1] 10/7
contain [1] 6/9
contend [1] 14/3
contentious [1] 16/22
continue [1] 14/13
continued [1] 45/11
contract [16] 5/9 5/14 5/15 6/4 6/5 6/11 8/4 8/23 9/7 9/15 9/19 9/21 38/8 38/15 48/19 48/24
contracts [7] 7/2 9/4 10/5 10/22 11/22 14/4 14/11 48/16
contributed [1] 16/1

conveniently [1] 8/4
correct [12] 3/19 45/16 52/9
correlates [1] 19/22
correspondence [1] 11/23
cost [1] 38/23
costs [1] 38/25
could [22] 9/19 10/6 11/18 12/18 14/24 15/3 19/4 24/6 27/10 33/1 33/2 34/4 34/13 34/14 35/12 35/22 37/3 37/15 41/5 42/20 43/11 46/24
couldn't [4] 27/8 27/9 31/4 31/13
counsel [29] 3/9 6/25 7/4 7/7 7/13 7/14 7/19 8/1 8/12 11/7 11/15 11/25 12/6 12/10 14/15 16/3 16/8 16/9 16/19 16/20 16/20 27/23 27/24 31/20 39/16 41/5 42/24 43/23 50/8
counsel's [1] 11/13
couple [4] 33/14 34/7 44/13 46/11
course [2] 5/23 17/20
court [51] 1/1 3/13 4/8 4/22 4/24 5/22 5/24 6/2 6/16 6/21 7/14 8/1 10/8 10/16 11/7 12/9 12/16 13/16 13/17 13/20 14/9 14/15 15/6 15/18 16/12 16/13 22/15 34/2 34/12 34/13 34/13 36/14 36/14 39/12 40/4 40/6 41/18 42/17 42/19 43/7 43/11 44/15 45/23 46/12 47/10 48/21 48/25 48/25 49/13 49/22 52/17
court's [3] 6/22 34/10 40/1
Courthouse [1] 1/23
courtroom [1] 3/18
courts [1] 34/19
cover [5] 15/7 41/24 42/20 43/10 43/16
covered [1] 43/12
CPA [3] 19/6 23/16 25/23
craft [1] 36/12
crash [1] 5/23
created [1] 37/7
credit [1] 49/7
crime [1] 25/22
critical [1] 6/1
cross [1] 34/20
CSR [2] 1/22 52/17
current [1] 13/11
currently [1] 23/22
customer [1] 41/3
CV [5] 1/8 1/9 3/5 3/6 19/9
CV-05-6838 [1] 3/5
CV-05-8908 [1] 3/6

# D

dad [3] 4/25 5/8 28/2
dad's [1] 5/12
damage [2] 13/7 33/10
damages [11] 7/11 7/21 14/5 14/18 15/16 15/17 23/13 28/22 28/24 33/10 37/6
darkness [1] 15/7
data [4] 11/17 23/20 25/11 32/24
date [4] 5/15 23/19 46/21 52/14
dates [2] 7/3 8/5
day [3] 14/21 36/18 48/25
days [1] 23/17
deadline [1] 5/22
deal [1] 21/12
death [4] 6/10 6/12 32/24 33/4
deceased [1] 7/4
deceptive [3] 7/1 7/8 15/7
decide [1] 48/23
decisions [1] 43/14
declaration [6] 8/24 9/23 10/13 32/8 39/10 49/8
decline [1] 9/10
decreasing [1] 22/23

## D

dedicated [1]  5/2
defendant [19]  1/10 2/8 5/9 7/1 9/6
11/10 11/11 11/14 11/23 12/12 12/14
12/20 13/22 13/25 14/13 14/21 15/2
15/21 20/25
defendant's [4]  7/8 8/5 15/17 16/8
defendants [10]  4/18 10/24 15/25 27/4
32/3 36/6 37/8 40/7 42/15 50/10
defending [1]  27/19
defense [3]  26/21 27/2 48/15
deferral [1]  37/24
deferred [13]  5/8 7/9 18/24 21/25 22/1
22/6 23/22 24/5 24/21 31/3 31/13 31/17
46/25
defraud [1]  11/21
demanded [2]  12/22 12/23
demonstrate [1]  9/24
demonstrated [1]  49/9
demonstrating [1]  16/9
denial [1]  6/22
denied [1]  9/5
denies [2]  11/11 13/25
depending [1]  33/3
deposed [1]  43/10
design [1]  14/12
designed [1]  15/12
desirable [1]  37/13
detailed [1]  34/11
details [2]  33/19 34/9
determination [1]  6/16
determine [2]  32/25 49/5
determined [2]  14/6 23/21
deterring [1]  14/25
did [13]  5/17 20/1 22/16 23/5 32/12 33/3
35/24 37/9 39/9 40/2 43/10 45/4 45/8
didn't [10]  10/12 11/2 20/24 25/14 27/24
28/14 31/16 32/24 36/4 36/22 41/11
48/21
died [2]  5/16 28/3
Diego [2]  2/5 33/23
difference [5]  22/12 25/1 37/19 46/22
46/22
differences [1]  6/3
different [6]  23/24 23/24 32/9 35/13
37/25 37/25
difficult [8]  12/7 12/9 35/23 36/12 43/21
43/23 49/15 50/25
diligent [1]  35/9
diminish [1]  39/3
diminishing [1]  8/2
direct [1]  39/13
directed [1]  43/20
direction [1]  11/17
dirty [1]  8/13
disappointed [2]  21/14 25/23
disbursements [1]  5/15
disclosed [1]  9/2
discount [1]  48/1
discounts [1]  19/25
discover [1]  12/1
discovered [1]  5/24
discovery [3]  11/5 11/8 11/19
discretion [2]  40/1 40/5
discussed [3]  36/16 49/24 50/13
discussing [1]  30/19
discussion [2]  48/14 50/24
discussions [1]  18/6
dispute [3]  25/4 39/23 48/3
distance [1]  21/5
district [6]  1/1 1/2 1/23 41/16 41/18
44/14

divide [1]  32/4
DIVISION [1]  1/3
do [24]  4/12 13/22 17/5 23/7
24/10 24/10 26/16 28/6 29/7 31/6 34/11
36/18 41/6 43/11 43/19 45/19 45/20
46/9 46/9 46/13 49/20 50/17 51/6
documents [2]  11/10 11/12
dodge [2]  9/6 9/21
does [16]  6/9 6/10 8/10 13/14 13/16
15/5 15/10 20/25 32/12 39/3 41/9 41/24
42/6 42/14 46/6 49/22
doesn't [8]  11/6 12/4 16/21 19/25 24/17
30/25 36/4 38/13
doing [3]  19/8 20/13 32/2
dollars [4]  21/10 25/3 25/8 31/10
don't [51]  4/6 5/18 9/8 11/20 14/19 18/1
18/4 18/12 19/7 19/7 20/3 24/2 24/14
24/17 25/4 25/10 25/13 27/3 27/5 27/16
27/22 27/22 27/25 28/5 28/6 28/6 28/11
28/11 28/16 28/21 28/22 28/23 28/25
29/5 29/12 29/24 30/2 31/4 31/13 31/17
38/8 39/17 41/10 42/18 43/2 43/18
43/25 44/1 46/12 48/3 50/20
done [2]  9/15 20/9
DOWD [1]  2/3
down [8]  19/3 20/24 28/1 29/15 29/23
32/17 33/23 48/1
Dr [1]  43/13
drink [1]  21/20
due [3]  7/17 32/24 45/17
duty [1]  5/10

## E

each [4]  6/7 9/17 10/1 39/4
earlier [2]  30/5 42/2
early [1]  33/21
easier [1]  44/22
Eastern [1]  41/16
echoed [1]  42/2
edit [1]  50/15
effect [1]  19/1
effective [1]  50/23
effectively [1]  13/21
effort [1]  7/8
eight [7]  25/25 26/4 26/7 27/23 28/1
28/13 29/19
eight-year [1]  26/4
elderly [2]  19/11 19/12
element [1]  48/12
elements [1]  44/22
elevating [1]  41/4
eligibility [1]  8/22
eligible [2]  8/19 9/1
eliminated [1]  31/7 38/19
elimination [2]  21/11 25/21
else [2]  31/5 42/18
embedded [1]  38/23
employed [2]  14/20 15/21
employees [2]  13/23 14/1
encompassed [1]  26/23
encompasses [2]  8/8 12/25
encompassing [1]  28/14
end [4]  24/3 30/1 36/18 48/4
ended [1]  38/20
ending [1]  13/11
ends [2]  27/14 27/14
endured [1]  38/23
enforceable [2]  36/13 36/22
engaged [1]  15/2
enhanced [2]  21/13 38/11
enhancement [1]  21/23
enough [2]  36/13 43/18
enrichment [1]  15/1

