BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
ANDREW S. FRIEDMAN
KIMBERLY C. PAGE
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)
afriedman@bffb.com
kpage@bffb.com

Co-Lead Class Counsel

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VIDA F. NEGRETE, as Conservator for EVERETT E. OW, an individual, on Behalf of All Other Similarly Situated Persons,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota corporation,<br><br>　　　　　　　　　　Defendant. | No. CV-05-6838-CAS(MANx)<br><br>CLASS ACTION<br><br>**DECLARATION OF ANDREW S. FRIEDMAN IN SUPPORT CO-LEAD CLASS COUNSEL'S MOTION TO ENFORCE AGREEMENTS AND ALLOCATE ATTORNEYS' FEES (REDACTED)**<br><br>DATE:　　　June 15, 2015<br>TIME:　　　10:00 a.m.<br>CTRM:　　　5 – 2nd Floor<br>JUDGE:　　Hon. Christina A. Snyder |
| CAROLYN Y. HEALEY, on Behalf of Herself and All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota corporation,<br><br>　　　　　　　　　　Defendant. | No. CV-05-8908-CAS(MANx)<br><br>CLASS ACTION |

1

## TABLE OF CONTENTS

2

Page

3  I.  HISTORY OF THE LITIGATION .................................................................1

4       A.  Discovery ..........................................................................................2

5       B.  Experts ..............................................................................................4

6       C.  Motion Practice ................................................................................4

7           1.  Plaintiffs' Motion for Class Certification ...............................5

8           2.  Defendant's Second Motion for Summary Judgment
                contending Plaintiff's claims were barred by res judicata ..........6

9
10          3.  Defendant's Motion for Preliminary Injunction under the
                All Writs Act filed in *Mooney v. Allianz Life Ins. Co. of
11              N. Am.*, Case No. 06-CV-545 (ADM/FLN), pending in
                the District Court for the District of Minnesota .....................7

12          4.  Defendant's Original and Renewed Motion for Partial
13              Summary Judgment ..................................................................7

14          5.  Defendant's Motion to Exclude the Testimony of Dr.
                Craig J. McCann, which included a two-day evidentiary
15              hearing ......................................................................................9

16          6.  Defendant's Motion to Decertify the Class ...........................10

17          7.  Defendant's Second Motion to Decertify ..............................11

18      D.  Trial Preparation ...........................................................................11

19      E.  Settlement Negotiations .................................................................13

     II. THE FEE DISPUTE ...............................................................................15
20
        A.  The 2005 Joint Prosecution Agreement ..........................................15
21
        B.  The 2006 Joint Prosecution Agreement ..........................................16
22
        C.  The Fee Declarations ......................................................................17
23
        D.  The Respective Contributions of the Firms Comprising the
24          Bonnett Fairbourn Group ...............................................................20

25      E.  Co-Lead Class Counsel's Fee Allocation .......................................22

26

27

28

1  ANDREW S. FRIEDMAN hereby declares as follows:

2       1.     I am a shareholder of the law firm of Bonnett Fairbourn Friedman & Balint PC

3  ("Bonnett Fairbourn") and head of the firm's class action practice group.  I, along with

4  Theodore J. Pintar of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), serve as

5  Co-Lead Class Counsel[1] for Plaintiffs in the above-captioned litigation.  I have personal

6  knowledge of the matters set forth herein, based on my active participation in all material

7  aspects of the prosecution and settlement of this litigation.  If called upon, I could and would

8  competently testify that the following facts are true and correct to the best of my knowledge.

9  I submit this Declaration in Support of Co-Lead Class Counsel's Motion to Allocate Fees.

10  **I.     HISTORY OF THE LITIGATION[2]**

11       2.     The coordinated actions of *Negrete v. Allianz Life Ins. Co. of N. Am.*, Case No.

12  CV-05-6838-CAS(MANx) ("*Negrete*") and *Healey v. Allianz Life Ins. Co. of N. Am.,* Case

13  No. CV-05-8908-CAS(MANx) ("*Healey*") (collectively referred to as "the Actions") were

14  filed on September 19, 2005, and December 22, 2005, respectively.  On March 2, 2006,

15  Plaintiffs Negrete and Healey filed a motion to consolidate these cases for all purposes,

16  including trial, and to appoint Robbins Geller and Bonnett Fairbourn as interim co-lead class

17  counsel.  Dkt. No. 38.[3] On April 10, 2006, the Court entered an order coordinating *Negrete* and

18  *Healey* for purposes of pre-trial discovery and motion practice and appointing Bonnett,

19  Fairbourn and Robbins Geller (known at the time as "Lerach Coughlin Stoia Geller Rudman

20  & Robbins LLP") as Co-Lead Class Counsel.  *Negrete* Dkt. No. 58.

21

22  [1] "Plaintiffs' Lead Counsel," as defined in the Stipulation of Settlement, are the same as the "Co-Lead Class Counsel" appointed by the Court in these Actions; namely, the law firms of

23  Bonnett Fairbourn and Robbins Geller. [Civil Minutes – General dated February 7, 2007]. These defined terms are used interchangeably throughout this Declaration.

24  [2] For a detailed recitation of Lead Counsel's efforts in this litigation see the Joint Declaration

25  of Theodore J. Pintar and Andrew S. Friedman in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and for an Award of Attorneys' Fees, Expenses, and

26  Service Awards ("Joint Decl.") [*Negrete* Dkt. No. 1260].

27  [3] All docket references herein are to the docket in *Negrete v. Allianz Life Ins. Co. of N. Am.*, Case No. CV-05-6838-CAS(MANx).

28

3.      After being appointed Co-Lead Class Counsel, Bonnett Fairbourn and Robbins Geller were primarily responsible for the prosecution of the related Actions. Bonnett Fairbourn in coordination with Robbins Geller oversaw the extensive pretrial preparations required in the Actions brought on behalf of a nationwide class of over 230,000 senior citizens. The pretrial preparation involved, among many other things: (a) taking or defending over 80 depositions, including those of 18 experts; (b) researching myriad legal issues associated with the claims and defenses raised in the Actions; (c) opposing defendant's motion to strike Plaintiffs' class allegations; (d) opposing three different motions for partial summary judgment filed by defendant over the course of the Actions; (e) opposing defendant's motion for judgment on the pleadings; (f) preparing and filing Plaintiffs' motion for class certification; (g)  opposing defendant's motions to de-certify the class; (h) preparing and opposing numerous discovery motions; (i)  working with various experts;  and (j) preparing extensively for the jury trial set by the Court – including preparing and filing  trial briefs and designations or objections to deposition testimony for use at trial, the proposed  joint pre-trial order, and briefing 30 separate  motions *in limine*.  As described in more detail below, Bonnett Fairbourn (along with Robbins Geller) assumed primary responsibility for and took the lead on every aspect of the litigation of the Actions achieving very successful results. Bonnett Fairbourn and Robbins Geller ultimately negotiated the Stipulation of Settlement recently approved by this Court, which provides over $251 million in relief to the Class members.