ensure [1]  9/5
entered [1]  38/9
entire [4]  21/24 27/2 29/14 30/7
entitled [2]  9/12 52/10
equitable [2]  15/11 16/10
Equity [1]  41/14
Ernst [2]  23/17 23/17
error [1]  41/2
escape [1]  12/20
ESQ [4]  2/3 2/4 2/8 2/12
estate [2]  48/18 48/19
estimated [2]  33/10 35/17
et [1]  39/3
etc [2]  1/6 3/7
euphemistically [1]  7/25
evaluated [1]  47/25
even [7]  14/19 19/25 20/2 23/6 24/2
33/4 46/18
event [3]  4/23 5/16 50/17
ever [4]  5/1 23/12 24/6 37/1
every [3]  12/8 41/19 42/20
everybody [5]  22/1 22/3 31/5 31/9 40/2
everyone [3]  15/22 37/11 51/8
everything [2]  11/14 19/17
evidence [2]  10/6 11/24
evidenced [1]  5/5
evident [1]  7/18
evidentiary [2]  42/25 48/22
exactly [2]  43/11 44/20
example [6]  19/20 20/23 22/10 22/11
23/3 26/18
examples [1]  43/17
exceeds [3]  30/6 30/6 47/16
excess [1]  16/3
excessive [1]  12/13
exchange [4]  13/9 13/11 14/7 16/6
exclude [1]  8/20
excluded [2]  18/7 27/10
exclusion [2]  8/16 9/3
exclusions [1]  9/1
execution [1]  14/11
exercised [1]  40/4
exhibits [2]  9/24 10/18
exit [1]  38/9
expect [2]  14/12 36/6
expectancy [2]  23/9 24/10
expense [1]  12/21
expenses [1]  34/5
experienced [1]  41/20
expert [2]  33/10 49/8
expertise [1]  5/4
explain [2]  12/13 31/19
explained [2]  5/14 42/1
expressed [1]  47/11
expressing [1]  42/18
expressly [1]  26/20
extend [1]  7/3
extensive [2]  11/16 12/2
extent [6]  11/4 11/5 14/20 15/16 26/17
45/12
extremely [2]  12/24 36/12

## F

face [2]  35/4 45/11
faced [1]  46/3
facially [1]  12/13
fact [8]  14/6 25/4 25/20 30/4 34/24
35/16 37/4 49/10
factor [1]  24/7
facts [2]  12/1 15/8
factual [2]  43/9 43/17
fair [6]  5/2 12/3 12/5 16/10 40/4 49/6
fairly [1]  15/13

## F

fairness [4]  6/16 9/25 42/6 46/24
faith [1]  9/16
fall [3]  32/25 33/1 33/2
falls [1]  25/19
familiar [3]  33/19 41/18 49/9
far [3]  34/16 44/18 48/13
fashion [1]  50/25
faster [1]  47/6
father [2]  40/23 40/24
favorably [1]  34/1
February [3]  1/17 3/1 52/14
federal [3]  30/23 44/14 44/22
fee [1]  34/22
feel [7]  30/23 33/11 34/15 35/25 39/21
39/22 40/3
fees [11]  6/23 12/7 12/13 12/17 16/3
19/1 19/3 27/19 34/5 50/2 50/6
fence [1]  30/5
field [1]  5/18
fielded [2]  39/16 39/18
FIELDS [3]  2/8 2/12 18/15
fierce [1]  49/16
fifth [1]  22/19
filed [4]  4/21 6/20 10/17 49/3
finality [1]  27/21
finally [2]  33/8 44/4
financial [5]  5/5 11/16 32/19 45/5 45/6
find [4]  5/24 11/13 21/1 49/20
finding [1]  5/25 6/3
fine [2]  20/4 25/15
firm [1]  3/12
first [14]  4/17 5/25 6/3 17/1 17/14 17/18
22/13 24/19 24/24 31/14 36/6 37/19
47/18 49/3
first-tier [1]  31/14
five [10]  3/4 12/19 21/23 23/4 24/1 24/1
24/2 24/3 24/20 38/12
Florida [4]  2/14 17/21 42/19 49/22
FMOs [1]  43/10
focus [1]  38/16
focused [1]  7/7
folks [3]  38/6 38/21 39/22
follow [1]  44/2
foregoing [2]  16/11 52/8
foremost [1]  49/4
foresee [1]  50/23
forever [2]  13/3 15/18
form [4]  11/22 13/18 14/19 50/11
formal [1]  50/11
format [1]  52/11
forward [6]  3/22 4/19 28/5 28/8 43/14
46/12
fought [1]  33/18
found [2]  6/3 23/18
four [1]  11/5
fourth [1]  22/18
frank [1]  19/7
fraud [2]  13/18 15/17
fraudulent [3]  14/10 14/25 48/16
free [3]  38/9 38/11 38/14
Friedman [1]  39/9
frustrating [1]  42/12
full [1]  27/23
fully [5]  5/13 14/4 34/15 37/20 37/22
further [6]  46/7 46/10 48/9
Furthermore [1]  14/3
future [3]  36/9 43/13 50/24

## G

game [1]  48/4
gave [1]  25/20

geared [1]  22/23
gears [1]  33/8
GELLER [2]  2/4 52/12
general [5]  10/20 10/25 11/1 13/8 47/12
generals [2]  10/7 10/16
get [20]  4/3 14/19 16/17 17/10 18/10
18/16 18/19 19/24 21/20 23/9 25/24
26/7 26/19 31/17 32/17 33/23 35/1
43/25 47/18 47/19
gets [2]  4/24 25/18
getting [7]  28/24 46/18 46/20 47/5 47/6
47/7 47/9
gigantic [2]  20/21 28/1
Gilardi [1]  40/25
GILL [17]  3/20 3/24 3/25 4/12 4/14 4/20
10/15 16/16 16/21 35/5 35/20 39/8 41/1
41/2 41/11 43/8 46/7
Gill's [1]  40/24
give [8]  4/16 24/16 24/17 25/1 26/9
29/24 34/12 42/3
given [6]  13/9 19/12 25/9 28/13 40/11
51/1
gives [2]  22/10 25/2
giving [7]  19/8 23/18 24/9 24/9 25/5 38/6
47/3
glasses [1]  19/24 26/19
go [4]  15/19 19/17 33/19 34/8
goal [1]  33/23
going [29]  4/3 4/16 12/12 16/17 16/18
21/9 21/12 21/12 26/8 26/8 27/8 27/19
28/18 30/9 31/20 31/20 32/4 32/21
33/18 34/8 36/9 39/5 40/9 40/19 42/10
43/3 49/22 51/2 51/7
gone [1]  17/2
GONZALEZ [3]  1/22 52/16 52/17
good [8]  3/10 3/13 3/14 3/16 3/25 9/16
44/7 44/8
good-faith [1]  9/16
got [11]  19/17 19/24 21/11 23/7 24/11
26/1 26/3 26/3 26/18 31/15 41/1
governing [1]  6/6
great [1]  50/9
greater [5]  22/17 22/18 22/18 22/19
22/24
grossly [1]  30/22
group [2]  47/12 48/4
guess [6]  4/3 30/15 35/14 36/3 36/23
39/25
gun [1]  11/19
guy [1]  27/11

## H

had [22]  4/5 10/21 11/9 12/10 13/13
14/23 16/7 18/5 21/2 25/14 25/25 27/1
29/22 33/21 37/5 39/14 39/18 44/22
45/2 46/16 47/18 47/19
hand [2]  35/6 35/8
handling [1]  5/14
Hanlon [1]  35/16
happen [1]  41/6
happened [1]  17/2
happening [4]  20/20 27/14 27/15 37/13
hard [5]  18/16 33/18 35/24 36/9 37/2
hard-fought [1]  33/18
hardly [2]  11/18 41/12
harm [2]  45/5 45/6
Hartford [1]  2/10
has [21]  7/13 7/22 12/10 16/23 17/2
17/2 19/2 20/7 25/11 27/7 34/2 39/25
40/6 42/3 42/13 42/16 42/16 42/17 49/9
49/16 50/8
hasn't [1]  25/10
hate [2]  18/4 21/14

have [115]
haven't [1]  26/2
having [2]  33/16 51/8
he [45]  5/1 5/13 5/16 5/17 18/8 18/13
20/10 20/23 20/24 20/25 21/24 21/24
21/25 22/2 22/10 22/12 22/12 22/13 22/20
23/2 23/5 24/6 24/7 24/18 25/10 27/1
27/8 27/8 27/9 27/12 27/13 27/13 32/12
32/13 32/22 40/21 42/13 42/16 42/16
42/17 42/18 43/15 46/19 49/8 49/8 49/9
he's [6]  27/10 27/11 27/11 27/12 42/9
44/1
heads [1]  27/11
Healey [1]  3/7
hear [6]  4/17 4/18 16/19 27/4 29/4 30/10
heard [2]  30/14 46/7
heated [1]  36/17
heavy [1]  22/5
heighten [1]  15/3
heightening [1]  15/20
held [2]  45/24 52/10
helped [2]  33/23 33/24
hence [1]  24/21
her [2]  16/25 37/11
here [28]  3/17 4/4 4/14 4/21 5/11 16/15
18/12 19/7 20/18 20/20 26/5 26/18 27/6
27/15 28/15 30/7 30/19 30/21 30/25
31/4 33/9 37/13 43/25 44/3 44/13 48/13
48/22 49/5
hereby [1]  52/7
Hertzberg [4]  4/25 39/9
hidden [2]  15/7 15/18
higher [4]  13/15 14/25 15/5 32/21
highly [2]  5/4 6/17
him [2]  27/10 42/9
his [19]  5/2 5/3 5/4 5/5 5/10 18/10 19/2
19/21 19/21 20/24 21/24 22/10 37/11
42/4 42/10 42/14 42/24 49/13 49/14
historical [3]  22/20 24/3 25/11
hit [2]  33/14 34/7
hits [1]  39/15
hold [2]  10/7 37/10
holders [2]  17/7 45/21
home [1]  10/2
HON [1]  1/4
honest [1]  14/14
Honor [16]  3/10 3/14 9/14 11/2 16/15
31/25 37/14 39/5 40/6 40/19 42/11 44/7
45/16 46/5 51/10 51/11
honorable [1]  5/1
hoops [1]  31/6
hope [1]  47/2
hoping [1]  11/14
hours [3]  34/9 34/15 36/25
how [10]  9/2 16/22 22/20 23/4 23/21
34/12 35/7 35/22 36/18 37/2
however [4]  6/14 10/2 13/20 44/22
huge [5]  20/21 23/1 30/6 38/7 38/10
hundreds [2]  21/10 42/21