**A.      Discovery**

4.      These Actions entailed voluminous written discovery drafted primarily by Bonnett Fairbourn and Robbins Geller.  Through the meet and confer process conducted by Lead Counsel and multiple motions to compel drafted and argued by Co-Lead Class Counsel, Plaintiffs obtained over 3 million pages of documents from Allianz and its top-producing Field Marketing Organizations ("FMOs") as well as significant electronically stored information relating to Allianz's development, pricing and administration of the annuity products at issue in these Actions.  This electronic information was crucial to

Plaintiffs' experts' analyses relating to liability and damages. BR&B assisted in obtaining some discovery from third-party FMOs.  F&K also assisted in obtaining documents from Mr. Ow and Dr. Negrete for production.

5.      Plaintiffs took 56 depositions in this Action.  Bonnett Fairbourn took 21 of those depositions (10 of which were taken by Andrew Friedman) and assisted on an additional 15 other depositions, including assuming primary responsibility for reviewing and identifying potential deposition exhibits.  I was responsible for deposing Allianz's Chief Actuary – Neil McKay – as well as a number of other actuarial employees and high level executives and officers knowledgeable about Allianz's sales and marketing strategies, including Patrick Foley – the former president of Allianz's sales and marketing division and Robert MacDonald, a founder of LifeUSA which pioneered the two-tier deferred annuity concept and the acquisition of FMOs specializing in the sale of deferred annuities to senior citizens.   I also deposed Dr. Craig Merrill – Allianz's primary expert witness proffered to discredit Plaintiffs' damages expert – on two separate occasions.

6.      Together Bonnett Fairbourn and Robbins Geller were responsible for taking 40 of the 56 depositions noticed by Plaintiffs in this Action, including all of Allianz's actuarial employees and all seven of Allianz's experts.  Finkelstein & Krinsk ("F&K") conducted eight of the 56 depositions, which included a portion of the Rule 30(b)(6) deposition on Allianz's policies and procedures, Mr. Ow's sales agent, niece and live-in companion, two mid-level marketing and compliance managers, and an owner of an FMO.  Barrack Rodos & Bacine ("BR&B") conducted one Rule 30(b)(6) deposition relating to corporate organization and one deposition of a former officer of Allianz.  The Evans Law Firm conducted six depositions, including two upper-level marketing and compliance employees, two FMO owners, and a sales agent.  James, Hoyer, Newcomer & Smiljanich took a Rule 30(b)(6) deposition relating to Allianz's computer systems.

7.      Allianz noticed 29 depositions over the course of the litigation.  Bonnett Fairbourn defended 15 of those depositions. I was exclusively responsible for defending the Plaintiffs' expert Dr. McCann on each of his three depositions taken by Allianz.  Ultimately

1  Bonnett Fairbourn and Robbins Geller were responsible for defending the depositions of all

2  of Plaintiffs' eleven proffered experts.  Howard Finkelstein of F&K prepared for and

3  defended the depositions of Dr. Negrete and Mr. Ow.  Mr. Basser of BR&B assisted in the

4  preparation and defense of the depositions of Dr. Negrete and Mr. Ow.

5      **B.  Experts**

6      8.    Over the course of these Actions, Plaintiffs retained twelve testifying experts

7  and three consulting experts.  Bonnett Fairbourn assumed the lead role overseeing the

8  development of Plaintiffs' expert testimony.  Bonnett Fairbourn, with input from the Robbins

9  Geller firm, engaged in an extensive search for qualified expert witnesses, which included

10 identifying the topics for which expert testimony was needed, interviewing numerous

11 potential experts, and determining the issues to be addressed in the expert reports. Bonnett

12 Fairbourn worked closely with each expert consultant, assuming primary responsibility for

13 providing the relevant documents, data and factual background necessary to develop the

14 relevant expert opinions.  I worked closely with each of the experts providing input and

15 guidance on the issues requiring expert analysis, assisting in the development and refinement

16 of the expert testimony, reviewing and evaluating the experts' analytical work, providing

17 oversight on the experts' written disclosures, preparing the experts for deposition testimony

18 and finalizing their respective trial reports.

19     9.    F&K and BR&B had virtually no involvement or input in the retention of

20 Plaintiffs' experts, determination of the issues requiring expert testimony, development of

21 the experts' analyses or reports, consultation with Plaintiffs' experts or assisting in the

22 preparation of experts for deposition or trial testimony.

23     **C.  Motion Practice**

24     10.   Over the nine-year course of these Actions, Plaintiffs filed or opposed 76

25 separate motions.  Bonnett Fairbourn (a) was primarily responsible for drafting the

26 supporting or opposing briefs and  (b) assisted in the preparation of briefs when Co-Lead

27

28

Robbins Geller took the lead drafting Plaintiffs' submissions.[4]  I assumed exclusive responsibility to present oral argument on behalf of Plaintiffs in connection with a majority of the motions for which the Court held hearings.[5]

11.   Neither F&K nor BR&B presented argument to the Court in connection with any of the 76 motions filed in these Actions.  Indeed, except for an appearance by Mr. Basser at the hearing on Allianz's motion to strike and at the initial pretrial conference in early 2006, neither F&K nor BR&B participated in any hearing or status conference held by the Court.  In contrast, Mr. Friedman presented oral argument for Plaintiffs on each of the following critical motions heard by the Court.

### 1.   Plaintiffs' Motion for Class Certification

12.   On May 30, 2006, Plaintiffs filed their motion for class certification and appointment of class representatives and appointment of class counsel.  Dkt. No. 79.  Plaintiffs' counsel submitted extensive factual support for the motion.   Supporting declarations of experts Craig J. McCann and Thomas J. Maronick were prepared and filed in connection with Plaintiffs' class certification motion.  Two months later, on July 17, 2006, Plaintiffs submitted reply papers in support of their class certification motion, which included a supplemental declaration from Dr. McCann. Dkt. Nos. 105-106.  Bonnett Fairbourn with assistance from Robbins Geller was responsible for drafting the submissions on class certification. I assumed primary responsibility for working with Plaintiffs' expert Dr. McCann to develop Plaintiffs' damages model and prepare his expert declarations opining that the model was appropriate to calculate damages on a class-wide basis.

13.   On July 24, 2006, I presented oral argument in favor of class certification.  Following oral argument, the Court asked the Plaintiffs to answer additional questions

---

[4] F&K participated in the drafting on one opposition brief, which ultimately was redrafted by Co-Lead Class Counsel.