## I

I just [1]  30/22
I'd [4]  4/14 5/23 23/1 46/17
I'll [4]  18/13 19/5 25/24 44/12
I'm [51]  4/14 4/16 4/21 5/11 9/14 9/19
10/23 16/17 17/15 18/3 18/9 18/14 19/6
19/6 20/18 21/14 22/21 25/14 25/14
25/23 27/17 27/18 28/4 28/25 29/1 29/4
29/9 29/9 30/9 30/12 30/18 30/19 30/19
30/20 31/18 31/20 31/20 33/18 34/8
36/1 36/2 36/7 38/20 39/5 40/16 40/19
43/3 43/11 45/12 48/12 50/12
I've [5]  5/1 5/24 30/14 37/1 42/24

## I

identical [3] 41/13 44/21 44/21
identifies [1] 8/25
identify [2] 3/22 39/10
ignore [1] 8/4
ignoring [1] 7/10
imagine [1] 5/19
impact [1] 29/9
imply [1] 7/17
importantly [1] 45/3
impression [1] 20/18
inadequate [2] 6/24 8/12
inadvertently [1] 17/10
incentive [1] 12/8
include [4] 9/19 36/4 50/13 50/13
included [3] 10/2 33/4 39/12
includes [1] 24/12
including [1] 15/25
income [2] 19/20 48/1
incompetent [1] 26/13
inconsistent [1] 35/9
increase [5] 19/13 20/12 31/5 31/7 31/17
increases [1] 31/15
increasing [1] 22/24
incumbent [1] 12/16
incurred [10] 22/3 22/4 22/6 23/4 23/6 23/6 23/13 23/22 24/12 24/15
independent [5] 15/15 27/7 27/10 39/4 49/12
indication [1] 10/5
indifferent [1] 28/9
individual [3] 42/4 49/20 49/24
individualize [1] 29/13
individualized [1] 50/20
individuals [1] 50/19
induce [2] 7/2 7/9
industry [1] 5/19
inequitable [1] 13/2
inferior [1] 36/20
inferiority [1] 36/20
inferred [1] 10/6
information [2] 11/18 43/18
informed [3] 10/4 10/21 26/16
inherent [1] 9/12
injunction [2] 36/10 50/25
injunctive [1] 14/23 17/5 36/5 36/12 36/22 50/22
insidious [1] 14/20
insofar [1] 49/24
instead [1] 7/7 24/6
instruments [1] 11/21
insufficient [1] 8/14
insurance [16] 1/9 3/5 3/7 5/19 6/7 6/10 6/11 10/1 10/3 10/19 10/20 17/23 18/15 20/6 26/25 41/20
integrity [1] 5/4
interest [6] 5/10 7/20 13/15 15/19 30/24 30/25
interests [4] 7/5 7/6 49/1 49/20
invalid [1] 9/2
investment [2] 6/14 36/20
investments [2] 36/20 36/21
involved [5] 15/23 16/20 39/20 46/16 49/25
involving [2] 27/8 27/18
is [142]
isn't [2] 25/5 31/2
issue [26] 18/13 19/5 19/6 35/20 36/17 37/15 38/3 38/22 38/23 39/8 40/22 41/8 42/6 42/22 42/23 42/25 42/25 45/4 45/23 46/1 46/4 46/25 47/23 47/23

issues [9] 17/18 29/15 36/1 37/7 38/25 39/6 40/8 42/3 43/5
it [99]
it's [45] 6/14 11/12 12/7 12/15 14/22 17/18 17/22 18/16 20/8 20/21 20/21 20/21 21/23 22/2 22/5 22/5 23/15 25/6 25/16 27/23 30/22 31/3 31/9 31/12 32/9 32/10 32/16 34/8 35/21 35/23 36/9 38/15 38/21 38/22 40/1 40/4 41/7 41/19 42/25 43/7 43/22 47/22 47/23 49/22 51/4
item [1] 3/4
its [3] 7/15 13/23 40/4
itself [4] 36/22 37/6 43/1 48/19

## J

JAMES [1] 2/12
Jim [1] 3/15
job [6] 11/13 12/7 37/9 45/14 45/14 45/15
JODLOWSKI [2] 2/4 3/11
Jordan [1] 3/15
JORDEN [10] 2/8 2/8 2/12 2/12 3/15 40/18 40/19 40/20 44/4 44/8
judge [9] 1/4 1/4 17/17 23/15 27/15 33/17 41/25 44/17 49/13
Judicate [1] 33/22
Judicial [1] 52/12
jump [1] 31/6
jumped [1] 30/4
jurisdiction [2] 10/4 10/21
jury [4] 15/9 45/4 45/8 48/22
just [34] 11/14 13/14 18/18 19/18 20/10 24/25 25/15 26/7 26/7 27/22 28/6 29/1 29/21 29/21 30/15 30/18 30/22 30/22 31/9 33/6 33/14 34/4 36/2 36/7 39/5 39/11 39/19 41/8 41/9 44/12 45/7 47/1 47/25 48/10
justifications [1] 6/21

## K

keep [1] 26/8
Kimberly [1] 8/24
kind [3] 18/4 18/16 30/23
knew [1] 33/20
know [39] 4/6 10/23 16/20 16/21 19/7 19/8 19/23 22/16 23/2 24/4 25/7 25/10 26/5 26/6 27/16 27/16 27/17 28/11 28/11 28/16 29/5 30/7 30/15 32/3 32/15 33/16 35/3 35/13 35/14 35/23 36/9 37/2 39/2 39/13 40/7 41/10 42/8 42/18 46/23
knowing [1] 27/23
knowledge [2] 49/14 49/14
known [2] 9/17 13/4
knows [3] 29/15 29/16 29/17

## L

language [1] 6/1
larger [1] 45/1
largest [1] 12/11
last [5] 3/17 24/23 30/23 36/16 36/25
late [1] 14/22
latitude [1] 48/13
laundry [1] 17/9
law [3] 13/25 41/25 49/14
lawsuit [6] 13/5 26/5 27/13 27/18 36/12 42/4
lawyers [4] 26/9 26/12 29/22 46/2
learn [1] 14/20
learned [1] 8/22
least [5] 14/24 15/3 15/8 15/18 49/18
leave [2] 13/12 16/17
leaving [1] 16/6

left [3] 17/10 18/13 32/7
legal [4] 5/18 14/7 27/19 43/4
lend [1] 36/22
length [2] 12/2 46/15
less [5] 8/3 19/13 19/14 37/13 38/9
let [5] 9/8 17/10 31/21 40/20 44/4
let's [1] 30/24
Letters [1] 10/1
levels [1] 32/11
liability [17] 8/5 9/6 9/21 12/20 13/4 13/10 16/2 20/7 20/8 20/14 20/15 20/16 20/17 21/11 25/22 30/6 48/18
liable [1] 9/17 9/18 13/22
life [6] 1/9 3/5 3/7 6/10 6/11 41/20
light [3] 14/21 15/1 15/8
like [28] 4/14 5/23 9/3 12/8 16/13 17/14 18/4 18/7 19/17 21/10 23/2 26/4 27/10 28/2 28/4 29/13 30/17 30/23 31/5 32/1 32/6 35/13 36/10 38/8 41/6 43/22 46/17 47/1
likelihood [1] 49/17
likely [1] 12/18
line [3] 12/8 33/24 49/10
liquidity [10] 21/4 38/3 38/16 47/7 47/9 47/13 47/16 47/22 47/23 48/14
LISA [1] 1/22 52/16 52/17
list [2] 17/9 40/25
Listen [1] 19/6
litigate [1] 45/11
litigated [5] 35/7 37/2 45/17 49/16 50/3
litigation [17] 11/6 13/1 13/11 16/23 17/21 17/22 33/16 33/18 34/25 38/17 42/1 42/10 42/13 44/4 47/11 49/15 51/2
little [7] 32/5 33/8 39/23 42/12 43/21 47/6 48/12
live [1] 39/14
lived [1] 33/16
LLP [1] 2/3
loadstar [1] 50/4
loan [1] 5/5
long [12] 3/17 19/2 19/8 19/21 24/17 30/21 31/19 32/8 32/12 32/25 47/18 48/3
Long's [4] 25/23 46/19 48/7 49/8
look [9] 7/22 21/23 29/13 34/13 34/14 34/22 35/16 35/24 36/10
looked [1] 11/9
looking [3] 11/17 11/19 33/9
Los [3] 1/16 1/24 3/1
lose [1] 16/4
loss [1] 14/5
lost [1] 40/10
lot [7] 23/16 27/18 28/5 32/1 35/13 38/7 48/14
lots [1] 28/7
Lucci [2] 18/7 27/6