[5] Bonnett Fairbourn logged approximately 8,000 hours in connection with the written submissions prepared in connection with the substantial motion practice and logged 757.5 hours in connection with court hearings in this litigation, encompassing attendance at hearings on all critical, dispositive or evidentiary motions.  Joint Decl. ¶159.

regarding their expert analysis supporting class certification.  In response to the Court's questions, I consulted extensively with Dr. McCann and Robbins Geller and prepared written responses to the Court's questions further explaining Plaintiffs' damages model and its reliability as a measure of class wide damages.  Dkt. No. 130.  On November 21, 2006, the Court granted Plaintiffs' motion for class certification of their federal RICO claims and UCL and Elder Abuse claims under California law.  Dkt. No. 134; *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006).  The Court certified a nationwide class of senior citizens age 65 and older who purchased one or more Allianz deferred annuities within the applicable statute of limitations and a California statewide class based upon the same factual predicate underlying Plaintiffs' RICO claims.  *Id.* at 496-97.  The Court also found that Bonnett Fairbourn and Robbins Geller were qualified and adequate to represent the certified Classes.

### 2.    Defendant's Second Motion for Summary Judgment contending Plaintiff's claims were barred by res judicata

14.    On March 12, 2010, Allianz moved for summary judgment on the RICO claims of certain Class members which it contended were barred by the doctrine of claim preclusion as a result of the final judgment entered in Allianz's favor in *Mooney v. Allianz Life Ins. Co. of N. Am.*, No. 06-CV-00545 (D. Minn.) ("*Mooney*") following a jury trial in 2009. Dkt. No. 546.  Bonnett Fairbourn assumed responsibility for drafting the Plaintiffs' submissions opposing Allianz's summary judgment and I presented oral argument on behalf of the Plaintiffs. Based on Plaintiffs' submissions and oral argument, the Court, on August 18, 2010, denied Allianz's summary judgment motion, finding that Allianz had waived any claim preclusion defense, that the notice disseminated to class members in *Mooney* was constitutionally inadequate as it did not inform class members of the impact that the class determination in *Mooney* could have on these Actions, that the Mooney class representatives could not adequately represent the class of senior citizens in these Actions, and that there was no effective mechanism for opting out of the *Mooney* class. Dkt. No. 599.

15.     Allianz thereafter filed a motion for reconsideration of the Court's ruling denying summary judgment or, in the alternative, to certify certain questions for interlocutory appeal pursuant to 28 U.S.C. §1292(b). Dkt. No. 603. Bonnett Fairbourn prepared Plaintiffs' opposition to Allianz's motion for reconsideration, which the Court denied following oral argument. Dkt. No. 608. Allianz then filed a petition for mandamus with the Ninth Circuit in which it argued that this Court had erroneously refused to deny claim preclusion as a result of the judgment entered in *Mooney*. The Ninth Circuit dismissed the petition, finding that the case did not warrant review. Dkt. No. 658.

> **3.     Defendant's Motion for Preliminary Injunction under the All Writs Act filed in *Mooney v. Allianz Life Ins. Co. of N. Am.*, Case No. 06-CV-545 (ADM/FLN), pending in the District Court for the District of Minnesota**

16.     After this Court denied its summary judgment motion, Allianz sought relief in the *Mooney* action, filing a motion for preliminary injunction under the All Writs Act. Allianz asserted that Plaintiffs in these Actions should be barred from re-litigating any claims adjudicated in the *Mooney* trial. Plaintiffs' counsel promptly intervened in the *Mooney* case. Bonnett Fairbourn drafted Plaintiffs' opposition and I presented oral argument to Judge Montgomery, who presided over the *Mooney* action. Agreeing with Plaintiffs that ancillary enforcement jurisdiction did not apply, that the claims alleged in *Mooney* and *Negrete* did not arise from the same nucleus of operative facts, and that Allianz acquiesced to claims-splitting, the Court denied Allianz's motion. *Mooney* Dkt. No. 671 (Notice of Decision). Allianz pressed on, appealing Judge Montgomery's decision to the Eighth Circuit. On July 12, 2011, based on its review of the record, the Eight Circuit summarily denied Allianz's appeal. Allianz thereafter petitioned the Eighth Circuit for a rehearing *en banc*, but the petition was denied.

> **4.     Defendant's Original and Renewed Motion for Partial Summary Judgment**

17.     Allianz filed a motion for partial summary judgment on April 4, 2008, arguing that Plaintiffs could not establish two elements necessary to prevail on their RICO claim – proximate causation or a concrete financial injury. Dkt. No. 282. Bonnett Fairbourn and

1   Robbins Geller took the lead in preparing Plaintiffs' opposition, including a declaration by

2   Plaintiffs' expert, Dr. Craig McCann.  Dkt. Nos. 374, 375, 376 & 379.  I consulted with Dr.

3   McCann and worked with him on his expert declaration.   F&K assisted in obtaining a

4   declaration from Dr. Negrete in support of Plaintiffs' summary judgment opposition.  Allianz

5   filed its reply in support of the motion on February 13, 2009, along with a motion to strike

6   the declaration of Dr. McCann.  Dkt. Nos. 469 & 470.  However, after briefing on Allianz's

7   original summary judgment motion was complete, Allianz withdrew it pending the Court's

8   consideration of the admissibility of the opinions of Dr. McCann in two similar deferred

9   annuity cases: *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, No. 2:07-ml-

10  01825-CAS-MAN (C.D. Cal.), and *Negrete v. Fidelity & Guar. Life*, No. CV 05-6837 CAS

11  (MANx) (C.D. Cal.).  Because of settlements reached in the *Midland* and *Fidelity* matters,

12  the Court never reached a determination on the admissibility of Dr. McCann's opinions in

13  those cases.

14        18.     On June 10, 2011, Allianz filed a "renewed" motion for summary judgment

15  challenging several elements of Plaintiffs' RICO claims.  In particular, Allianz argued that

16  Plaintiffs could not establish: (i) the existence of a RICO association-in-fact enterprise;

17  (ii) cognizable injury "by reason of" the conduct constituting the alleged RICO violations; or

18  (iii) the existence of a RICO conspiracy.  Dkt. No. 695.  Bonnett Fairbourn and Robbins

19  Geller worked together on Plaintiffs' opposition to Allianz's renewed motion for summary

20  judgment, which was filed on July 15, 2011.  Dkt. No. 739.  F&K assisted in obtaining an

21  updated declaration from Dr. Negrete in support of Plaintiffs' summary judgment opposition.

22  I participated in the oral argument opposing Allianz's renewed bid for summary judgment.

23  On October 13, 2011, the Court denied Allianz's motion in its entirety, finding that Plaintiffs

24  had presented evidence sufficient to create a genuine issue of fact on their RICO enterprise

25  and RICO conspiracy claims.  Dkt. No. 805.  The Court upheld many of the theories central

26  to Plaintiffs' case.