## M

made [4] 5/8 13/4 42/5 43/15
MADIGAN [16] 3/21 4/1 4/2 4/2 4/5 4/11 17/15 17/16 19/19 22/16 30/11 31/23 43/6 46/6 46/14 47/9
Madigan's [1] 40/23
mail [2] 11/24 39/13
mailing [1] 39/13
maintaining [1] 35/20
make [7] 5/13 12/4 12/8 29/13 44/13 45/24 46/17
makes [1] 35/6
making [1] 12/3
man [2] 5/1 5/2
manner [1] 14/2
many [8] 9/2 23/4 23/21 28/17 28/17

# M

many... [3] 54/18 44/3 45/18
Maryland [2] 10/3 41/9
material [2] 11/24 48/22
matter [1] 52/10
matters [1] 16/22
maturity [2] 5/15 8/5
maximum [1] 24/6
may [11] 12/12 18/9 26/5 26/21 27/20 28/8 28/8 28/9 29/14 40/25 48/17
maybe [2] 24/10 31/10
McCann [1] 33/10
McCann's [1] 43/13
McLaughlin [1] 42/1
me [20] 3/11 3/15 5/8 5/12 5/14 9/8 10/4 10/21 16/14 17/10 23/16 27/17 30/13 35/21 40/10 44/2 48/13 48/23 49/4 49/23
mean [7] 11/6 18/4 25/22 27/5 30/21 48/21 50/20
meaningful [5] 14/8 14/17 14/19 35/18 39/1
means [2] 15/13 26/24
meant [1] 37/5
Meanwhile [1] 16/4
mediator [1] 33/24
mediators [2] 33/21 49/12
meet [2] 5/13 16/9
meeting [1] 5/12
member [3] 5/25 8/7 8/16
member's [1] 7/19
members [29] 6/18 7/11 7/11 7/13 7/17 7/19 7/21 8/11 8/13 9/1 9/4 11/21 11/22 11/23 13/6 14/4 14/7 14/16 14/17 15/13 15/19 15/22 16/4 16/11 24/4 26/20 29/23 29/24 39/18
members' [3] 7/4 7/6 12/21
mentioned [1] 46/14
merits [1] 12/6
met [4] 7/13 7/15 8/9 10/1
methodology [1] 18/22
Miami [1] 2/14
Midland [1] 41/15
might [1] 19/4
million [23] 11/10 12/7 12/17 16/4 20/14 20/14 20/15 20/16 22/20 23/9 23/13 24/7 25/8 31/10 31/12 32/8 33/10 35/17 46/18 46/23 48/5 48/5 48/6
millions [1] 21/10
mind [1] 4/6
mine [1] 40/21
minimize [1] 50/21
Minnesota [1] 44/15
misrepresentation [1] 32/18
missing [1] 48/6
moment [1] 18/18
Monday [2] 1/17 3/1
monetary [4] 14/18 15/24 20/19 20/20
money [6] 24/19 27/18 29/1 29/2 38/6 47/25
Montgomery [1] 44/17
Mooney [3] 35/4 44/16 45/25
more [9] 9/12 29/24 35/12 37/1 38/9 43/12 45/3 46/24 50/11
morning [7] 3/10 3/13 3/14 3/16 3/25 44/7 44/8
most [7] 4/25 7/11 19/14 28/2 28/2 30/17 44/14
Motion [1] 11/6
MR [10] 3/21 4/2 4/11 22/16 25/23 27/6 30/11 40/16 46/14 47/9
Mr. [29] 4/1 4/5 17/15 17/16 18/7 19/2

19/8 19/21 24/17 30/21 31/19 31/23 31/24 32/12 32/25 33/19 39/9 40/10 40/18 40/20 41/23 42/3 44/4 44/8 46/6 46/19 47/18 48/7 49/8
Mr. Hertzberg [1] 39/9
Mr. Jorden [4] 40/18 40/20 44/4 44/8
Mr. Long [9] 19/2 19/8 19/21 24/17 30/21 31/19 32/12 32/25 47/18
Mr. Long's [3] 46/19 48/7 49/8
Mr. Lucci [1] 18/7
Mr. Madigan [7] 4/1 4/5 17/15 17/16 31/23 42/3 46/6
Mr. Madigan's [1] 40/23
Mr. McCann [1] 33/10
Mr. Pintar [2] 31/24 40/10
MS [34] 3/20 3/25 4/12 4/14 10/15 16/16 35/5 35/20 39/8 40/24 41/1 41/2 41/11 43/8
Ms. [2] 16/21 46/7
Ms. Gill [2] 16/21 46/7
much [7] 6/19 19/22 32/21 36/17 37/12 37/13 44/11
multiple [2] 8/18 23/6
multiplied [1] 24/1
multiplier [2] 34/8 50/5
multiply [2] 24/2 24/3
my [33] 4/4 4/20 4/25 5/8 5/12 5/19 5/22 5/25 6/3 8/22 10/2 16/14 17/13 17/17 18/8 18/11 18/19 18/24 19/22 19/24 26/3 26/19 26/24 27/7 28/2 28/23 29/18 39/5 45/7 48/12 48/21 49/5 50/21
myself [1] 26/4

# N

name [3] 4/20 40/23 40/24
named [2] 6/23 15/24
namely [1] 37/6
narrower [1] 44/18
National [1] 41/17
nature [5] 16/23 33/13 36/21 37/6 51/1
nearly [1] 41/13
necessarily [2] 31/1 31/2
need [7] 16/17 17/7 27/25 28/14 29/19 32/19 36/3
needed [1] 47/24
needless [1] 44/1
needs [2] 6/17 42/18
negative [1] 18/5
negotiated [1] 49/12
negotiations [3] 5/9 12/3 36/18
NEGRETE [1] 1/6 3/5
neither [3] 12/5 12/25 16/8
Ness [1] 8/24
net [1] 48/4
never [12] 13/13 13/17 14/21 16/7 22/3 22/22 22/22 24/15 25/18 25/18 26/19 29/17
new [1] 8/13
next [4] 24/16 24/22 25/24 41/8
Nice [1] 44/9
Nicole [1] 8/21
nine [5] 11/9 12/11 33/18 36/25 50/3
Ninth [4] 34/21 35/15 45/24 50/8
Ninth Circuit [3] 1/22 35/15 50/8
no [37] 1/8 1/8 1/22 4/8 6/15 7/21 8/22 8/23 10/4 10/5 10/6 10/21 11/12 14/8 14/10 14/17 15/6 15/13 15/14 18/3 20/1 26/3 26/13 26/14 28/24 29/2 29/12 35/8 36/16 37/10 37/19 39/2 45/5 45/5 47/7 50/23 52/17
non [2] 26/14
non [1] 48/16
non-fraudulent [1] 48/16

none [2] 10/16 13/8
NORTH [4] 1/9 1/23 3/6 3/8
nor [1] 20/5
not [59]
notes [1] 39/5
nothing [6] 13/12 14/18 16/1 16/6 25/20 42/9
notice [14] 8/14 8/15 9/2 26/1 26/1 26/16 39/8 39/9 39/11 39/21 40/1 40/22 40/25 41/1
notification [3] 9/24 10/9 10/19
notifications [1] 5/20
notified [3] 10/8 10/11 10/24
novel [1] 34/25
November [4] 5/21 8/17 8/21 38/21
November 17 [1] 8/21
November 6th [2] 5/21 8/17
now [17] 5/18 18/21 19/5 19/11 19/15 20/18 21/13 22/9 25/17 25/24 26/12 34/4 42/3 42/13 42/17 43/18 44/11
number [19] 6/9 6/13 6/24 7/12 8/14 11/5 12/19 13/14 15/10 17/18 20/21 21/24 23/2 23/10 32/13 39/17 39/17 39/18 45/25
numbers [8] 19/22 19/23 22/9 23/16 25/7 31/8 47/15 47/18
numerosity [1] 8/9

# O

o'clock [1] 51/8
o0o [1] 3/3
object [1] 12/14
objecting [2] 18/21 18/22
objection [8] 4/13 6/20 7/20 17/17 30/13 30/15 30/18 42/12
objections [7] 4/4 4/21 10/17 16/14 35/19 49/3 49/4
objectors [7] 3/18 9/3 35/5 35/13 36/24 40/11 50/14
observations [2] 16/19 44/13
obtained [1] 34/23
obviously [8] 4/4 16/19 28/5 30/13 32/8 44/14 49/21 50/11
occur [1] 36/9
October [2] 5/9 5/16
October 24th [1] 5/16
odd [1] 39/15
off [4] 13/13 16/6 18/19 32/7
offer [4] 6/21 20/4 20/4 25/14
offered [3] 21/17 25/15 25/17
offering [1] 25/15
office [1] 10/3
Oh [1] 42/8
Okay [24] 3/17 4/3 4/10 4/12 9/22 10/15 17/13 18/20 19/20 21/8 21/19 22/9 23/1 23/9 24/24 26/3 27/14 40/17 44/6 46/12 46/23 48/7 48/8 49/2
old [1] 23/17
older [1] 44/11
once [1] 24/10
one [23] 2/9 6/24 7/22 16/24 20/24 22/4 25/16 29/16 29/17 30/22 33/21 35/6 36/16 39/3 41/2 42/5 42/25 45/6 45/22 47/10 47/13 49/10 49/12
ones [1] 44/8
only [9] 7/22 10/18 20/22 23/12 24/5 24/12 30/12 46/20 46/21
oOo [1] 51/14
open [1] 24/23
Operating [1] 5/22
operator [1] 39/14
opportunity [4] 4/16 8/3 9/5 16/15 39/24 40/3 40/12 40/14 48/24
opposed [1] 37/6