27

28

**5.    Defendant's Motion to Exclude the Testimony of Dr. Craig J. McCann, which included a two-day evidentiary hearing**

19.    Allianz challenged the opinions offered by Plaintiffs' damages and liability expert Dr. McCann over the course of these Actions.   Allianz sought to exclude Dr. McCann's expert opinions on several occasions through different procedural vehicles. For example, along with its reply in support of its original motion for partial summary judgment, Allianz asked the Court to exclude the expert declaration of Dr. McCann submitted in opposition to Allianz's motion.   Dkt. No. 469.   Bonnett Fairbourn and Robbins Geller worked together preparing Plaintiffs' opposition to the motion to exclude. I assumed primary responsibility to work with Dr. McCann in refining Plaintiffs' damages theory to calculate the damages flowing from each of the three core misrepresentations.   I conferred with Dr. McCann to prepare his supplemental declaration as well as coordinating the preparation of declarations from Dr. Neil Pearson and Dr. Hayne Leland affirming that Dr. McCann's approach to valuing Allianz's deferred annuities was a reliable methodology appropriately applied in this Action. Dkt. Nos. 636-639.   I was primarily responsible for working with Drs. Pearson and Leland in preparing their expert submissions in these Actions.

20.    On October 5 and 6, 2011, the Court conducted an evidentiary *Daubert* hearing on Allianz's motion to exclude Dr. McCann's expert opinions. I assumed primary responsibility for the *Daubert* hearing – presenting opening argument, conducting the direct examination of Dr. McCann and cross-examining Dr. Craig Merrill. Dkt. Nos. 801, 802.

21.    The Court denied Allianz's motion to exclude Dr. McCann's testimony on October 13, 2011.   The Court found that Dr. McCann's analysis satisfied the criteria for admissibility under the Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), as it was relevant to Plaintiffs' claims, was sufficiently grounded in the relevant economic literature, and had reliably been applied to the facts of this case.   Dkt. No. 804.

22.     Other than brief consultations via telephone with BR&B and F&K during the *Daubert* hearing updating them on the progress of the hearing, BR&B and F&K did not participate at the hearing or assist in the drafting of the Plaintiffs' written submissions.

### 6.     Defendant's Motion to Decertify the Class

23.     Allianz twice asked the Court to vacate its initial published decision certifying a nationwide RICO class and a California statewide class in these Actions.  On May 30, 2012, Allianz filed a motion to decertify the nationwide class, attacking virtually every requirement of class certification under Fed. R. Civ. P. 23.  Dkt. No. 830.  It argued that Plaintiffs could not show that the alleged misrepresentations were common to all of the products, that the claims of the named Plaintiffs were not typical of the claims of the Class, and that Plaintiffs could not prove reliance and damages on a class-wide basis and therefore could not satisfy the predominance requirement of Rule 23.  Bonnett Fairbourn drafted the memorandum in opposition to Allianz's decertification motion and marshaled the supporting evidence and analyses, including an analysis of the alleged representations contained in over 1000 Allianz consumer brochures and hundreds of statements of understanding. [Dkt. No. 855]

24.     I presented oral argument opposing Allianz's decertification motion at the hearing held on November 8, 2011.  Dkt. No. 911. The Court denied Allianz's motion to decertify on December 27, 2012.  Dkt. No. 929; *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590 (C.D. Cal. 2012). With respect to the element of causation under RICO, the Court accepted Plaintiffs' argument that, after *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 1, 8, 128 S. Ct. 1511, 170 L. Ed. 2d 392 (2008), Plaintiffs could establish proximate causation by demonstrating a uniform overcharge suffered by all Class members and that at least some, but not all, of the Class members relied on the alleged misrepresentations in the consumer brochures. *Negrete*, 287 F.R.D. at 605-08. As the Court is aware, this was a novel causation theory, one that I vigorously pressed during the oral argument. The Court once again found that "Dr. McCann's analysis relevant for determining the nature and extent of Plaintiffs' alleged injury" and that "Dr. McCann's methodology is sufficiently reliable."

*Negrete v. Allianz Life. Ins. Co. of N. Am.*, No. CV 05-6838, 2011 U.S. Dist. LEXIS 118527, at *27-*32 (C.D. Cal. Oct. 13, 2011).

### 7.    Defendant's Second Motion to Decertify

25.    Allianz's second motion to decertify was filed on June 3, 2013.  In that motion, it took aim at the California-only subclass, contending that plaintiff Negrete, Everett Ow's conservator, was an inadequate class representative in light of Mr. Ow's death.  Dkt. No. 936.  Bonnett Fairbourn assumed primary responsibility for drafting Plaintiffs' opposition to Allianz's second motion to decertify.   The Court credited Plaintiffs' arguments and summarily denied Allianz's motion without oral argument. Dkt. No. 952; *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838, 2013 U.S. Dist. LEXIS 94030 (C.D. Cal. July 3, 2013).

### D.    Trial Preparation

26.    In September 2011, the parties began exchanging their trial disclosures required under Local Rule 16-2. Bonnett Fairbourn prepared Plaintiffs' Contentions of Fact and Law, which ultimately spanned more than 100 pages.   Plaintiffs submitted their voluminous Contentions of Fact and Law to the Court on September 15, 2011.  Preparation of these contentions required review of voluminous amounts of documents and deposition testimony to synthesize the critical facts.  F&K also provided assistance in preparing some contentions of law and assisted in compiling factual support for Plaintiffs' contentions of fact.    On that same date, Plaintiffs served their initial witness list and exhibit list prepared by Bonnett Fairbourn with input from Robbins Geller.

27.     After submitting their exhibit list, Bonnett Fairbourn met and conferred with defense counsel regarding Plaintiffs' exhibit list.  Bonnett Fairbourn and Robbins Geller spent substantial time and effort reviewing and refining Plaintiffs' exhibit list in preparation for trial. Bonnett Fairbourn was responsible for finalizing Plaintiffs' exhibit list filed, along with the joint exhibit list, on January 27, 2014.

28.     Plaintiffs also served four expert trial reports on September 15, 2014.  Bonnett Fairbourn and Robbins Geller worked extensively with the experts in preparation of their

1  written reports relating to damages, product pricing and features, and marketing and sales

2  practices.

3      29.    In March 2012, the parties exchanged rebuttal expert reports.  Plaintiffs

4  retained three additional experts and provided hundreds of pages in rebuttal reports from a

5  total of seven witnesses who were qualified as experts in state insurance regulation, actuarial

6  science, economics, annuity marketing and sales, the cognitive abilities of senior citizens,

7  and financial planning.  Bonnett Fairbourn was intimately involved in the preparation of the

8  rebuttal reports.

9      30.    Neither F&K nor BR&B provided input or assistance in the drafting of any of

10  the expert declarations or the expert reports submitted on behalf of Plaintiffs in these

11  Actions.

12      31.    Bonnett Fairbourn also took the lead in coordinating the preparation of

13  Plaintiffs' initial and counter deposition designations, as well as the objections to Allianz's

14  designations. In preparing their deposition designations, Bonnett Fairbourn and Robbins

15  Geller reviewed over 153 deposition transcripts, including transcripts from depositions taken

16  in the following related actions: *Castello v. Allianz*, No. MC 03-20405 (Hennepin Cty. Dist.