## O

opposition [1] 4/22
opt [8] 8/22 9/5 25/25 25/25 26/6 39/24 40/3 40/12
opt-out [2] 8/22 26/6
oranges [2] 23/8 23/8
order [2] 50/12 50/15
orders [1] 15/18
original [2] 26/16 40/24
other [37] 7/7 9/3 11/11 11/24 14/9 15/22 16/2 17/3 17/9 17/25 18/15 24/22 25/4 26/25 29/11 29/14 33/14 34/2 34/17 35/7 36/14 36/21 37/1 39/3 39/4 39/6 40/6 40/8 40/20 42/13 42/15 43/17 45/22 46/25 49/11 49/12 49/25
others [1] 31/11
otherwise [3] 12/15 47/6 51/7
ought [5] 4/17 16/25 30/15
our [7] 30/5 33/9 34/13 36/1 36/19 38/2 42/17
out [20] 8/22 9/5 11/13 14/10 18/13 22/20 23/18 25/7 25/25 26/1 26/6 31/14 35/5 39/24 40/3 40/12 43/24 47/4 48/12 48/15
outside [1] 27/12
over [13] 5/3 8/3 10/4 10/21 20/2 21/23 23/19 24/5 24/14 26/4 33/11 36/25 50/3
overall [1] 39/11
overbroad [3] 19/20 12/19 12/24
overcome [1] 46/1
overlooked [1] 11/25
overly [1] 49/21
overrule [1] 49/2
oversight [1] 6/15
overstated [2] 23/14 30/22
overview [1] 50/21
overwhelmed [1] 5/21
own [1] 37/11
owner [1] 40/23

## P

pages [1] 11/10
paid [4] 19/14 20/12 46/21 47/19
paper [3] 16/17 17/10 19/21
papers [2] 42/5 42/17
paragraph [3] 26/18 26/19 39/10
parents [3] 18/24 26/3 27/7
parents' [1] 19/22
part [5] 7/12 14/1 14/1 18/24 43/16
participating [1] 39/3
particular [5] 18/10 18/18 39/6 42/12 48/17
particularly [5] 12/4 29/19 29/20 30/4 31/3
parties [7] 9/16 11/11 33/15 33/24 42/13 49/16 50/13
party [8] 5/8 9/17 9/18 27/11 27/11 27/12 27/13 31/19
passed [1] 28/3
passive [1] 35/7
passively [1] 11/15
past [7] 23/4 23/7 23/16 23/19 24/5 24/14 25/12
pause [1] 17/12
pay [3] 29/25 31/14 46/24
pay-out [1] 31/14
paying [1] 21/2
payments [2] 20/2 37/21
peace [1] 28/20
penalties [6] 22/6 23/1 23/4 23/6 24/4 25/9
penalty [19] 21/22 22/1 22/3 22/4 22/9

22/13 22/23 23/6 23/13 23/22 24/13 24/13 24/15 24/21 24/22 48/6 38/9 38/11 38/14 38/22
penalty-free [2] 38/11 38/14
pending [3] 4/13 17/21 17/22
Pennsylvania [1] 41/16
people [21] 9/9 20/4 20/10 22/3 22/4 22/7 23/5 23/5 23/21 24/12 24/13 24/14 25/20 26/4 28/3 29/14 38/7 46/16 46/18 46/19 46/25
percent [45] 19/9 19/25 20/1 20/1 20/1 20/3 20/4 20/13 20/14 20/15 20/16 20/22 21/13 21/22 21/23 22/2 23/2 23/3 23/5 23/10 23/12 23/12 24/7 24/10 24/11 24/11 24/25 25/15 25/13 25/20 32/13 32/16 32/16 32/20 34/21 34/22 38/5 38/12 47/1 47/2 47/3 47/14 47/15 47/17 50/7
percentage [2] 34/20 50/6
percentages [1] 8/6
perfectly [1] 18/13
performed [1] 11/16
perhaps [3] 4/17 14/23 45/3
period [3] 26/4 26/6 38/20
permitting [1] 16/14
person [3] 29/8 41/10 49/24
perspective [3] 5/25 38/3 39/21
pertains [1] 42/4
pieces [1] 39/13
PINTAR [5] 2/3 3/11 31/24 40/10 40/16
pitfalls [1] 15/4
place [1] 20/24
plaintiff [2] 7/7 11/15
plaintiffs [16] 1/7 2/3 3/12 4/18 15/24 26/20 37/3 42/14 45/11 45/13 45/14 45/17 45/21 46/3 50/3 50/10
plaintiffs' [22] 6/25 7/3 7/13 7/14 8/1 8/12 11/7 11/13 11/20 11/25 12/6 12/10 14/15 16/8 26/9 26/12 27/23 27/24 29/22 39/16 43/23 46/1
please [2] 3/9 51/6
plus [2] 25/19 27/22
pocket [2] 25/21 47/2
point [16] 11/5 19/18 21/13 24/16 25/19 25/24 26/8 27/25 30/23 35/5 36/16 40/3 45/22 47/13 47/15 47/21
points [8] 32/1 32/3 32/4 33/14 34/7 42/5 46/11 48/15
policies [4] 18/25 28/3 41/2 42/21
policy [2] 6/12 45/21
poor [1] 26/10
population [1] 21/25
portion [1] 8/8
position [8] 4/7 4/10 4/13 9/9 18/14 19/21 33/16 40/12
possible [2] 42/20 49/7
possibly [1] 24/6
post [6] 7/6 7/10 9/6 9/17 35/20 43/6
post-sale [4] 7/6 7/10 9/6 9/17
post-sales [2] 35/20 43/6
potentially [1] 13/7
practically [1] 11/15
practices [5] 7/1 7/8 13/22 15/2 35/25
practicing [1] 13/18
pre [1] 21/23
pre-enhancement [1] 21/23
precise [1] 36/13
precluded [1] 42/23
precludes [1] 26/22
preclusion [1] 18/9
predatory [5] 7/6 15/2 15/21 35/20 43/6
predicate [6] 18/8 26/24 29/1 42/23 43/9 43/17

prejudices [1] 29/11
preliminary [3] 39/14 40/2 40/5
premium [1] 18/25
premiums [4] 19/14 23/23 23/24 47/19
prepare [1] 12/11
prepared [3] 17/4 29/10 50/12
present [6] 19/19 23/19 24/19 25/2 25/3 47/25
presenting [1] 30/19
presents [1] 7/20
preserve [2] 4/23 48/17
PRESIDING [1] 1/4
presume [1] 4/1
presumptively [1] 12/3
pretty [1] 19/22
prevail [1] 37/3
prevailed [1] 45/1
prevailing [1] 49/17
primarily [1] 18/23
primary [1] 38/16
prior [2] 5/16 13/1
probably [8] 26/2 26/16 26/17 29/8 36/7 36/24 37/1 37/12
problem [6] 20/4 21/2 28/21 28/23 28/24 28/25
proceed [2] 42/10 50/15
proceeding [1] 26/22
proceedings [5] 1/15 17/12 50/14 51/12 52/10
process [8] 15/11 15/14 18/7 32/17 33/2 37/23 43/2 46/17
produce [1] 37/12
produced [2] 11/10 11/17
product [5] 8/9 8/10 12/2 22/23 24/23
products [6] 7/9 8/11 14/11 15/4 28/18 48/15
profound [1] 18/23
program [3] 22/8 39/11 46/20
programs [1] 5/5
projected [1] 43/14
promote [1] 13/22
properly [1] 36/1
proposed [12] 4/22 6/2 6/17 6/22 12/2 13/2 13/10 13/20 14/14 15/16 15/23 16/11
prosecuted [1] 35/10
protect [4] 5/10 13/17 22/7 49/1
protection [2] 10/8 29/22
protects [1] 13/8
prove [1] 44/23
provide [7] 13/16 15/11 20/19 31/16 38/4 38/24 48/24
provided [13] 7/24 9/24 10/18 11/13 14/23 18/23 23/20 25/11 26/1 26/13 29/22 30/21 44/2
provides [5] 8/12 14/17 19/21 20/19 30/24
providing [2] 8/6 38/15
proving [1] 46/3
provisions [4] 5/14 15/14 38/14 48/24
proximate [1] 7/10
public [6] 5/2 13/15 13/19 15/3 15/19 15/20
punching [2] 43/22 48/20
purchase [2] 7/2 7/9
purported [1] 37/16
purports [1] 49/23
purpose [5] 5/12 8/10 13/15 14/25 15/5
purposes [3] 16/25 32/14 48/16
pursuant [1] 52/7
pursued [1] 12/25
put [2] 19/2 46/19

**Q**

questionable [1] 49/18
questioning [1] 18/17
questions [3] 37/3 39/19 40/7
quite [1] 41/22