17  Ct., Minn.); *Iorio v. Asset Marketing Systems*, No. 95-CV-0633 JEG (CAB) (S.D. Cal.),

18  *Mooney v. Allianz*, No. 06-CV-00545 (ADM/FLN) (D. Minn.); and *State Of Minnesota v.*

19  *Allianz*, No. 27-CV-07-581

20      32.    As part of the trial preparation, Bonnett Fairbourn and Robbins Geller engaged

21  in several strategy sessions to identify necessary motions *in limine* and motions to exclude

22  expert testimony.  On September 5, 2013, Plaintiffs filed five motions *in limine* and seven

23  motions to exclude expert testimony.  On the same date, Allianz filed 11 motions *in limine*

24  and seven motions to exclude expert testimony.  Bonnett Fairbourn drafted two of plaintiffs'

25  five motions *in limine* and four motions to exclude Allianz's experts, including moving to

26  preclude Allianz's reliance on deposition testimony from Dr. Zvi Bodie, the Rule 706 expert

27  appointed in *Midland*.  Bonnett Fairbourn shared responsibility with Robbins Geller with

28  respect to opposing Allianz's 11 motions *in limine* and seven motions to exclude.  The

briefing on the motions once again involved defending Dr. McCann's damages model and analysis as well as defending motions to exclude Dr. Gordon Rausser, whose opinions supplemented Dr. McCann's and Plaintiffs' actuarial expert Jeffrey Dellinger.  The briefing on these motions was extensive and covered a wide array of evidentiary categories and expert testimony.  In total, the parties briefed 30 evidentiary motions.  *See* Dkt. Nos. 968-1017.

33.     F&K and BR&B did not participate or contribute to the submissions in support of and in opposition to the various motions *in limine* and motions to exclude.

**E.     Settlement Negotiations**

34.     The settlement reached in this litigation is the product of years of investigation and difficult and protracted settlement negotiations by counsel for the parties. I and attorneys at the Robbins Geller firm were solely responsible for negotiations on behalf of the Plaintiffs.  The settlement negotiations occurred, sporadically, over many years, and included two separate mediations before qualified and experienced mediators (Eric Green and Robert Kaplan).   I shared primary responsibility for developing, formulating and refining the complex settlement structure and terms, including working with actuarial experts to design, perform and evaluate various valuation analyses.

35.     Other than communicating with Dr. Negrete to obtain her approval of the proposed Settlement Agreement, F&K and BR&B did not participate in the settlement negotiations.   F&K and BR&B did not participate in or attend any of the settlement negotiations, did not attend any of the mediation sessions and did not prepare any of the settlement proposals or settlement documentation.

36.     After hard fought negotiations, which are detailed in paragraphs 106-133 of the Joint Declaration, the parties reached a settlement and on August 14, 2014 submitted the Stipulation of Settlement ("Settlement Agreement") for preliminary approval.   On August 27, 2014, the Court preliminarily approved the Settlement Agreement and appointed Robbins Geller and Bonnett Fairbourn as Class Counsel for the Settlement Class.  Order (1) Preliminarily Approving Class Action Settlement, (2) Directing Distribution of the Notice of

- 13 -

Class Action Settlement, (3) Setting Final Approval Hearing, and (4) Preliminarily Enjoining Parallel Proceedings ("Preliminary Approval Order") [Dkt. No. 1248]. In the Preliminary Approval Order, the Court appointed Bonnett Fairbourn and Robbins Geller as Co-Lead Class Counsel for the Settlement Class. Preliminary Approval Order at 9 [Dkt. No. 1248].

37. Following the Fairness Hearing, on March 17, 2015, the Court entered an Amended Final Order: (1) Approving Class Action Settlement, (2) Approving Payment of Class Counsel Attorneys' Fees and Class Counsel Expenses, (3) Awarding Service Awards to Class Representatives, (4) Permanently Enjoining Parallel Proceedings, and (5) Dismissing Action With Prejudice ("Final Approval Order"). [Dkt. No. 1293] As part of the Final Approval Order, the Court awarded attorneys' fees in the amount of $42,500,000 ("the Fee Award"). Final Approval Order at 28 [Dkt. No. 1293]. No appeal of the Final Approval Order was taken and the order became final on April 17, 2015.

38. The Settlement Agreement provides that Plaintiffs' Lead Counsel will determine the amount of fees and expenses to be paid to other Plaintiffs' Counsel, and vests this Court with exclusive jurisdiction to resolve any disputes among Plaintiffs' Counsel pertaining to attorneys' fees and expenses:

> Plaintiffs' Lead Counsel will determine the amount of fees and expenses from any award made by the Court pursuant to Section X.B. above to be paid to other Plaintiffs' Counsel. Disagreements, if any, between or among Plaintiffs' Counsel in the Actions relating to the Court's award of fees and expenses, or of their individual shares of such award, will be determined by the Court presiding over these Actions, which will retain sole and exclusive jurisdiction to resolve any such disagreements.

[Settlement Agreement, §X.D at 64].

39. A dispute has arisen among certain Class Counsel over the apportionment of the Fee Award. [Dkt. No. 1293] As expressly contemplated by the Settlement Agreement, Co-Lead Class Counsel conferred and determined the allocation of the Fee Award among Class Counsel. However, F&K and BR&B are demanding compensation that far exceeds the value of their actual contributions to the prosecution of the Actions. Accordingly, pursuant to section X.D, Bonnett Fairbourn is requesting that the Court resolve the fee dispute.

- 14 -

## II.  THE FEE DISPUTE

### A.  The 2005 Joint Prosecution Agreement

40.     These Actions were initially filed by two, potentially competing groups of lawyers.  One group (the "Bonnett Fairbourn Group") consisted of Bonnett Fairbourn, BR&B, and F&K.  The other group (the "Robbins Geller Group") consisted of Robbins Geller, The Evans Law Firm and James Hoyer Newcomer & Smiljanich, P.A.

41.     In November 2005, Bonnett Fairbourn, F&K and BR&B negotiated a Joint Prosecution Agreement (the "2005 Joint Prosecution Agreement") to jointly prosecute several senior annuity lawsuits, including this action against Allianz Life Insurance Company of North America ("Allianz").[6]  A written agreement was prepared, but we have been unable to locate a signed version of the 2005 Joint Prosecution Agreement.  A true and correct copy of the draft 2005 Joint Prosecution Agreement is attached as Exhibit 1.

42.     The 2005 Joint Prosecution Agreement contemplated that each of the firms would share equally in the work associated with the joint prosecution of the senior annuity lawsuits, and required each of the firms to contribute one-third of the common costs of litigation.

43.     In recognition that one or more of the law firms in the Bonnett Fairbourn Group might perform a disproportionate amount of work over the course of the litigations, the 2005 Joint Prosecution Agreement expressly provided that the firms' ultimate relative compensation would be proportionate to the "actual respective contributions and efforts of each of the firms":

> 6. Any attorneys' fees and costs awarded to any or all of the firms of the … [Bonnett Fairbourn Group] in connection with the Senior Annuity Lawsuits shall be shared, allocated and paid as follows:
>
> (a)     First, Common Costs paid by these law firms will be repaid or reimbursed;

---

[6]   The Shernoff Bidart & Darras law firm also was a party to the 2005 Joint Prosecution Agreement but did not undertake active efforts to prosecute the class claims contemplated by the Agreement.