**R**

raise [1] 42/6
raised [5] 17/18 32/3 35/20 39/7 39/8
23/16
range [1] 49/7
rate [1] 22/24
rates [2] 34/16 34/17
rather [1] 49/20
re [1] 29/19
re-think [1] 29/19
reach [3] 32/2 32/2 45/8
reached [1] 34/24
read [1] 27/16
real [2] 34/12 35/11
reality [1] 35/14
really [32] 17/17 18/5 18/5 18/12 19/7
23/15 25/10 25/23 28/10 28/14 29/19
29/21 29/23 30/2 30/7 30/12 30/19
31/12 33/17 33/23 34/6 36/21 38/22
39/23 40/1 42/23 42/24 43/17 48/20
49/4 49/16 50/22
reason [2] 36/7 37/25
reasonable [8] 12/3 12/5 16/10 40/4
49/6 50/2 50/4 50/5
reasons [3] 16/11 28/7 31/19
recall [1] 43/13
receive [10] 7/21 11/15 14/17 15/1
15/24 16/3 21/10 37/23 39/9 40/3
received [11] 5/20 8/15 8/20 8/25 9/1
9/3 24/4 31/4 39/14 39/15 40/14
receives [1] 20/25
receiving [4] 13/10 20/20 25/2 37/21
recess [1] 51/7
recognized [2] 35/10 35/16
recollection [1] 45/7
record [3] 5/6 10/24 43/25
recorded [1] 8/19
recovery [2] 8/3 50/7
refer [1] 7/25
referred [2] 11/18 43/8
referring [2] 35/22 36/2
reflects [1] 10/24
refresh [1] 45/7
regard [4] 8/4 21/22 28/18 40/11
regarded [1] 5/4
regarding [8] 4/13 17/3 18/6 19/8 25/13
26/15 29/9 47/11
regardless [1] 15/15
registered [1] 6/15
regulate [3] 41/9 41/11 41/12
regulated [2] 6/5 6/6
regulations [1] 52/11
regulatory [1] 6/15
reject [1] 15/6
rejected [1] 16/12
related [3] 1/8 3/6 16/2
release [35] 9/7 9/20 12/19 12/23 13/8
17/19 20/19 25/25 26/2 26/15 26/17
26/17 26/21 26/23 27/25 28/1 28/14
28/22 29/14 29/21 29/25 30/2 30/3
30/20 40/7 41/13 41/17 41/19 42/4
42/19 43/9 48/23 49/21 49/23 49/23
released [1] 16/1
releasees [1] 26/23
releases [3] 13/3 18/2 41/14

releasing [1] 13/10
relief [30] 6/17 6/18 6/19 7/21 8/32 14/8
14/17 14/18 14/18 14/23 17/5 20/14
20/15 20/15 20/18 20/19 20/21 31/1
31/2 31/2 33/1 35/12 35/13 36/5 36/13
36/22 37/20 37/25 38/1 50/22
relieved [2] 20/6 30/6
remain [2] 8/15 9/4
remedy [2] 30/25 31/1
remind [1] 48/25
renewing [1] 30/14
report [2] 19/3 48/7
reported [1] 52/9
Reporter [1] 52/17
REPORTER'S [1] 1/15
represent [1] 18/15
representation [3] 6/24 8/12 26/13
representative [3] 28/4 28/4 41/3
representatives [1] 18/18
representatives' [1] 6/23
represented [2] 30/3 50/8
representing [1] 18/18
represents [1] 18/8
request [2] 8/16 40/11
requesting [1] 9/4
requests [1] 9/3
require [1] 13/23
required [1] 5/23
requirement [3] 7/12 7/15 10/9
requirements [2] 8/9 9/25
rescission [1] 9/19
resolve [1] 33/25
resolved [1] 41/5
respect [8] 37/24 38/2 38/11 38/18
43/15 45/17 45/22 49/13
respond [3] 31/18 43/22 46/9
response [1] 5/22
responsibility [2] 10/8 12/1 25/17
responsible [1] 17/25
result [7] 14/5 21/1 33/9 34/23 35/18
37/12 45/8
resulting [2] 12/4 15/17
retired [1] 19/6
review [3] 11/5 15/11 34/10
reviewer [1] 15/15
revise [1] 19/3
rewrite [1] 49/5
RICO [11] 18/8 18/11 26/25 27/2 28/23
29/11 34/25 42/22 42/25 44/22 46/4
right [15] 8/15 9/10 17/20 18/1 21/7
22/15 22/21 27/3 27/5 29/17 29/18
37/14 40/9 43/5 43/18
rights [3] 4/23 14/7 16/5
risk [11] 12/11 34/24 35/1 35/4 35/8
35/11 40/20 44/4 44/13 45/23 46/2
risks [1] 33/20
risky [1] 12/9
Rivera [1] 45/24
road [2] 28/2 29/15
ROBBINS [2] 2/3 3/11
Robert [1] 33/22
Robin [2] 3/24 4/20
Room [1] 1/23
RUDMAN [1] 3/8
Rule [2] 7/15 51/3
Rules [1] 30/24
run [4] 17/10 25/7 31/8 48/3
Rust [1] 8/25

**S**

S.E [1] 2/13
Sadly [1] 5/17
safeguard [1] 7/5

safeguards [1] 13/16
said [11] 16/24 17/7 20/8 20/10 21/10
21/25 27/17 30/5 30/18 40/21 40/14
sale [4] 7/6 7/10 9/6 9/17
sales [7] 7/1 7/8 14/10 28/25 35/20
35/24 43/6
same [6] 27/17 28/13 31/14 34/17 37/23
42/18
San [2] 2/5 33/23
satisfied [1] 28/8
saw [1] 10/18
say [21] 18/4 18/18 19/2 21/14 24/8
27/15 27/16 27/20 30/8 30/17 30/22
30/24 31/1 31/10 34/13 44/1 46/10
47/19 47/24 48/5 49/21
saying [9] 9/11 9/15 9/20 10/23 25/14
25/15 29/1 38/8 42/14
says [3] 20/23 22/2 22/10
schemes [2] 14/10 14/25
scope [6] 17/19 18/21 25/24 27/25
29/20 29/21
scrutinize [3] 6/17 10/9 12/16
second [7] 2/13 21/13 22/16 35/14
39/24 40/12 40/13
secondly [1] 17/4
seconds [1] 16/18
Section [2] 30/23 52/7
security [1] 6/15
see [12] 7/23 10/12 11/2 18/7 18/12
25/13 27/15 27/22 27/22 31/4 39/6 44/9
seek [2] 14/7 36/4
seem [1] 35/5
seems [1] 44/2
sees [1] 14/21
selling [1] 49/25
senate [1] 5/6
senior [2] 7/2 48/17
seniors [1] 7/9
sense [3] 25/6 25/6 25/9
sent [3] 11/23 30/13 41/1
sentiments [1] 42/2
separate [1] 6/21
September [1] 38/20
serious [5] 34/24 35/4 37/3 46/2 46/4
serve [5] 8/10 13/15 13/21 15/3 15/5
served [2] 14/24 15/20
service [2] 5/2 41/3
settlement [66]
settlements [5] 34/2 34/18 49/9 49/10
49/11
seven [2] 6/21 15/10
seventh [1] 16/5
several [2] 16/24 32/15
share [1] 5/23
she [3] 8/24 35/6 35/20
she's [2] 35/22 36/2
shed [1] 15/8
shield [2] 13/10 13/21
shift [1] 33/8
shined [1] 15/1
shooter [1] 11/20
should [12] 10/8 13/16 13/17 15/6 16/12
17/1 17/4 21/9 24/18 37/17 40/13 50/18
shouldn't [2] 12/10 26/10
shows [1] 46/19
side [1] 30/5
significant [1] 47/16
similar [3] 41/13 41/19 41/22
simple [1] 19/18
simplest [1] 23/17
simply [4] 7/16 11/8 24/25 27/1
since [3] 16/21 18/14 36/24
single [16] 6/4 6/5 6/9 6/13 6/18 7/23 8/2