(b)      Second, reasonable Non-Common Costs incurred by each of these law firms will be repaid or reimbursed;

(c)      Third, any agreed-to referral fees will be paid; and

(d)      Fourth, any remaining amounts for attorneys' fees and costs will be divided and paid equally to these three (3) firms (i.e., one third (1/3) of such amount will be paid to each of these three (3) firms); ***provided, however, that these percentages will be adjusted if necessary or appropriate to reflect the actual respective contributions and efforts of each of the firms comprising the …*** [Bonnett Fairbourn Group]**.**

Ex. 1 – 2005 Joint Prosecution Agreement at ¶6 (emphasis added).

44.      The 2005 Joint Prosecution Agreement furthermore provided a mechanism by which any member of the Bonnett Fairbourn Group could object if it did not feel it was being given equal opportunity to contribute time and effort to the case.  Over the nine years that the Actions were being prosecuted by Co-Lead Class Counsel, neither F&K nor BR&B sought to invoke this provision of the Joint Prosecution Agreement, instead allowing Bonnett Fairbourn to assume and discharge responsibilities and shoulder risks far greater than either of them.

**B.      The 2006 Joint Prosecution Agreement**

45.      Following their appointment as Interim Co-Lead Class Counsel, the Bonnett Fairbourn Group and the Robbins Geller Group entered into a joint prosecution agreement in May 2006 (the "2006 Joint Prosecution Agreement") to coordinate the two groups' efforts and avoid counterproductive competition between the plaintiff groups for leadership of the senior annuity cases. A true and correct copy of the 2006 Joint Prosecution Agreement is attached as Exhibit 2.

46.      Under the 2006 Joint Prosecution Agreement, the Bonnett Fairbourn Group and the Robbins Geller Group agreed to share equally the work associated with the joint prosecution of the senior annuity lawsuits, including these Actions. Any attorneys' fees to any or all of the law firms comprising the Bonnett Fairbourn Group and the Robbins Geller Group were presumptively to be divided equally after payment of costs.

47.      Like the 2005 Joint Prosecution Agreement, the 2006 Joint Prosecution Agreement contained a provision allowing either group to object and seek a reallocation of

work if it believed the other group was performing a "disproportionate or inequitable" amount of work.  The 2006 Joint Prosecution Agreement further provided that each firm within a Group would receive compensation solely from within its own Group.

      **C.**    **The Fee Declarations**

    48.   On November 7, 2014, Co-Lead Class Counsel submitted their Joint Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and for an Award of Attorneys' Fees, Expenses, and Service Awards. [Dkt. No. 1260] Filed concurrently with the Joint Declaration were declarations from Plaintiffs' counsel setting forth the following number of hours expended on the litigation and lodestar accumulated:

| Prosecuting Firm | Total Hours | Lodestar Amount |
|---|---|---|
| Robbins Geller Rudman & Dowd LLP | 28,068.88 | $12,926,937.15 |
| Bonnett Fairbourn Friedman & Balint, P.C. | 37,482.8 | $15,945,686.00 |
| Barrack Rodos & Bacine | 4,612.75 | $1,867,186.25 |
| James, Hoyer, Newcomer & Smiljanich | 2,616.1 | $910,260.00 |
| Evans Law Firm | 4,552.8 | $1,934,142.00 |
| **Total** | **77,333.33** | **$33,584,211.40** |

Joint Decl., ¶156.

    49.   Lead Counsel did not submit for consideration by the Court (and the Court therefore did not approve) any of the time claimed by F&K ███████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████.

    50.   On October 7, 2014, F&K submitted a declaration ("the 10/7/14 Krinsk Declaration") signed by partner Jeffrey Krinsk reporting 2,969.03 hours and $1,326,657.25 in purported lodestar.  The 10/17/14 Krinsk Declaration included 19.7 hours totaling $10,835 of time attributed to former F&K partner Howard Finkelstein, whom I understand had partially retired from the active practice of law and assumed an "of Counsel" position with F&K. 10/7/14 Krinsk Declaration, ¶6.  A true and correct copy of the 10/7/14 Krinsk Declaration is attached as Exhibit 3.

51.     On October 7, 2014, former F&K partner Howard Finkelstein submitted a letter to Co-Lead Class Counsel, reporting 787.7 hours of additional time he spent working on the case after he assumed the "of Counsel" position with F&K ("the 10/7/14 Finkelstein Letter"). A true and correct copy of the 10/7/14 Finkelstein Letter is attached as Exhibit 4.

52.     After submission of the 10/7/14 Krinsk Declaration and the 10/7/14 Finkelstein Letter, Lead Counsel received communications from Mr. Finkelstein and Mr. Krinsk ▓▓▓. On October 10, 2014, Mr. Finkelstein wrote:



A true and correct copy of the email from Mr. Finkelstein to Andrew Friedman, Ted Pintar, Jeffrey Krinsk and Mark Knutson dated October 10, 2014, is attached as Exhibit 5.

53.     On November 6, 2014 – the day before Class Counsel's fee application was due to be filed with the Court – Mr. Finkelstein sought assurances that his time would be included in the F&K declaration.   In response, F&K partner Krinsk sent an email at 3:06 PM on November 7, 2014, stating that Mr. Finkelstein's time would be included in the draft F&K submission, ▓▓▓

True and correct copies of Mr. Finkelstein's November 6, 2014 email and Mr. Krinsk's November 7 email are attached as Exhibit 6.

54.     On November 7, 2014, Mr. Krinsk submitted a second fee declaration ("the 11/7/14 Krinsk Declaration"), this time for $2,292,487.50, which now reported $433,180 in time reported by Mr. Finkelstein – ███████████████████████████████████ ████████████████████████. A true and correct copy of the 11/7/14 Krinsk Declaration is attached as Exhibit 7.

55.     A comparison of the 10/7/14 Krinsk Declaration and the 11/7/14 Krinsk Declaration revealed that the new declaration reported an additional 1948.12 hours totaling $965,812.25.  Besides the 767.90 hours added for work performed by Mr. Finkelstein, the 11/7/14 Krinsk Declaration included an additional 1,180.22 hours ($543,467.25 in lodestar) of reported time by other F&K attorneys and paralegals beyond the time previously reported in the 10/7/14 Krinsk Declaration. Other than detail supporting the time entries previously submitted by Mr. Finkelstein, Co-Lead Class Counsel was not provided any time detail supporting the additional hours reported in the 11/7/14 Krinsk Declaration.   When questioned about the difference in reported time between the two declarations, F&K represented that the only change between the 10/7/14 Krinsk Declaration and the 11/7/14 Declaration was the addition of Mr. Finkelstein's time.  *See* Email from Mark Knutson to Jeffrey Krinsk, Ted Pintar, Andrew Friedman and Stephen Basser dated November 11, 2014. Co-Lead Class Counsel has never received supporting documentation or an explanation for the increased time reported by other F&K attorneys and paralegals in the 11/7/14 Krinsk Declaration.[7] A true and correct copy of a chart comparing the time reported in the 10/7/14 Krinsk Declaration and the 11/7/14 Krinsk Declaration is attached as Exhibit 8.  A true and correct copy of the email from Mark Knutson to Jeffrey Krinsk, Ted Pintar, Andrew Friedman and Stephen Basser is attached as Exhibit 9.