## S

single... [9] 8/1 11/24 10/22 17/6 21/15 37/18 38/18 41/10 41/11
single-tier [13] 6/4 6/5 6/9 6/13 6/18 7/23 8/2 8/11 10/4 10/22 17/6 38/18 41/10
sit [1] 23/8
site [1] 39/15
situation [4] 9/10 19/12 42/20 50/18
six [1] 13/14
size [2] 23/24 23/25
skill [1] 50/9
sleeping [3] 45/13 45/14 45/15
slope [1] 37/8
Small [1] 5/3
smart [1] 45/19
smoking [1] 11/19
snare [1] 8/10
SNYDER [1] 1/4
so [49] 4/19 5/19 6/15 11/12 12/4 15/5 15/12 16/17 16/21 18/11 20/9 23/1 26/6 26/24 27/14 30/1 32/4 32/21 33/4 33/6 33/20 34/13 34/13 34/15 34/25 35/23 36/13 36/14 38/13 38/15 38/21 38/25 39/16 39/21 40/6 40/21 42/21 43/6 43/9 43/16 44/12 45/10 46/2 46/18 47/5 47/22 48/12 48/25 51/6
sold [4] 17/24 27/7 27/12 27/13
some [18] 9/12 16/17 16/19 16/21 17/22 22/4 23/24 27/9 27/21 32/4 35/19 39/15 40/3 40/8 42/3 48/13 49/4 49/11
somebody [4] 24/25 25/5 27/15 46/14
somebody's [1] 18/17
somehow [2] 29/10 35/21
someone [5] 17/1 17/4 45/13 46/15 49/25
something [6] 9/12 25/16 26/10 30/13 43/12 47/23
somewhere [2] 40/10 48/5
sophisticated [1] 33/24
sorry [5] 17/15 36/2 38/21 40/16 41/7
sort [2] 30/9 39/25
sought [1] 7/5
sound [2] 12/8 35/6
Southern [1] 41/18
speak [9] 4/14 16/15 17/9 17/14 17/16 31/20 31/21 39/19 48/13
special [3] 8/15 9/2 41/1
specific [4] 35/19 42/3 43/12 45/3
specifically [1] 44/14
speculating [1] 36/8
spending [1] 27/19
spent [3] 34/12 34/14 36/25
spit [1] 43/24
spoken [1] 42/24
Spring [1] 1/23
squarely [1] 34/6
stage [3] 11/5 34/23 37/21
stake [2] 12/17 12/17
stand [2] 16/4 30/16
standpoint [1] 46/3
stands [2] 15/23 16/3
start [3] 19/5 32/6 40/21
state [11] 2/9 3/9 6/7 6/7 10/1 10/3 10/7 10/12 10/16 10/19 10/20
statement [1] 29/10
STATES [4] 1/1 10/25 52/8 52/12
states' [1] 10/25
stating [2] 7/16 12/1
statistics [2] 43/24 46/19
status [1] 24/21
statute [3] 44/21 44/22 45/3

statutory [1] 13/7
staying [1] 24/20
steep [1] 37/10
stenographically [1] 52/9
STEPHEN [1] 2/8
Steve [5] 3/11 3/14 4/2 19/19 40/19
STEVEN [2] 2/4
sticking [1] 47/1
still [4] 4/10 18/24 19/13 22/8
stop [1] 9/8
stream [3] 19/20 20/2 37/21
streams [1] 48/1
Street [3] 1/23 2/9 2/13
strengths [1] 33/17
strictly [1] 6/14
strings [1] 24/19
strip [1] 14/7
stripping [1] 13/6
strong [1] 30/4
stronger [2] 44/24 44/25
struck [1] 30/4
structure [1] 15/12
stuck [1] 25/21
subcommittees [1] 5/7
subject [3] 13/1 36/11 50/24
subjecting [1] 46/22
submitted [2] 34/10 50/12
subpoenaed [1] 43/11
substantial [2] 8/8 44/3
substantive [1] 46/24
successful [1] 35/3
succumb [1] 26/9
such [2] 13/22 30/1
sudden [1] 27/18
sued [1] 28/18
suffer [1] 45/5
suffered [3] 7/21 14/4 45/6
suggest [1] 8/6
suggesting [2] 45/12 45/13
suit [1] 19/10
suitability [2] 32/18 37/7
Suite [2] 2/5 2/9 2/13
summary [2] 34/11 34/22
support [7] 4/14 4/21 7/16 7/17 10/2 10/6 11/19
supported [1] 43/8
sure [5] 5/13 8/15 21/21 22/21 29/9 31/18 43/11
surprise [2] 5/19 11/12
surrender [15] 8/2 19/9 19/10 19/13 19/15 20/3 20/13 21/6 22/11 22/25 25/19 38/5 38/19 38/22 47/5
surrendered [2] 37/22 46/16
sweetest [1] 21/12

## T

tables [1] 7/3
tactics [5] 7/6 15/7 15/21 35/21 35/21
tailor [3] 7/25 36/19 38/25
take [7] 19/15 20/10 20/10 22/12 23/5 26/7 35/24
taken [3] 12/10 23/20 24/18
takes [4] 23/2 24/6 26/6 32/14
taking [12] 19/11 20/11 23/11 24/19 24/20 24/21 33/3 35/8 47/3 47/4 47/17 47/17
talk [3] 20/25 21/8 21/9
talking [13] 21/15 21/16 23/1 25/7 25/9 26/18 31/9 36/8 36/11 41/11 44/1 46/15 47/22
task [2] 34/10 49/5
task-based [1] 34/10
tax [1] 48/18

Ted [1] 3/10
teeth [1] 54/1
telephone [1] 39/14
tell [2] 21/3 39/16
ten [5] 19/16 19/17 20/2 24/22 25/1
ten-year [1] 25/1
terminations [1] 32/24
terms [10] 8/4 9/15 29/1 29/24 30/4 30/25 33/3 35/12 39/24 46/3
territory [1] 6/8
testimony [1] 11/24
than [19] 13/13 15/22 16/6 19/14 19/14 22/17 22/18 22/19 22/19 22/24 29/25 32/22 37/1 37/13 44/18 44/24 47/6 49/20 50/1
thank [17] 4/20 11/2 11/3 16/13 16/15 16/16 31/22 31/23 31/25 40/17 40/19 46/5 46/6 48/12 49/1 51/10 51/11
that [252]
that's [37] 4/10 5/11 18/11 19/12 20/22 20/23 22/2 22/3 22/20 22/21 24/7 25/15 27/3 27/20 29/2 29/11 30/7 30/20 32/7 33/6 36/8 36/13 36/15 37/14 38/4 38/7 38/10 38/12 38/13 40/15 40/21 41/5 42/23 47/23 47/24 48/6 48/22
their [39] 7/7 7/16 9/4 9/6 10/5 11/25 12/7 13/6 14/1 14/1 14/2 14/11 14/12 15/13 16/4 16/9 19/17 19/18 20/7 20/9 21/11 22/7 23/8 23/9 24/13 25/21 31/5 31/12 31/15 34/14 37/4 37/9 38/6 45/20 47/14 48/18 50/8 50/21
them [14] 13/24 16/6 21/12 23/11 23/20 24/16 24/17 30/10 31/11 31/20 31/21 38/24 46/4 49/1
themselves [2] 11/22 31/21
then [21] 4/18 5/21 8/10 9/17 14/24 15/3 18/11 18/25 21/9 23/23 23/25 24/22 32/13 32/17 33/8 33/22 34/1 34/20 37/11 37/22 50/14
THEODORE [1] 2/3
theory [1] 37/4
there [36] 8/22 9/8 14/10 15/14 18/11 23/3 23/8 24/1 26/2 26/4 26/16 27/21 28/7 28/18 32/23 32/24 34/24 35/1 35/8 36/16 37/2 37/5 37/19 37/24 38/22 39/6 39/23 42/9 43/8 44/2 44/12 45/2 45/23 50/11 50/19 50/23
there's [17] 6/15 9/12 9/16 14/10 17/6 17/8 24/1 26/13 37/25 37/25 38/3 39/2 46/21 47/16 48/4 48/14 48/15
thereafter [1] 4/18
Therefore [2] 10/5 14/12
Thereupon [1] 51/12
these [18] 17/3 22/6 25/20 28/2 28/3 35/25 36/19 40/11 41/20 45/17 46/1 47/11 48/16 49/9 49/10 49/15 50/14 51/2
they [80]
they're [12] 22/7 28/1 28/19 39/4 45/18 45/18 46/20 46/22 47/3 47/3 47/3 50/20
they've [2] 37/22 46/20
thing [7] 23/15 25/16 27/17 27/19 29/13 31/6 47/24
things [6] 16/25 17/9 41/6 46/24 51/3 51/3
think [57]
thinking [1] 29/18
third [2] 11/11 22/17
this [86]
those [26] 7/5 9/9 13/5 15/25 19/23 24/13 28/17 32/19 33/4 34/16 35/21 35/22 37/20 37/24 38/1 38/4 38/18 38/21 38/25 39/1 41/19 42/2 43/15

# T

those... [3] 46/17 48/19 49/1
though [3] 26/15 29/18 46/18
thought [1] 19/23
thousands [1] 42/21
three [8] 5/5 6/3 6/13 8/14 11/9 22/4 44/15 45/1
through [6] 31/6 33/19 34/8 35/2 38/19 39/5
throw [1] 46/25
tier [26] 6/4 6/4 6/5 6/6 6/9 6/11 6/13 6/18 6/19 7/23 7/23 8/2 8/8 8/10 8/11 10/4 10/22 17/6 17/6 21/15 31/14 37/18 37/19 38/2 38/18 41/10
tiered [1] 21/18
tiers [1] 21/16
time [6] 8/3 28/13 34/13 34/14 38/20 47/25
timely [2] 6/20 8/25
times [1] 35/13
timing [4] 25/6 25/6 25/8 47/5
Title [1] 52/8
today [8] 4/7 4/15 4/21 5/11 16/15 30/14 48/21 49/24
Todd [2] 9/23 10/13
too [7] 14/22 29/15 32/4 41/11 41/23 43/24 47/8
took [7] 21/24 22/1 24/25 24/25 47/14 47/14 47/20
tool [1] 13/17
top [1] 38/14
total [1] 48/4
touch [1] 34/4
toward [2] 17/18 22/23
transcript [3] 1/15 52/9 52/11
treated [1] 31/14
tremendous [5] 35/1 35/17 38/15 38/24 39/11
tremendously [1] 39/22
trial [11] 12/11 12/12 15/2 15/8 15/19 17/2 33/20 35/2 35/3 35/8 35/11
trick [1] 8/13
tried [6] 15/8 34/11 37/9 38/25 44/15 45/1
trier [1] 14/6
true [3] 13/1 41/1 52/8
truly [1] 38/3
try [5] 32/2 37/8 38/4 43/3 43/25
trying [1] 28/19
turns [1] 6/25
two [22] 3/18 6/4 6/6 6/9 6/11 6/19 7/12 7/23 8/8 8/10 16/18 17/6 18/25 21/16 21/18 22/4 27/11 27/13 32/11 33/21 37/19 38/2
two-tier [10] 6/4 6/6 6/11 6/19 7/23 8/8 8/10 17/6 37/19 38/2
two-tiered [1] 21/18
type [1] 8/7
types [1] 48/16