---

[7] Because there is no support for these additional hours, Bonnett Fairbourn is using the 10/7/14 Krinsk Declaration plus the additional 767.90 hours reported for Mr. Finkelstein as the basis for its lodestar analyses.

56.    Undersigned counsel is familiar with the work performed by Mr. Finkelstein in the Actions and has no reason to believe that his reported time is ███████████████ ███████████████████████.  Nonetheless, as officers of the Court, Co-Lead Counsel determined that it would be inappropriate to submit for consideration F&K's time given the serious charges leveled by Mr. Krinsk and the other profound discrepancies in the declarations submitted by F&K.

57.    On November 10, 2014, Robbins Geller as Co-Lead Class Counsel advised the F&K firm that ████████████████████, the F&K submission was not be submitted to the Court:

> We received F&K's signed declaration late Friday afternoon, as we were finalizing the final approval submissions. Due to the substantial discrepancies between the final declaration and the earlier version and underlying time reports, and the accusations included in prior emails reflecting the dispute between the two of you, and after consulting with the Barrack Rodos firm, co-lead counsel decided not to submit the F&K declaration or to include its time in the lodestar amount reported to the Court as a basis for the application for an award of fees and costs.

A true and correct copy of the November 10, 2014 email from Mr. Pintar is attached as Exhibit 10.

### D.   The Respective Contributions of the Firms Comprising the Bonnett Fairbourn Group

58.    As explained in the foregoing paragraphs, Bonnett Fairbourn assumed and performed a greatly disproportionate role vis-a-vis F&K and BR&B in successfully prosecuting and achieving the favorable settlement in these Actions. As reflected by the reported lodestar figures and discussed in more detail in paragraphs 2-35, Bonnett Fairbourn assumed sole responsibility for virtually all work leading to the successful result in the Actions within the Bonnett Fairbourn Group. As Co-Lead Class Counsel, Bonnett Fairbourn attorneys drafted or contributed to Plaintiffs' submissions in connection with every one of the 76 motions filed in these Actions, argued a majority of the dispositive motions, worked with Plaintiffs' consultants to develop the key expert evidence, took a majority of the critical depositions and ultimately negotiated the terms of the class settlement with the active participation of the Robbins Geller firm.

59.     The F&K and BR&B firms, by contrast, over the nine years of this Action, argued no motions, prepared an initial draft response to only one motion (which had to be re-written), took few depositions and played no role in the settlement negotiations. BR&B spent 3,329.75 hours (or 72% of its total time reported by BR&B) engaged in document review and coding.   Other than participating in a few depositions and third-party discovery as discussed in paragraphs 4, 5 and 7, *supra*, the remainder of the time BR&B spent on the litigation largely consisted of reading and reviewing correspondence and court filings and generally monitoring the litigation. Other than participating in the depositions as explained in paragraphs 6-7, *supra,* assisting with Dr. Negrete's and Mr. Ow's production, obtaining two declarations from Dr. Negrete, and assisting in preparation of Plaintiffs' Contentions of Fact and Law, for the most part, the remainder of work performed by F&K consisted of reading and reviewing emails, keeping the client apprised of the litigation, and generally monitoring the status of the litigation.

60.     Based on the time reports submitted by the firms within the Bonnett Fairbourn Group, as adjusted to eliminate time not attributable to the prosecution of these Actions[8],

---

[8] Co-Lead Class Counsel has removed from each firm's time and lodestar, hours reported in Allianz but unrelated to or separate from this Action.  The time detail submitted by F&K was reviewed and entries that were unrelated to this Action were deleted.  In sum, Lead Counsel removed 434.05 hours amounting to $217,831 in lodestar from F&K's time as the submitted time detail reflected these hours were spent on *Susan Ostrow v. Allianz Life Ins. Co. of N. Am*, Case No. 09-cv-7621 brought in the Superior Court for the District of Columbia and alleging violations of the District of Columbia's consumer protection statutes.  The case was dismissed on May 6, 2011, when the Court granted Allianz's motion to dismiss.   The *Ostrow* case was not related to the Actions pending before this Court.  Neither Bonnett Fairbourn nor BR&B were counsel of record in the *Ostrow* case, which F&K insisted on initiating and litigating over the objection of Co-Lead Class Counsel and the other firms representing Plaintiffs in these Actions.  Co-Lead Class Counsel removed 74.2 hours amounting to $38,955 in lodestar from Bonnett Fairbourn's time for work on developing a breach of contract case against Allianz.  Finally, Co-Lead Class Counsel removed 1.5 hours amounting to $1065 in lodestar from BR&B's time for work performed on the *Ostrow* matter.  A true and correct copy of chart listing the entries eliminated from F&K's time is attached as Exhibit 11.

Bonnett Fairbourn's devoted lodestar amount is ***eight to ten times*** the lodestar reported by either F&K or BR&B.[9]

61.     With the erroneous time removed, the Bonnett Fairbourn Group's reported hours and lodestar are reflected in the following table:

| Prosecuting Firm | Total Hours | Lodestar Amount |
|---|---|---|
| Bonnett Fairbourn Friedman & Balint, P.C. | 37,878.00[10] | $16,083,278.50 |
| Barrack Rodos & Bacine | 4,611.25 | $1,866,121.25 |
| Finkelstein & Krinsk | 3,302.88 | $1,531,864.25 |
| **Total** | **45,792.13** | **$19,481,264.00** |

62.     Thus, on an hourly lodestar basis, Bonnett Fairbourn devoted approximately 82.5% of the total hours expended by the Bonnett Fairbourn Group, while F&K devoted only about 7.9% and BR&B devoted only about 9.6% of the total reported time, respectively. Bonnett Fairbourn therefore devoted some 8 to 10 times the attorney and paralegal hours to the successful prosecution of this litigation than spent by either F&K or BR&B.

### E.     Co-Lead Class Counsel's Fee Allocation

63.     In accordance with the Settlement Agreement, Co-Lead Class Counsel determined that the 50-50 allocation of fees between the Bonnett Fairbourn Group and the Robbins Geller Group contemplated by the 2006 Joint Prosecution Agreement remained

---

[9] As explained above, ███████████████████████ the 11/7/14 Krinsk Declaration submitted by F&K, Co-Lead Class Counsel has based its analysis on the hours submitted in connection with 10/7/14 Krinsk Declaration and the hours separately submitted by Howard Finkelstein in the 10/7/14 Finkelstein Letter.