# U

U.S [4] 1/23 11/23 16/5 52/17
uncertain [1] 43/7
unclear [2] 30/12 40/16
under [21] 5/22 7/15 9/25 10/9 13/2 15/7 15/16 15/25 18/10 20/18 33/1 33/1 33/2 44/21 46/14 46/19 46/23 46/25 50/4 50/5 51/3
understand [7] 18/3 24/18 27/5 31/13 36/23 47/2 50/19
understanding [3] 4/5 16/22 50/22
unfortunate [1] 41/6
Unfortunately [1] 28/2
unheard [1] 33/23
UNITED [4] 1/1 1/22 52/8 52/12
United States [1] 10/25
unjust [1] 15/1
unless [1] 40/6
unlikely [2] 22/5 22/5
unrelated [1] 42/15
unsuccessful [1] 33/22
unsuspecting [1] 13/18
until [2] 8/20 14/21
up [20] 22/13 23/18 24/3 24/8 24/9 24/9 25/10 27/14 27/15 29/24 30/1 30/10 30/11 31/11 32/4 40/1 41/9 42/20 46/4 46/21
upon [1] 5/15
us [4] 33/16 33/23 43/25 51/9
use [3] 7/8 14/25 27/1
used [7] 7/1 11/21 13/17 19/20 19/23 26/21 30/21
usual [1] 14/13
utilization [5] 32/13 32/14 32/16 32/17 32/19

# V

valuable [2] 13/7 47/12
valuation [6] 18/22 19/6 30/20 32/7 32/10 33/5
value [41] 13/12 19/1 19/9 19/10 19/13 19/15 19/24 20/3 20/5 20/8 20/13 21/5 21/6 22/7 22/11 22/12 22/24 22/25 24/17 24/19 25/2 25/3 25/5 25/6 25/14 25/17 25/19 31/5 31/8 31/16 31/16 32/15 32/21 38/5 43/14 43/20 44/2 47/4 47/5 47/25 47/25
valued [2] 26/10 26/11
values [1] 19/19
valuing [1] 26/10
various [2] 32/18 48/1
vehicle [1] 6/14
versus [2] 47/15 47/20
very [39] 5/1 12/9 21/14 27/20 28/14 32/9 32/14 33/7 33/15 33/18 33/19 33/24 34/1 34/11 34/25 35/3 35/6 35/9 35/9 35/11 35/18 35/23 35/24 36/9 36/15 36/17 37/7 39/1 39/23 42/3 44/3 45/18 45/18 45/25 46/4 49/15 49/16 50/25
via [1] 11/23
Vida [1] 3/5
view [1] 42/18
viewpoint [2] 30/3 32/9
violation [1] 45/2
violations [1] 50/24
VITA [1] 1/6

# W

want [22] 3/22 4/19 9/5 9/9 17/9 17/15 27/20 29/3 29/4 29/12 29/24 32/3 34/6 35/19 40/7 40/21 45/20 46/7 46/9 46/9 48/17 48/25
wanted [2] 39/19 41/8
wants [2] 29/25 51/6
warrant [1] 6/21
was [67]
wasn't [1] 8/20
water [1] 21/20
way [7] 23/17 26/4 27/16 29/20 35/10 35/25 50/23
we [72]
we'll [1] 27/4
we're [17] 3/17 16/18 21/4 23/1 23/11 25/7 26/17 30/2 31/9 32/4 33/15 38/7
44/11 44/12 45/10 47/22 51/7
we've [7] 18/5 21/4 27/1 33/11 38/25 41/19 50/13
weaknesses [1] 33/17
Web [1] 39/15
weeks [3] 33/20 44/15 45/1
weigh [1] 4/8
weighted [2] 23/23 23/25
well [26] 3/17 10/11 11/24 19/4 23/12 24/9 27/3 27/20 27/23 28/7 28/16 28/21 30/17 31/18 33/8 34/14 34/21 36/3 36/15 36/23 43/3 45/20 46/1 47/7 49/17 50/7
went [2] 19/16 35/3
were [41] 7/4 8/19 9/3 9/11 9/15 9/24 10/1 10/1 10/8 10/11 10/14 11/12 12/25 15/1 19/15 21/3 23/18 26/15 32/23 32/24 33/4 33/15 33/20 34/5 34/17 34/25 35/6 35/9 36/1 36/6 37/3 39/1 39/6 39/6 40/24 43/10 44/20 45/13 46/16 47/12 50/24
weren't [2] 45/14 45/15
West [2] 2/4 33/23
WESTERN [2] 1/3 41/17
what [63]
what's [6] 20/20 27/21 37/13 42/11 43/7 48/6
whatever [4] 19/21 22/5 24/15 31/12
when [15] 5/8 5/19 10/20 12/4 17/2 18/16 23/2 27/17 29/23 30/1 32/17 35/3 35/16 41/5 46/14
where [15] 8/11 12/23 19/12 25/13 25/19 26/8 27/9 30/15 32/6 32/23 33/6 33/15 47/24 48/1 50/18
whether [6] 18/17 24/12 37/3 42/22 45/2 49/6
which [33] 7/10 7/24 8/19 12/15 13/23 18/24 19/13 25/22 29/2 31/8 31/10 32/25 33/12 33/19 34/5 34/11 34/23 35/8 36/16 36/19 37/12 38/5 38/23 39/15 39/25 44/16 44/20 44/21 47/10 48/19 50/12 50/24 50/25
while [1] 6/6
who [26] 5/2 7/21 9/1 9/4 9/9 10/7 17/14 17/24 17/24 18/19 19/16 20/23 22/3 22/4 23/5 24/13 24/15 24/25 28/3 29/15 33/23 33/24 39/14 39/18 40/23 43/10
who's [4] 18/17 27/6 30/21 49/24
whole [8] 18/7 19/10 19/10 21/2 31/6 42/7 43/24 47/24
whom [3] 13/9 49/12 49/13
why [21] 5/11 8/15 17/8 18/13 21/9 27/6 27/8 27/8 27/22 27/24 31/4 31/6 31/13 31/16 33/14 36/3 36/4 37/2 42/1 46/12 47/11
wide [1] 37/5
will [14] 13/12 14/13 17/8 17/9 21/3 29/2 31/18 31/19 32/2 32/2 39/16 44/4 50/11 50/15
willful [1] 15/17
Willis [2] 9/23 10/13
wink [1] 26/14
winning [2] 12/5 12/9
wish [4] 23/9 24/9 24/9 29/21
wishes [1] 17/16
withdraw [2] 24/20 24/24
withdrawal [1] 38/14
withdrawals [1] 38/12
withdrawing [1] 30/13
withdrawn [1] 4/5
within [2] 6/7 49/7
without [3] 7/16 8/6 43/12

## W

words [3] 14/9 24/22 25/4
work [4] 5/18 34/9 35/25 50/15
worked [1] 37/1
working [2] 23/17 36/25
works [1] 27/24
worse [2] 13/12 16/6
worth [1] 31/11
would [57]
wouldn't [2] 26/5 48/24
wrap [2] 30/10 30/11
write [1] 42/19
writing [2] 42/16 42/17
wrong [3] 11/17 11/18 42/9
wrongdoing [1] 13/25
www.lisamariecsr.com [1] 1/25

## Y

Yeah [7] 18/3 21/17 24/2 29/7 29/12 41/24 46/11
year [13] 22/13 22/16 22/17 22/18 22/18 22/19 22/19 22/20 25/1 25/18 26/4 45/8 47/18
years [28] 5/3 11/9 12/11 19/16 19/17 20/2 21/23 23/4 23/19 24/1 24/5 24/15 24/20 24/22 24/23 24/23 24/24 25/25 26/7 27/23 28/1 28/13 33/18 37/1 38/13 44/10 45/18 50/3
years at [1] 24/20
yes [7] 3/20 3/21 4/11 25/6 32/12 44/25 48/11
yet [3] 11/11 14/7 14/17
you [111]
you'd [3] 24/2 24/2 24/3
you're [17] 9/9 11/19 18/16 21/9 21/15 25/9 29/17 29/18 30/14 33/19 36/8 36/10 40/9 47/5 47/6 47/7 47/9
you've [2] 4/6 26/1
your [35] 3/9 3/10 3/14 4/6 4/7 4/10 4/13 9/14 11/2 16/15 19/9 24/19 24/21 29/5 29/6 29/10 29/11 30/13 30/14 31/25 37/14 39/5 40/6 40/12 40/19 42/11 44/7 45/16 46/5 47/2 47/4 47/4 47/21 51/10 51/11
Your Honor [5] 37/14 39/5 40/6 42/11 44/7
yours [1] 4/6
yourselves [1] 3/23

## Z

zero [1] 38/6