[10] The increase in Bonnett Fairbourn's time from the time submitted in the Fee Motion filed November 7, 2014, reflects work performed since that date, including preparation of the final approval motion, consultations with the Settlement Administrator, conferences with numerous Class members with questions regarding the settlement, consultation with Allianz's counsel regarding settlement issues, review of the Class member objections, preparation of the reply brief in support of final approval, and preparation for the Fairness Hearing.

equitable and appropriate given the roughly equivalent overall contributions of the two Groups to the success of the Actions.

64.    Based on the reported lodestar, the Bonnett Fairbourn Group accounted for approximately 53% and the Robbins Geller Group accounted for approximately 47% of the total lodestar.  Although the Bonnett Fairbourn Group reported a higher total lodestar amount than the Robbins Geller Group, as the Court is aware the Robbins Geller firm and the Bonnett Fairbourn firm each played instrumental roles as Co-Lead Class Counsel over the course of the Actions. Furthermore, the Robbins Geller firm agreed to take a lead role in any necessary appellate proceedings in light of its experienced and highly qualified appellate department.

65.    Robbins Geller has in turn allocated the Robbins Geller Group fees based on the relative contributions of its members.  Based on my discussions with Mr. Pintar, I understand that the Robbins Geller firm, acting as Co-Lead Class Counsel, has allocated fees within the Robbins Geller Group, pro rata, based on each firm's respective reported lodestar amount.  I also understand that there is no dispute among the firms comprising the Robbins Geller Group concerning their respective fee allocations.

66.    After allocation of 50% of the awarded fees to the Robbins Geller Group, the resulting overall multiplier for the Bonnett Fairbourn Group is 1.08 (rather than the 1.27 multiplier referenced in the Final Approval Order).[11]

67.    Even though it is customary for lead counsel to command a higher multiplier than non-lead counsel who shoulder far less responsibility, far less work and far less risk, *see, e.g., In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1206 (N.D. Ill. 1989), Bonnett Fairbourn

---

[11] The 1.08 overall multiplier applicable to the Bonnett Fairbourn Group results from: (1) allocation of 50% of the awarded fee to the Robbins Geller Group (which accounted for 47% of the total lodestar submitted to the Court); and (2) inclusion of the F&K time which was neither submitted to nor considered by the Court as a result of the time reporting discrepancies described above.

proposed to allocate fees to F&K and BR&B based on the same lodestar multiplier received by Lead Counsel.

68.     The F&K and BR&B firms have rejected the contribution-based allocation proposed by Lead Counsel and have, instead, each insisted on receiving 1/3 of the total fees allocated to the Bonnett Fairbourn Group.  If accepted, the allocation proposed by the BR&B and F&K firms would result in those firms receiving a multiplier of 3.8 and 4.6, respectively. This proposed allocation would leave Bonnett Fairbourn with a negative multiplier and suffering a haircut from its reported lodestar of just over $9 million, despite having (i) devoted 8-10 times the amount of effort as either F&K or BR&B, (ii) shouldered virtually all of the risks and responsibilities undertaken by the Bonnett Fairbourn Group, and (iii) been the driving force behind the successful prosecution and settlement of these Actions.

69.     The Bonnett Fairbourn Group's case against Allianz was one of several senior annuity cases brought under the aegis of the 2005 Joint Prosecution Agreement. In addition to the Allianz case, the Bonnett Fairbourn Group also filed cases against Midland National Life Ins. Co. (Bonnett Fairbourn served as co-lead counsel), Fidelity & Guaranty Life Ins. Co. (Bonnett Fairbourn served as co-lead counsel), American Equity Life Ins. Co. (Bonnett Fairbourn served as co-lead counsel), Conseco Life Insurance Company (BR&B served as co-lead counsel), National Western Life Ins. Co. (BR&B served as co-lead counsel) and Jackson National Life Ins. Co. (F&K served as co-lead counsel) (collectively "the Senior Annuity Actions").

70.     When the first settlement of one of the Senior Annuity Actions was reached in 2010 against Fidelity & Guaranty Insurance, the potential for an equitable adjustment under the 2005 Joint Prosecution Agreement was raised in an email of Mr. Friedman dated July 2, 2010, a true and accurate copy of which is attached as Exhibit 12.  Even though Bonnett Fairbourn had been "pulling the laboring oar" in the Fidelity & Guaranty case, Mr. Friedman agreed to forgo seeking an adjustment in that case, given the possibility of making up the disparity through other pending cases. *Id.* Neither F&K nor BR&B disputed the existence or potential applicability of the 2005 Agreement's adjustment clause.  *Id.*

71.     Bonnett Fairbourn has shouldered a disproportionate share of the work if these cases are viewed collectively.  Based on the available information, Bonnett Fairbourn devoted approximately 58.89% of the total lodestar for the Bonnett Fairbourn Group in all of these cases, BR&B devoted approximately 21.26% and F&K devoted approximately 19.85%.  Equally significant, Bonnett Fairbourn achieved settlements valued at $512,391,062 million in the cases in which it served as co-lead counsel, while BR&B garnered settlements valued at $23,271,000, and F&K garnered settlements valued at only $10,984,300.

72.     Within the Bonnett Fairbourn Group itself, the attorneys' fees awarded in cases in which Bonnett Fairbourn served as co-lead counsel totaled about $30 million, while the fees attributable to those in which F&K served as co-lead counsel totaled only about $1.5 million and the fees in the cases in which BR&B acted as co-lead counsel totaled about $2.3 million.

73.     The Bonnett Fairbourn Group is accordingly and unfortunately now at an impasse. Bonnett Fairbourn therefore reluctantly requests that the Court exercise its authority to determine an appropriate fee allocation among the Bonnett Fairbourn Group.

74.     Bonnett Fairbourn, for the sake of resolving the dispute, remains willing to forego the enhanced multiplier typically awarded to lead counsel in class actions like these. Bonnett Fairbourn therefore respectfully submits that the appropriate allocation under the prevailing legal authorities is a lodestar-based award with its multiplier as Lead Counsel no less than the 1.08 multiplier applicable to the Bonnett Fairbourn Group under the Final Approval Order:

- $17,509,560.55 in fees to Bonnett Fairbourn,
- $2,031,610.84 in fees to BR&B, and
- $1,667,711.58 in fees to F&K.

75.     While Bonnett Fairbourn does not at this time contest the reported lodestar amounts for F&K and BR&B used in the computations set forth above, we do have

1  substantial concerns over the accuracy and reliability of certain time entries and we reserve

2  the right to contest them if the firms' reported lodestar amounts are put at issue.

3      I declare under penalty of perjury under the laws of the United States of America that

4  the foregoing is true and correct to the best of my knowledge and that this declaration was

5  executed this 14th day of May, 2015 at Phoenix, Arizona.

6

7                                s/ Andrew S. Friedman

                              ANDREW S. FRIEDMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28